Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

JEFFREY KATZ CHIROPRACTIC, INC., a California corporation, individually and on behalf of all others similarly situated,

Plaintiff,

v.

DIAMOND RESPIRATORY CARE, INC., a California corporation,

Defendant.

Case No. 3:20-cv-04108-CRB

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**

Date: December 3, 2021
Time: 10:00 AM
Judge: Hon. Charles R. Breyer
Courtroom: 6
Complaint Filed: June 22, 2020

**PLEASE TAKE NOTICE** that on December 3, 2021, at 10:00 AM, counsel for Plaintiff Jeffrey Katz Chiropractic, Inc. ("Plaintiff" or "Katz") shall appear before the Honorable Charles R. Breyer or any judge sitting in his stead in Courtroom 6, 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102 and present Plaintiff's Motion for Class Certification ("Motion").

Plaintiff requests that the Court issue an Order certifying the following proposed class of similarly situated individuals:

**Unsolicited Fax Class**: All persons who, from the date June 22, 2016, through the date notice is sent to the Class, received at least one telephone facsimile message substantially similar to Exhibit B, where prior express permission or invitation to send the faxes was supposedly obtained by Diamond through its general sales process.

This Motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities and exhibits attached thereto, oral argument of counsel, and any other matter that may be submitted at the hearing.

Dated: September 2, 2021

**JEFFREY KATZ CHIROPRACTIC, INC.,** individually and on behalf of all others similarly situated,

*/s/ Patrick H. Peluso*
One of Plaintiff's Attorneys

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso
ppeluso@woodrowpeluso.com*
Taylor T. Smith
tsmith@woodrowpeluso.com*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Class*

*pro hac vice admission*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iv

I.    INTRODUCTION ........................................................................................1

II.   STATEMENT OF ISSUES TO BE DECIDED ........................................2

III.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................2

IV.   ARGUMENT ...............................................................................................6

     A.   The Class Is Ascertainable—Class Members Can Be Identified Through A Combination Of Diamond's Records, Declarations, And Fax Records............6

     B.   The Alleged Class Meets Each Of The Requirements Of Rule 23(a)...............8

         1.   Numerosity is met here. .......................................................................8

         2.   The Class shares common questions of law and fact. ...........................9

             (a)   Whether the faxes were advertisements. ................................10

             (b)   Whether Diamond was the sender of the fax............................10

             (c)   Whether Diamond obtained prior express permission or invitation to send fax advertisements. ........................................11

             (d)   Whether Diamond failed to provide an opt-out notice. ...........12

             (e)   Whether Diamond acted willfully. ............................................13

         3.   Plaintiff's claims are typical....................................................................13

         4.   Plaintiff and Proposed Class Counsel are adequate representatives. .14

     C.   The Proposed Class Meets The Requirements Of Rule 23(b)(2). ....................15

     D.   The Proposed Class Meets The Requirements Of Rule 23(b)(3). ....................16

         1.   Common questions of law and fact predominate.....................................16

         2.   A class action is superior to any other method of adjudication. .........18

V.    CONCLUSION ...........................................................................................19

# TABLE OF AUTHORITIES

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231 (1997) .................................6, 15

*Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439 (N.D. Cal. 1994).......................14

*Barraza v. C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.,*

         322 F.R.D. 369 (D. Ariz. 2017) ................................................................................16

*Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614 (S.D. Cal. 2015) ............................1, 17, 18

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) ...........................7, 8

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ...................................................6

*Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2020 WL 7391299 (N.D. Cal. July 22,

         2020) .........................................................................................................................6

*Dr. Robert L. Meinders D.C., Ltd v. Emery Wilson Corp.*, No. 14-CV-596-SMY-SCW, 2016 WL

         3402621 (S.D. Ill. June 21, 2016) ...........................................................................12

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ...................................................14

*Gardner v. Shell Oil Co.*, No. C-09-05876-CW, 2011 WL 152237 (N.D. Cal. Apr. 21, 2011)......7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .............................................................9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL

         1530166 (N.D. Cal. June 5, 2006) ...........................................................................15

*In re First Alliance Mortgage Co.*, 471 F.3d 977 (9th Cir. 2006) ..................................................9

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*

         264 F.R.D. 603 (N.D. Cal. 2009) .............................................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583 (N.D. Cal. 2010) ............................7

*Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642 (W.D. Wash. 2007) .............................................13

*MadKudu Inc. v. U.S. Citizenship & Immigr. Servs.*, No. 20-CV-02653-SVK, 2020 WL 7389419

         (N.D. Cal. Nov. 17, 2020)..........................................................................................6

*McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal.

         Sept. 6, 2017) ...........................................................................................................13

*Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2016 WL 8933624 (N.D. Cal. Aug. 22, 2016) ........................................................................................................13

*Moeller v. Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004)...........................................8

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590 (C.D. Cal. 2015)..................8

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015).........................................8

*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959 (7th Cir. 2020)........11

*Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007 (N.D. Ill. 2017) ............................................................................................................10

*Physicians Healthsource, Inc. v. Masimo Corp.*, No. SACV1400001JVSADSX, 2020 WL 5260650 (C.D. Cal. July 13, 2020) ...................................................................10

*Pina v. Con-Way Freight, Inc.*, No. C 10-00100 JW, 2012 WL 1278301 (N.D. Cal. Apr. 12, 2012) ......................................................15

*Retina Assocs. Med. Grp., Inc. v. Alliancemed, LLC*, No. SACV181670JVSKES, 2019 WL 7195329 (C.D. Cal. Nov. 18, 2019) ....................................................................18

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) ...........................7

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) .................................................14

*Scholes v. Stone, McGure, & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992) ..........................9

*Schwartz v. Upper Deck Co.*, 183 F.R.D. 672 (S.D. Cal. 1999)......................................14

*Smith v. Microsoft Corp.*, 297 F.R.D. 464 (S.D. Cal. 2014)........................................18

*Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944 (9th Cir. 1979)................15

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...............................................14

*Tech Instrumentation Inc. v. Eurton Elec. Co. Inc.*, No. 16-CV-2981-MSK-KMT, 2018 WL 3382914 (D. Colo. May 29, 2018) ..............................................................12, 18

*True Health Chiropractic Inc. v. McKesson Corp.*, 332 F.R.D. 589 (N.D. Cal. 2019)..........11, 19

*True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923 (9th Cir. 2018)................10, 12

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016) .........................................17

*Valentino v. Carter-Wallace, Inc.* 97 F.3d 1227 (9th Cir. 1996) .................................................16

*Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554 (C.D. Cal. 2012) .......................................19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...........................................................9, 16

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)...................................18

**STATUTES, RULES, SECONDARY SOURCES**

Junk Fax Prevention Act, 47 U.S.C. § 227, *et seq.* .........................................................1, 10, 12, 13

Fed. R. Civ. P. 23, *et seq.* ...................................................................................................... *passim*

Alba Conte & Herbert B. Newberg, Newberg on Class Actions (4th ed. 2001) ............................9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Claims brought under the Telephone Consumer Protection Act, as amended by the Junk Fax Prevention Act, 47 U.S.C. § 227, *et seq.* ("JFPA" or Act"), are particularly well-suited for class treatment. *See Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614, 630 (S.D. Cal. 2015) ("Without the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute."). The present case against Defendant Diamond Respiratory Care, Inc. ("Defendant" or "Diamond") is no exception.

Diamond is a medical equipment and supplies company. Seizing an opportunity to profit off the COVID-19 pandemic, Diamond inundated businesses with thousands of unsolicited faxes advertising the sale of hand sanitizer—a product that, at the time, was in short supply. Plaintiff Jeffrey Katz Chiropractic, Inc. ("Plaintiff" or "Katz") received one of these faxes, and discovery has revealed that Diamond sent the same unsolicited fax to thousands of others in violation of the JFPA.

This case is plainly suitable for class treatment. Diamond utilized the same broadcast system to send identical faxes to the same types of businesses—clinics. Worse yet, Diamond can produce no record of prior express invitation or permission for <u>any</u> of the fax recipients. As such, common issues abound for which this case will provide common answers, including: (1) whether the faxes constitute advertisements under the JFPA, (2) whether Diamond sent the faxes, (3) whether Diamond possessed prior express invitation or permission to send the faxes, (4) whether the faxes contained any opt-out notice, and (5) whether Diamond acted willfully. The answers to these questions rely on the same evidence, are identical for each class member, and will drive the resolution of the litigation for the proposed Class as a collective whole.

The remaining requirements under Rule 23 are met as well. The proposed Class, which consists of thousands of fax recipients, is sufficiently numerous. Plaintiff Katz's claims are typical of those of the class members, and Plaintiff is an adequate representative and is represented by

counsel experienced in class action litigation. Further, the common issues predominate over any supposed individual issues and a class action is the superior method for resolving the claims at issue.

Plaintiff seeks certification of the following Class:

**Unsolicited Fax Class**: All persons who, from the date June 22, 2016, through the date notice is sent to the Class, received at least one telephone facsimile message substantially similar to Exhibit B, where prior express permission or invitation to send the faxes was supposedly obtained by Diamond through its general sales process.

If Diamond violated the JFPA with respect to Plaintiff, then it did so with respect to every other member of the Unsolicited Fax Class. As such, and as explained more fully below, the Court should grant class certification.

## II.    STATEMENT OF ISSUES TO BE DECIDED

Whether Plaintiff's claims satisfy the requirements for class certification under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

## III.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### *Diamond blasted out thousands of unsolicited faxes advertising hand sanitizer*

Defendant Diamond is a California-based medical equipment and supplies company. (*See* Rule 30(b)(6) Deposition of Diamond, excerpts of which are attached hereto as Ex. A, at 28:1-29:10.) Diamond sells its products to patients and clinics throughout the United States. (Ex. A, at 26:5-8; 29:11-21.)

At the beginning of the global COVID-19 pandemic, the healthcare industry experienced a shortage of supplies. (Ex. A, at 55:18-56:8.) Relevant here, cleaners, including hand sanitizer, were scarcely available. (Ex. A, at 56:1-8.) Armed with a surplus and recognizing an opportunity, Diamond decided to offer its hand sanitizer for sale. (Ex. A, at 56:9-20.) To expand its marketing reach, Diamond sent thousands of faxes to clinics to advertise its hand sanitizer as available for sale. (*See* Hand Sanitizer Fax, attached hereto as Ex. B; *see also* Ex. A, at 55:16-56:20.)

To facilitate its fax marketing, Diamond utilized a third-party broadcast fax service owned by Duck Dive Communications, LLC d/b/a jBlast (hereafter "jBlast"). (Ex. A, at 35:3-10.) The

jBlast fax service worked as follows: first, Diamond would upload the fax to be sent out (Ex. A, at 42:23-43:11), then Diamond would upload a list of fax numbers to whom the faxes would be sent. (Ex. A, at 43:12-16.) Diamond then clicked "send." (Ex. A, at 44:2-3.) After the fax transmission was complete, Diamond would be emailed a job summary report. (*See* jBlast Job Summary Reports, attached as Group Ex. C.) Diamond has confirmed that all of its hand sanitizer faxes were sent using the jBlast service. (Ex. A, at 97:10-14.)

On April 23, 2020, Plaintiff Katz received a fax from Diamond marketing its hand sanitizer for sale. (*See* Hand Sanitizer Fax, Ex. B.) Plaintiff was just one of thousands that received the same fax. In response to discovery requests, Diamond produced seven (7) jBlast job summary reports, which revealed the number faxes sent per each transmission date. (*See* jBlast Job Summary Reports, Grp. Ex. C.)

| **Date and Time of Report** | **Faxes Sent** |
|---|---|
| ██████████████ | ████ |
| ██████████████ | ████ |
| ██████████████ | ████ |
| ██████████████ | ██ |
| ████████████ | ████ |
| █████████████ | ████ |
| ███████████ | ██ |

(*See* jBlast Job Summary Reports, Grp. Ex. C.) While Diamond's designee testified that it produced all of the summary reports in its possession, he also stated that it is possible others may have existed as well. (Ex. A, at 136:18-137:8.)

***Diamond failed to keep records that could have easily identified potential class members.***

Unfortunately, and as has become all too common in junk fax cases, Diamond failed to maintain records of its individual fax transmissions. That is, Diamond's corporate designee testified that it possessed no record of who received the hand sanitizer fax. (Ex. A, at 64:4-6; 13-21.) To locate the records, Plaintiff served a subpoena on the fax transmission service, jBlast.

(Declaration of Patrick H. Peluso ("Peluso Decl."), attached hereto as Ex. D.) In response, jBlast revealed that it also does not retain the individual fax records for its customers. (Peluso Decl. ¶ 4.)

Diamond's failure to retain records, as it turns out, is in line with its reckless approach to fax marketing. As its designee confirmed, Diamond took <u>no</u> steps to attempt compliance with the JFPA. Indeed, Diamond's designee testified that it has to policies or procedures in place relating to faxing in general (Ex. A, at 71:25-72:6), or to ensure compliance with the JFPA more specifically (Ex. A, at 72:13-16). Diamond also provided zero training to its employees regarding its responsibilities under the JFPA. (Ex. A, at 73:19-23.) And Diamond has no process whatsoever to permit the recipient of its faxes to opt-out of future fax advertisements. (Ex. A, at 62:15-20.)

Likewise, and although Diamond contends that it had prior express invitation or permission to send the faxes, its designee also testified that it kept no records of any supposed permission:

> Q. (By Mr. Smith) So for the individuals that Diamond sends faxes to, does Diamond have any records of the prior express invitation or permission that they provided?
>
> MR. GRAMMATICO: Objection. Ambiguous. Calls for a legal conclusion.
>
> THE DEPONENT: No.

(Ex. A, at 86:20-87:1.)

***Nevertheless, sufficient data exist to identify class members.***

Fortunately, Diamond has produced sufficient data to identify class members. In discovery, Diamond produced a data file containing 19,985 unique fax numbers (hereafter "Fax List"). (Peluso Decl. ¶ 5.) The list consists of only fax numbers but represents a significant portion of the Class. Indeed, Diamond's designee testified that it uploaded this Fax List into jBlast to send the hand sanitizer faxes during the beginning of 2020. (Ex. A, at 104:8-25.)

The previously discussed jBlast job summary reports, which Diamond concedes may be incomplete, support Diamond's claim. That is, the combined jBlast summary reports reveal that Diamond uploaded 17,219 fax numbers into the jBlast system during the same time period.

(Peluso Decl. ¶ 6; *see also* jBlast Job Summary Reports, Grp. Ex. C.) While this number differs slightly from the 19,985 unique fax numbers, it also verifies what Diamond's designee confirmed—that Diamond uploaded thousands of individual fax numbers into the jBlast system to send the faxes at issue. Additionally, Diamond testified that it had no other data files in its possession that would have been uploaded into the jBlast system during the relevant period of time. (Ex. A, at 201:2-8.)

Diamond's designee also testified that it acquired all of the numbers included on the Fax List in the same manner—through its general sales process. (Ex. A, at 103:4-21.) Diamond described its "general sales process" as follows: Diamond contacts offices (in person or by phone) to acquire contact information. (Ex. A, at 81:5-13.) During that conversation, Diamond discusses various products with the potential clients to ascertain their needs. (Ex. A, at 203:6-13.) When a Diamond product meets a potential client's needs, Diamond requests to send over order forms and product documents by fax. (*Id.*) Diamond's request to send faxes was not specific to the sending of advertisements or other marketing materials but rather was simply a request to send faxes more generally. (Ex. A, at 203:14-19.) Diamond utilizes this process for every potential client. (Ex. A, at 86:7-12; 195:24-25; 202:5-203:19.) Diamond insists that this process was sufficient to obtain prior express invitation or permission to send fax advertisements to all of the class members, including Plaintiff. (Ex. A, at 201:19-203:19.)

Lastly, and if needed to identify class members, Diamond maintains a customer relationship management system known as HighRise, which contains all of the contact information for potential and existing customers. (Ex. A, at 77:10-18; 83:5-7.) The system stores contact information, including names, addresses, phone numbers, email addresses, and fax numbers. (Ex. A, at 80:1-9.) Further, Diamond's designee testified that it does not delete contact information from the system and that the system is capable of being searched. (Ex. A, at 80:21-22; 144:3-8.) It's from HighRise that Diamond exports fax records to be uploaded into jBlast to send out faxes. (Ex. A, at 81:23-82:20.)

Based on these facts and as further explained below, the record firmly supports

1   certification.

2   **IV.     ARGUMENT**

3        Class certification is appropriate when the proponent of certification demonstrates that

4   each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has

5   been met. Fed. R. Civ. P. 23; *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-14,

6   117 S.Ct. 2231 (1997). Rule 23(a) requires that (i) the proposed class is so numerous that joinder

7   of all individual class members is impracticable (numerosity); (ii) that there are common

8   questions of law and fact among the class members (commonality); (iii) that the proposed

9   representative's claims are typical of those of the class (typicality); and (iv) that both the named

10  representative and its counsel have and will continue to adequately represent the interests of the

11  class (adequacy). Fed. R. Civ. P. 23(a).

12       Plaintiff seeks certification here under both Rule 23(b)(2) and 23(b)(3). Under Rule

13  23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on

14  grounds generally applicable to the class as a whole, "so that final injunctive relief or

15  corresponding declaratory relief is appropriate…." Fed. R. Civ. P. 23(b)(2). To certify a class

16  under Rule 23(b)(3), on the other hand, there must be questions of law or fact common to the

17  proposed class members that predominate over any questions affecting only individual members,

18  and the class mechanism must be superior to other available methods for fairly and efficiently

19  adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

20       The proposed Class satisfies Rules 23(a), (b)(2), and (b)(3) and should be certified.

21       **A.     The Class Is Ascertainable—Class Members Can Be Identified Through A
             Combination Of Diamond's Records, Declarations, And Fax Records.**

22
23       As an initial matter, "the language of Rule 23 neither provides nor implies that

24  demonstrating an administratively feasible way to identify class members is a prerequisite to class

25  certification[.]" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017).

26  Nevertheless, some courts continue to apply this condition. *See Chinitz v. Intero Real Est. Servs.*,

27  No. 18-CV-05623-BLF, 2020 WL 7391299, at *7 (N.D. Cal. July 22, 2020). "The proposed class

28  is sufficient if plaintiffs' class definitions provide objective criteria that allow class members to

determine whether they are included in the proposed class." *MadKudu Inc. v. U.S. Citizenship & Immigr. Servs.*, No. 20-CV-02653-SVK, 2020 WL 7389419, at *4 (N.D. Cal. Nov. 17, 2020) (citing *Farar v. Bayer AG*, No. 14-cv-04601-WHO, 2017 WL 5952876, at *14 (N.D. Cal. Nov. 15, 2017)). Objective criteria may include a defendant's business records. *See, e.g., Gardner v. Shell Oil Co.*, No. C-09-05876-CW, 2011 WL 152237, at *4 (N.D. Cal. Apr. 21, 2011). Documentary evidence, together with sworn declarations from class members, can also be used to show class membership. *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 249-50 (N.D. Ill. 2014).

Here, the proposed Class is ascertainable by reference to objective criteria. Plaintiff seeks to represent a Class of individuals who received an unsolicited fax from Defendant advertising hand sanitizer. Whether an individual received a fax is an objective inquiry. And while Diamond failed to keep records of the individual fax transmissions, it did maintain a Fax List that includes 19,985 individual fax numbers. (Peluso Decl. ¶ 5.) The Fax List was uploaded into the jBlast fax system to send the hand sanitizer faxes. (Ex. A, at 104:8-25.) Whether an individual's fax number appears on the Fax List is also an objective inquiry.

Further, because Diamond failed to maintain basic fax records, the Class will likely need to submit some records, such as affidavits or other supporting documentation, including phone bills or copies of the faxes themselves, to establish class membership. This presents no bar to certification, as "[t]he fact that class members will be required to submit some information in order to determine whether they are members of the class does not render the class definition unascertainable." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010) (collecting cases). Rather, "'[i]t is enough that the class be ascertainable' with class members to be identified during a claims administration process if the class prevails." *Birchmeier*, 302 F.R.D. at 245 (citing *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012). At certification, there is no requirement to ascertain the actual identities of all class members. *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) ("There is no requirement that 'the identity of the class members ... be known at the time of

certification.'" (quoting *Wolph v. Acer Am. Corp*., 272 F.R.D. 477, 482 (N.D.Cal.2011)).

As a final point, Diamond should not be permitted to rely in any way on its own failure to maintain adequate records as a basis for denying certification. As *Birchmeier* explains:

> In other words, defendants are essentially arguing that the contours of the class should be defined by defendants' own recordkeeping. This would result in an artificial class definition that would leave out individuals who actually received the calls in question—an unquestionably objective criterion—and who possess a record that is at least circumstantial evidence of class membership, a picture they can complete with their own sworn statements. Doing this—or declining to certify a class altogether, as defendants propose—would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct. The Court does not agree that the classes should be limited in the way defendants propose.

*Birchmeier*, 302 F.R.D. at 250. Indeed:

> Refusing to certify on this basis effectively immunizes defendants from liability because they chose not to maintain records of the relevant transactions. *See Daniels v. Hollister Co.*, 440 N.J.Super. 359, 113 A.3d 796, 801 (N.J.App.2015) ("Ascertainability ... is particularly misguided when applied to a case where any difficulties encountered in identifying class members are a consequence of a defendant's own acts or omissions.... Allowing a defendant to escape responsibility for its alleged wrongdoing by dint of its particular recordkeeping policies ... is not in harmony with the principles governing class actions.")

*Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1161, 194 L. Ed. 2d 175 (2016).

In short, class membership is based on objective criteria—the Fax List, in combination with class member declarations or documentation. As such, ascertainability is met.

## B.     The Alleged Class Meets Each Of The Requirements Of Rule 23(a).

The proposed Class is also sufficiently numerous, shares common questions of law and fact, and Katz (and its counsel) is a typical and adequate class representative.

### 1.     Numerosity is met here.

Numerosity is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is not a specific number of class members needed to establish numerosity; however, courts generally find the numerosity requirement to be satisfied when the class size exceeds forty members. *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602-603 (C.D. Cal. 2015) ("As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members.") (citation omitted). At this stage,

Plaintiff is not required to identify an "exact number of potential class members." *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 (N.D. Cal. 2004) (citing *Bates v. United Parcel Service*, 204 F.R.D. 440, 444 (N.D. Cal. 2001)). Rather, the Court is entitled to make common sense assumptions. *See* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* ¶ 7.20, 66 (4th ed. 2001).

Numerosity is not an impediment to class certification. Again, the class consists of thousands of businesses that received the same fax as Plaintiff. The Fax List produced by Diamond contains 19,985 individual fax numbers, and the jBlast job summary reports, or at least those that still exist, reveal that Diamond sent thousands of faxes during the relevant time period. As such, numerosity is plainly satisfied.

### 2. The Class shares common questions of law and fact.

Rule 23(a) next requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court explained in *Dukes*, "[w]hat matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (commonality requires that the claims of the class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

Rule 23(a)(2) commonality may be met by a single issue of law or fact. *In re First Alliance Mortgage Co*., 471 F.3d 977, 990-91 (9th Cir. 2006). The issues need not be identical. *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998). Rather, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 611 (N.D. Cal. 2009). Commonality has been characterized as a relatively low and easily surmountable hurdle. *Scholes v. Stone, McGure, & Benjamin*, 143 F.R.D.

181, 185 (N.D. Ill. 1992).

Several common issues will drive the instant litigation, including whether the faxes constitute advertisements under the JFPA, whether Diamond was the sender of the faxes, whether Diamond possessed prior express invitation or permission to send the faxes, whether the faxes contained any opt-out notice, and whether Diamond acted willfully.

### (a)    Whether the faxes were advertisements.

The first common issue asks whether Diamond's faxes constitute advertisements. "'Unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5); *see also True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 926 (9th Cir. 2018).

Here, all class members received an identical fax (the hand sanitizer fax). As such, there are no differences between the faxes with respect to their content, and the question of whether the fax constitutes an advertisement under the JFPA will be answered with a single stroke with respect to every class member. Because the answer will be the same across the entire Class, this issue alone satisfies the commonality prong. *See Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, 254 F. Supp. 3d 1007, 1020 (N.D. Ill. 2017) ("The recipients received the same faxes, and so the questions of whether the fax was an advertisement, who the sender was, whether the fax contains a proper opt-out notice, are all common questions.").

### (b)    Whether Diamond was the sender of the fax.

A second common issue asks whether Diamond is the "sender" of the faxes at issue. Under the JFPA, a "sender" of a fax is "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." *Physicians Healthsource, Inc. v. Masimo Corp.*, No. SACV1400001JVSADSX, 2020 WL 5260650, at *4 (C.D. Cal. July 13, 2020) (citing 47 C.F.R. § 64.1200(f)(10)). Because Diamond used the same technology and process to send the faxes, the answer to whether it was the "sender" of the faxes will be the same for the entire Class.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**(c)      Whether Diamond obtained prior express permission or invitation to send fax advertisements.**

A third common issue asks whether any of the class members provided prior express invitation or permission to be faxed. Prior express invitation or permission requires that a business obtain consent to specifically receive *fax advertisements. See True Health Chiropractic Inc. v. McKesson Corp.*, 332 F.R.D. 589, 602–03 (N.D. Cal. 2019) ("A generic (and somewhat cryptic) disclosure that certain information may 'assist' McKesson in 'offering...features and services' simply does not establish the required "prior express invitation or permission' to send faxed advertisements."). Simply providing a fax number is insufficient to establish prior express invitation or permission. *See Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 967 (7th Cir. 2020) ("A consumer's statement that it gave permission to send 'product information' via fax, even on an ongoing basis, after purchasing products or services from a company cannot as a matter of law constitute prior express permission.").

Here, Diamond asserts that it obtained prior express invitation or permission for every number contained on the Fax List in the same manner: via its "general sales process". That is, Diamond contends that it acquired prior express invitation or permission by contacting potential clients, inquiring into their needs, and requesting to fax them order forms and product documents. (Ex. A, at 201:19-203:13.) And Diamond contends that it utilized this process with respect to all of the numbers included on its Fax List. (Ex. A, at 103:4-21.) Because Diamond's general sales process did not vary with respect to any individual class member, the answer to whether this process is sufficient to establish prior express invitation or permission to send the faxes at issue will be the same for all class members.

While Diamond may assert that it possesses consent based on its sales process, it also concedes that it has no records of prior express invitation or permission to send faxes to anyone. (Ex. A, at 86:20-87:1.) As with its failure to maintain adequate fax records, Diamond should not be permitted to rely on hypothetical individualized issues of consent to defeat certification. As the *Eurton* court aptly explained:

The essence of Eurton's response to the motion is that a class action would require the Court to engage in mini-trials for each class plaintiff to determine whether it

consented to receive Eurton's faxes. Viewed in a vacuum, this argument is appealing. In the normal course of business, a defendant might maintain records of what potential client was contacted and whether that potential client consented to receive further information. If there was information as to which potential clients consented and which did not, there might be a need to determine whether a consent foreclosed [that] claim of any particular potential client. But that is not the situation here. Eurton has no records of who it contacted and who consented. Instead, it seeks to rely on its "normal practice" to obtain consent prior to sending faxes. In doing so, Eurton is relying on a standardized course of conduct, which other courts have found is sufficient to establish commonality and typicality. *See, e.g., Hinman v. M & M Rental Ctr. Inc.*, 545 F. Supp. 2d 802, 806 - 07 (N.D. Ill. 2008) (noting that individualized inquiry is not required where the defendant engaged a third party to send 3,000 faxes to targeted businesses). In this way, the question to be adjudicated is not whether each class member consented to Eurton's faxes, but whether Eurton's standardized practice is sufficient to obtain consent under the JFPA. That is an issue common to all potential clients. Thus, the Court finds that TII's claims are sufficiently common to certify the class.

*Tech Instrumentation Inc. v. Eurton Elec. Co. Inc.*, No. 16-CV-2981-MSK-KMT, 2018 WL 3382914, at *2 (D. Colo. May 29, 2018); *see also Dr. Robert L. Meinders D.C., Ltd v. Emery Wilson Corp.*, No. 14-CV-596-SMY-SCW, 2016 WL 3402621, at *6 (S.D. Ill. June 21, 2016) ("Sterling also contends that there is no way to determine consent due to lack of record keeping. However, Sterling may not rely on its own failure to obtain and retain records of who consented to receiving fax advertisements in order to defeat class certification in this matter.").

Because Diamond's process for acquiring any supposed prior express invitation or permission to send the faxes at issue did not vary in any substantive way with respect to any class member, this too is a common question.

### (d)     Whether Diamond failed to provide an opt-out notice.

The fourth common issue asks whether Diamond included sufficient a opt-out notice on the subject fax. While companies are not required to provide an opt-out notice for solicited faxes, defendants can avoid liability for sending unsolicited fax advertisements to companies where there is an established business relationship ("EBR") if the faxes include "an opt-out notice meeting certain statutory requirements." *True Health Chiropractic, Inc.*, 896 F.3d at 926 (citing 47 U.S.C. § 227(b)(1)(C)(i)–(iii)).

In this case, the subject fax did not include any opt-out notice whatsoever. (*See* Hand Sanitizer Fax, Ex. B.) Because Diamond failed to include any opt-out notice on the subject faxes, there is no need for individualized inquiries to determine whether Diamond had an EBR with any

of the recipients. Accordingly, this presents yet another common issue for the Class.

(e)      <strong>Whether Diamond acted willfully.</strong>

A fifth common issue asks whether Diamond acted willfully. The JFPA sets statutory damages at $500 per call, which can be trebled for willful violations. 47 U.S.C. § 227(b)(3), *et seq.* The inquiry into whether a defendant acted willfully or knowingly focuses on the "intent" of the defendant, and "not any unique or particular characteristics related to potential class members." *Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2016 WL 8933624, at *7 (N.D. Cal. Aug. 22, 2016); *see also McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764, at *5 (N.D. Cal. Sept. 6, 2017). Further, where a defendant engages in the same conduct with respect to all fax recipients, willfulness will be a common issue for the class. *See Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D. Wash. 2007) ("Because Omnipak engaged in the same conduct with respect to all recipients, the issue of whether its conduct was willful will be common.").

Here, there is no evidence to suggest that Diamond acted differently with respect to any individual class member. Instead, Diamond's corporate representative confirmed that it ignored the JFPA with respect to all class members. Diamond took no steps to ensure compliance with the JFPA, (Ex. A, at 71:25-72:16) and it failed to train any employees regarding its JFPA responsibilities. (Ex. A, at 73:19-23.) Further, Diamond has no process to permit the recipient of faxes to opt-out of future fax advertisements. (Ex. A, at 62:15-20.) As such, a fact finder could either conclude that Diamond's actions were willful or knowing with respect to all class members or as to none of them. This constitutes yet another common issue.

In sum, the commonality requirement is readily met here.

<strong>3.     Plaintiff's claims are typical.</strong>

Plaintiff's claims are typical as well. Rule 23(a) typicality is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's

1   claim arises from the same course of events, and each class member makes similar legal

2   arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir.

3   2010) (citation omitted). "Typicality refers to the nature of the claim or defense of the class

4   representative, and not to the specific facts from which it arose or the relief sought." *Ellis v.*

5   *Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation omitted).

6          Under the Rule's permissible standards, "representative claims are 'typical' if they are

7   reasonably coextensive with those of absent class members[.]" *Staton v. Boeing Co.*, 327 F.3d

8   938, 957 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.

9   1998)). Hence, "[t]ypicality turns on the defendant's actions toward the plaintiff class,

10  not particularized defenses against individual class members." *Schwartz v. Upper Deck Co.*, 183

11  F.R.D. 672, 683 (S.D. Cal. 1999) (citation omitted). Typicality "does not mean that the claims of

12  the class representative[s] must be identical or substantially identical to those of the absent class

13  members." *Id.* (citing 5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 24.25 at

14  24–105 (3d ed.1992); *see also Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir.2001)).

15         Applied here, Plaintiff's claims are typical. To start, Katz is a member of the proposed

16  Class. *See Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994)

17  ("[A] class representative must be part of the class and 'possess the same interest and suffer the

18  same injury' as the class members."). Further, Plaintiff and the Class were subjected to a uniform

19  course of conduct: Diamond sent the same fax, which advertised the same product; the faxes were

20  sent through the same fax system; the faxes uniformly failed to include any opt-out language; and

21  Diamond asserts that it procured prior express permission to send the faxes in the same manner

22  (although no records of said permission exist). Additionally, Diamond sought to target the same

23  types of businesses (clinics) for the same reason: to sell hand sanitizer during the pandemic.

24         Because Plaintiff's claims arise out of the same course of conduct as the class members'

25  claims, typicality is satisfied.

26         **4.      Plaintiff and Proposed Class Counsel are adequate representatives.**

27         Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly

28

and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent.'" *Amchem Products, Inc.*, 117 S.Ct. at 2250-2251. "Two questions are considered when determining…adequacy of representation: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Pina v. Con-Way Freight, Inc.*, No. C 10-00100 JW, 2012 WL 1278301, at *5 (N.D. Cal. Apr. 12, 2012). "[T]he adequacy requirement mandates that no conflicts of interest exist between the named plaintiffs and the absent class members," *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486, 2006 WL 1530166, at *6 (N.D. Cal. June 5, 2006), and adequacy is only defeated by actual conflicts. *Soc. Servs. Union, Local 535 v. Cnty. of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979).

Applied here, Plaintiff's interests are aligned with the interests of the proposed class. Plaintiff has stepped forward and lend its name and time to this case. Katz has responded to discovery, produced responsive documents, and its corporate representative has been deposed. In short, Plaintiff has vigorously represented the interests of the class and will continue to do so throughout the duration of this litigation.

Plaintiff has also retained experienced attorneys with experience in consumer class actions, including cases under the JFPA. Proposed class counsel are respected members of the legal community who have sufficient experience in class actions of similar size, scope, and complexity to the instant action. (*See* Firm Resume of Woodrow & Peluso, LLC, attached hereto as Ex. E.) Plaintiff's counsel also have no conflicts with the Class. Further, counsel have also devoted significant time and resources toward this litigation and will continue to commit the resources necessary to represent the Class throughout the remainder of the litigation.

In short, Plaintiff and its counsel have no conflicts of interest with the Class and have demonstrated a commitment to prosecuting this action. Thus, Rule 23(a)(4) adequacy is met.

**C.    The Proposed Class Meets The Requirements Of Rule 23(b)(2).**

Once Rule 23(a) is satisfied, the inquiry turns to Rule 23(b). Again, Rule 23(b)(2)

provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). "[T]he key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted.'" *Dukes*, 131 S. Ct. 2451 at 2557. "[W]hile Rule 23(b)(2) class action have no predominance or superiority requirements, it is well established that the class claims must be cohesive.'" *Barraza v. C.R. Bard, Inc. and Bard Peripheral Vascular, Inc.,* 322 F.R.D. 369, 387 (D. Ariz. 2017) (citing *Barnes v. American Tobacco Co.*, 161 F.3d 127, 143 (3rd Cir. 1998)).

In this case, Defendant subjected Plaintiff and the Class to a uniform course of conduct. Diamond utilized broadcast fax system to blast out thousands of faxes marketing its hand sanitizer. In the process, Defendant failed to obtain prior express permission or invitation to send any of the faxes. Further, Defendant obtained all of the recipients' fax numbers in the same manner, and Diamond failed to implement policies or procedures to ensure that it complied with the JFPA. Diamond also failed to include any opt out language on its faxes. As such, Plaintiff seeks an Order enjoining Diamond from sending future faxes in violation of the JFPA.

Given that Plaintiff and the Class were subjected to a uniform course of conduct, the Court should issue an Order granting certification pursuant to Rule 23(b)(2).

### D.  The Proposed Class Meets The Requirements Of Rule 23(b)(3).

Certification is also warranted under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

### 1.  Common questions of law and fact predominate.

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.* 97 F.3d 1227, 1234 (9th Cir. 1996). "The predominance inquiry 'asks whether the common, aggregation-

enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Id.* (citation omitted).

The common questions set forth in Section III.B.2, *supra*, will succeed or fail based on common proof. Here, Diamond acted in the same manner with respect to all class members. Diamond sent thousands of identical, unsolicited faxes using the same fax service to sell the same product. Additionally, Diamond, itself, claims that all of the fax numbers that were included on its Fax List were obtained in the same manner. Put simply, the common questions in this case are subject to common proof, cut to the core of the case, and aren't trumped by any individual truths.

Diamond will likely seek to raise issues relating to the prior express invitation or permission to send the faxes. But this doesn't pose an obstacle to class certification. Rather, the central inquiry is whether Diamond collected any so-called permission to send the faxes at issue in the same manner. Because Diamond admits that it obtained permission to send the faxes in the same manner for all class members—via its general sales process (Ex. A, at 201:19-203:19)—no individualized issues exist. *See Bee, Denning, Inc.*, 310 F.R.D. at 629 ("Where a party has not submitted any evidence of an EBR or express consent, courts will not presume that resolving such issues requires individualized inquiries." (citations omitted)).

Likely in recognition of this, Diamond, along with its counsel, set out to create supposed evidence of prior express permission or invitation where none exist. That is, Diamond's designee and president testified that he put his sales manager, Chris Aragon, in touch with his attorneys with instructions to find fax recipients to say they consented to receive faxes. (Ex. A, at 150:7-23; 154:24-155:6.) This underhanded attempt to defeat certification netted Diamond nine (9) declarants (out of 19,985 potential class members). (Peluso Decl. ¶ 7.) But this doesn't create individualized issues of consent. As its designee testified, Diamond has no record of prior express

permission or invitation to send fax advertisements to any of the declarants. (*See* Ex. A, at 161:17-162:17; 169:4-13; 173:11-21; 178:18-179:8; 181:11-182:4; 184:8-24; 190:10-21; 192:18-193:11; 195:15-196:12; 196:20-197:1.) Rather, and just like every other class member, Diamond relies on its general sales process to form the basis of its opinion that it possessed permission. (*See id.*)

In short, if Diamond violated the JFPA with respect to the fax sent to Plaintiff, then it violated the JFPA with respect to every single class member. As such, the Court should find that the common issues predominate over any supposed individualized issues.

### 2.     A class action is superior to any other method of adjudication.

Finally, Rule 23(b)(3) requires that the class action mechanism be superior to other available methods for adjudicating the controversy. Fed. R. Civ. P 23(b)(3). "[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citing 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 at 174 (3d ed.2005)). Rule 23(b)(3) includes the following non-exhaustive list of factors pertinent to this inquiry:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and; (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Additionally, "[w]here damages suffered by each class member are not large, this fact weighs in favor of certifying a class action." *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 468 (S.D. Cal. 2014) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001)). Indeed, "'[t]he most compelling rationale for finding superiority in a class action' is the 'existence of a negative value suit.'" *Id.* at 468-69 (citations omitted).

Courts routinely certify class actions involving violations of the JFPA. *See Tech Instrumentation Inc.*, 2018 WL 3382914, at *3 (certifying a JFPA class action); *Bee, Denning, Inc.*, 310 F.R.D. at 631 (same); *Retina Assocs. Med. Grp., Inc. v. Alliancemed, LLC*, No.

SACV181670JVSKES, 2019 WL 7195329, at *8 (C.D. Cal. Nov. 18, 2019), *amended,* No. SACV181670JVSKES, 2020 WL 1071361 (C.D. Cal. Feb. 12, 2020) (same); *True Health Chiropractic, Inc.*, 332 F.R.D. at 610 (granting a renewed motion for class certification in JFPA case); *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 562-563 (C.D. Cal. 2012) (granting class certification in a JFPA case and explaining that "litigation costs would likely exceed potential recovery if each class member litigated individually.").

  A class action is superior here. That is, Plaintiff is seeking statutory damages for each violation of the JFPA, which amounts to between $500-$1,500 per violation. (Complaint ¶¶ 17, 52.) Given the small amount of damages likely to be recovered per individual, pursuing suits on an individual basis would be prohibitively expensive for all members of the Class. Further, no other JFPA actions are currently pending against Diamond. In the end, individualized trials would only result in duplicative cases, inconsistent rulings, and a waste of judicial resources.

  A class action would also be manageable. As previously explained, the common issues in this case predominate over any individualized issues. And a trial in this action will involve nearly all class wide proof. Indeed, Diamond used the same broadcast fax system, obtained fax numbers in the same manner, has no record of prior express permission for any of the class members, and marketed the same product in all of its marketing faxes.

  Therefore, the Court should find that the superiority requirement is satisfied.

## V. CONCLUSION

  The proposed Class should be certified. The proposed Class is sufficiently numerous, common questions of law and fact predominate over individual issues, Plaintiff's claims are typical of those of the class members, and Plaintiff is an adequate representative and is represented by counsel experienced in class action litigation. Further, common issues predominate over any supposed individual issues and a class action is the superior method for resolving the claims at issue. As such, Plaintiff respectfully requests that the Court certify the Class, appoint Patrick H. Peluso and Taylor T. Smith of Woodrow & Peluso, LLC as Class Counsel, appoint Plaintiff Katz as Class Representative, order that a Notice Plan be submitted within thirty (30)

days of certification, and grant all other and further relief that the Court deems reasonable and just.

Respectfully,

Dated: September 2, 2021

**JEFFREY KATZ CHIROPRACTIC, INC.**, individually and on behalf of all others similarly situated,

_/s/ Patrick H. Peluso_
One of Plaintiff's Attorneys

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso
ppeluso@woodrowpeluso.com*
Taylor T. Smith
tsmith@woodrowpeluso.com*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

_Counsel for Plaintiff and the Putative Class_

_*pro hac vice admission_

1

**CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies that a true and correct copy of the above papers was

3

served upon counsel of record by filing such papers via the Court's ECF system on September 2,

4

2021.

5

*/s/ Patrick H. Peluso*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28