Paul A. Grammatico (SBN 246380)
pgrammatico@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
333 S. Grand Avenue, Suite 2225
Los Angeles, CA 90071
Telephone: (213) 493-3980
Facsimile: (404) 400-7333

*Counsel for Defendant*

(Counsel continued on following page)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KATZ CHIROPRACTIC, INC., a California corporation, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>DIAMOND RESPIRATORY CARE, INC., a California Corporation<br><br>Defendant. | Case No.  3:20-cv-04108-CRB<br><br>**DEFENDANT, DIAMOND RESPIRATORY CARE, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**<br><br>Date:   December 3, 2021<br>Time:   10:00 a.m.<br>Crtrm: 6<br><br>Honorable Charles R. Breyer |

Ryan D. Watstein (*Pro Hac Vice*)
rwatstein@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

*Counsel for Defendant*

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso (*Pro Hac Vice*)
ppeluso@woodrowpeluso.com
Taylor T. Smith (*Pro Hac Vice*)
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, CO 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiff*

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT. ...................................1

II.     FACTUAL BACKGROUND. ........................................................................3

        A.      Background on Diamond and How It Obtained Consent. ......................3

        B.      Plaintiff Sues, Despite Not Knowing If It Has a Relationship with Diamond. .......4

        C.      Counsel Failed to Apprise Plaintiff of Important Information about Its Claims.....6

        D.      The Proposed Class Includes Numerous Members Who Did Not Receive a Fax Because It Is Impossible to Determine Who Received It. ...............................6

III.    RULE 23'S STRICT REQUIREMENTS. ........................................................7

IV.     ARGUMENT. ..............................................................................................8

        A.      The Court Should Deny Class Certification Because There Is No Ascertainable or Identifiable Class. ............................................................8

        B.      The Court Should Deny Class Certification Because Plaintiff Cannot Satisfy Rule 23(b)(3) or 23(b)(2). .................................................................10

                1.      With Regard to 23(b)(3), Individual Issues Predominate over Common Ones. ...............................................................................10

                        a)      Consent. ...............................................................................11

                        b)      Standing. ..............................................................................15

                        c)      Whether the Fax Was Received on a Virtual Fax. ........................17

                2.      With Regard to 23(b)(3), a Class Action Is Not Superior. ........................18

                3.      With Regard to 23(b)(2), the Ninth Circuit Has Barred Certification of TCPA Classes and, in Any Event, Certification Is Inappropriate for Various Other Reasons. ...............................................................19

        C.      The Court Should Deny Class Certification Because Plaintiff Cannot Satisfy Any of the Elements of 23(a). ................................................................21

                1.      Plaintiff Cannot Satisfy Numerosity. ......................................................21

                2.      Plaintiff Cannot Satisfy Commonality. ...................................................21

                3.      Neither Class Counsel Nor Plaintiff Are Adequate to Represent the Class. ...............................................................................22

                4.      Plaintiff Is Not Typical of the Classes It Seeks to Represent. ...................24

V.      CONCLUSION. ...........................................................................................25

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) .................................................................................7

*Arnold v. United Artists Theatre Cir., Inc.*,
    158 F.R.D. 439 (N.D. Cal. 1994) ...........................................................25

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    2014 WL 60097 (N.D. Cal. Jan. 7, 2014)................................................9

*Bais Yaakov of Spring Valley v. ACT, INC.*,
    12 F. 4th 81 (1st Cir. 2021) ..............................................................12, 13

*Balschmiter v. TD Auto Fin. LLC*,
    303 F.R.D. 508 (E.D. Wis. 2014)...........................................................20

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121 (9th Cir. 2017) .................................................................9

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
    631 F.3d 939 (9th Cir. 2011) .................................................................20

*Chinitz v. Intero Real Est. Servs.*,
    2020 WL 7391299 (N.D. Cal. July 22, 2020) ......................................8, 9

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ...................................................................................7

*Connelly v. Hilton Grand Vacations Co., LLC*,
    294 F.R.D. 574 (S.D. Cal. 2013) ...........................................................20

*Cordoba v. DIRECTV, LLC*,
    942 F.3d 1259 (11th Cir. 2019) .............................................................16

*Cordoba v. DIRECTV, LLC*,
    2020 WL 5548767 (N.D. Ga. July 23, 2020) .........................................16

*Craftwood II, Inc. v. Wurth Louis & Co.*,
    2018 WL 6258883 (C.D. Cal. Oct. 2, 2018) .............................12, 13, 14

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .................................................................20

*Espejo v. Santander Consumer USA, Inc.*,
    2016 WL 6037625 (N.D. Ill. Oct. 14, 2016) ....................................18, 19

ii

*Evans v. IAC/Interactive Corp.*,
    244 F.R.D. 568 (C.D. Cal. 2007)..................................................................................24

*Gannon v. Network Tel. Servs., Inc.*,
    2013 WL 2450199 (C.D. Cal. June 5, 2013)..........................................................15, 18

*Hayes v. Wal-Mart Stores, Inc.*,
    725 F. 3d 349 (3d Cir. 2013) ......................................................................................10

*Jackson v. Motel 6 Multipurpose, Inc.*,
    130 F.3d 999 (11th Cir. 1997)......................................................................................11

*Jamison v. First Credit Servs., Inc.*,
    290 F.R.D. 92 (N.D. Ill. 2013) .........................................................................9, 11, 20

*Kahu v. Vital Pharmaceuticals, Inc.*,
    621 Fed. Appx. 945 (11th Cir. 2015) ..........................................................................15

*Katz v. Capital Med. Educ., LLC*,
    2021 WL 3472809 (D.S.C. Aug. 6, 2021).....................................................................10

*Licari Fam. Chiropractic Inc. v. eClinical Works, LLC*,
    2019 WL 7423551 (M.D. Fla. Dec. 16, 2019) ...............................................12, 13, 14

*Manigo v. Time Warner Cable, Inc.*,
    2017 WL 5149225 (C.D. Cal. Apr. 4, 2017)................................................................22

*Marcus v. BMW of N. Am., LLC*,
    687 F.3d 583 (3d Cir. 2012) ........................................................................................15

*Marlo v. United Parcel Serv.*,
    639 F.3d 942 (9th Cir. 2011) .......................................................................................10

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .......................................................................................16

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000).......................................................................................23

*Meja v. DHL Express (USA), Inc.*,
    2016 WL 9450680 (C.D. Cal. Feb. 25, 2016) .............................................................11

*Minkler v. Kramer Labs., Inc.*,
    2013 WL 3185552 (C.D. Cal. Mar. 1, 2013) ..............................................................11

*Nebraska Press Assn. v. Stuart*,
    427 U.S. 539 (1976) .....................................................................................................20

*Parsons v. Ryan*,
    754 F.3d 657 (9th Cir. 2014) .......................................................................................19

iii

*Perez v. Metabolife Int'l, Inc.*,
  218 F.R.D. 262 (S.D. Fla. 2003) ...........................................................................9

*Raffin v. Medicredit, Inc.*,
  2018 WL 6011551 (C.D. Cal. May 11, 2018)......................................................23

*Revitch v. Citibank, N.A.*,
  2019 WL 1903247 (N.D. Cal. Apr. 28, 2019)................................................12, 13

*Shamblin v. Obama for Am.*,
  2015 WL 1909765 (M.D. Fla. May 27, 2020) ..............................................15, 18

*Shuckett v. DialAmerica Mktg., Inc.*,
  2019 WL 3429184 (S.D. Cal. July 30, 2019) .......................................................16

*Silver v. Pennsylvania Higher Educ. Assistance Agency*,
  2020 WL 607054 (N.D. Cal. Feb. 7, 2020) ....................................................12, 14

*Sliwa v. Bright House Networks, LLC*,
  333 F.R.D. 255 (M.D. Fla. 2019) .........................................................................21

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .........................................................................................16

*Trenz v. On-Line Administrators, Inc.*,
  2020 WL 5823565 (C.D. Cal. Aug. 10, 2020) ...............................................12, 14

*True Health Chiropractic Inc. v. McKesson Corp.*,
  2020 WL 7664484 (N.D. Cal. Dec. 24, 2020) .....................................................17

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ..........................................................................11, 12

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  No. 4:13-cv-2219 (N.D. Cal. Oct. 8, 2021) .........................................................18

*In re Twitter Inc. Sec. Litig.*,
  326 F.R.D. 359 (N.D. Cal. 2018) .........................................................................24

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) .............................................................................................11

*US W. Commc'ns, Inc. v. Hamilton*,
  224 F.3d 1049 (9th Cir. 2000) .............................................................................17

*Victorino v. FCA USA LLC*,
  322 F.R.D. 403 (S.D. Cal. 2017) .........................................................................24

*Vigus v. S. Illinois Riverboat/Casino Cruises*,
  274 F.R.D. 229 (S.D. Ill. 2011) ...........................................................................19

iv

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..................................................................................8, 21, 22

*Wortman v. Air New Zealand*,
   326 F.R.D. 549 (N.D. Cal. Aug. 8, 2018) ................................................................8, 9

*In re Yasmin*,
   2012 WL 865041 (S.D. Ill. Mar. 13, 2012) ...............................................................11

**Other Authorities**

*In Re Amerifactors Fin. Grp., LLC, Decl. Ruling*,
   34 F.C.C. Rcd. 11950 (FCC Dec. 9, 2019) ...............................................................17

*In the Matter of Westfax, Inc. Pet. for Consideration & Clarification*,
   30 F.C.C. Rcd. 8620 (2015) ..................................................................................17

**Statutes**

47 U.S.C. § 227 ...........................................................................................17

**Rules**

Fed. R. Civ. P. 23 ....................................................2, 7, 8, 10, 18, 20, 21, 22, 24

**Constitution**

U.S. Const., Amend. I.......................................................................................20

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT.

At the beginning of a pandemic, during a time when sanitizer was scarce, a small healthcare company ("Diamond") sent a targeted fax to consenting, existing clients—medical offices—letting them know that it had an available supply of hand sanitizer.  Most would consider attempting to aid the medical community during a time of a need a good deed—but not Plaintiff.  Instead, Plaintiff, a serial TCPA filer, saw an opportunity and sued, ultimately attempting to extract a payment 166 to 500 times its max possible recovery.  Plaintiff and its counsel's willingness to abandon the class and seek an extortionate settlement for Plaintiff's individual claim is not surprising because there is no possible class here to certify, as the numerous "class member" declarations attached hereto establish.

Nonetheless, when Diamond declined to bow to the outrageous demand, Plaintiff pressed forward.  Now, armed with zero evidence, Plaintiff seeks to certify a class of people whose fax numbers were obtained through a "generalized sales process" that is not defined and does not exist.  In addition to the obvious problem of certifying a class based on "generalized" interactions, the class is unidentifiable and administratively infeasible.  Indeed, Plaintiff concedes that the list of fax numbers comprising its asserted class contains thousands of numbers that never even a received a fax.  And Plaintiff fails to propose any way, much less an administratively feasible way, to identify the members of the supposed class who received a transmission, if any, much less after providing their fax number through a "generalized sales process," whatever that means.

But the biggest problem for Plaintiff is this: a litany of individualized inquiries predominate over any common questions.  That is because Diamond, as a rule, faxed only numbers for which it had obtained consent, which is a complete defense to a TCPA claim.  Thus, thousands of mini-trials will be required as to every number to determine the interaction through which Diamond

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

obtained consent, precluding class certification.  The putative class member declarations and other evidence attached hereto establish this.

This evidence also establishes that mini-trials would be required to determine the historical user of the fax number, whether that user actually received a fax, and whether the fax was received on a traditional fax or an internet-based fax service.  If the latter, which the attached declarations show are used by putative class members, Ninth Circuity authority dictates such class members have no claim.  Plaintiff offers *nothing* in its Motion—neither evidence nor argument—to show that these problems can be overcome or that a trial could feasibly proceed here without violating Diamond's due process rights to assert these and other dispositive defenses as to every claimant.

Thus, the fact-intensive individual inquiries here (which Plaintiff ignores) would overwhelm any common issues at a class trial, precluding certification of a damages class under F.R.C.P. 23(a)(3)—as the numerous cases cited herein establish.  And Plaintiff cannot evade its inability to show predominance and superiority under 23(a)(3) via an injunctive class under 23(a)(2) for a litany of reasons—including because binding authority bars certification under that provision where, as here, the class would be entitled to monetary damages.

Plaintiff also fails to satisfy *any* of the remaining requirements of Rule 23, and Plaintiff bears the burden to prove all of them.  For example, Plaintiff cannot establish commonality for the reasons described above, nor can it show numerosity or typicality, as it has not shown that a *single* person (including Plaintiff) falls within its class definition.  And even if there were not numerous other reasons to deny class certification here, Plaintiff and its counsel are inadequate representatives.  Indeed, their unethical actions in soliciting declarations that "contained false statements"—this is a quote from class member declarations—and seeking an extortionate individual settlement from a struggling, small business during a pandemic prove them unfit to prosecute this action individually, much less on behalf of an entire class.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

Diamond respectfully requests the Court deny Plaintiff's motion for class certification.

## II.      FACTUAL BACKGROUND.

### A.      Background on Diamond and How It Obtained Consent.

Diamond is a small healthcare company that provides respiratory therapy and medical equipment to patients with chronic lung disease, various end stage disorders, and more recently people recovering from COVID-19.  Rice Decl. ¶ 5.  Diamond sells its products to clinicians and directly to patients who have prescriptions for the medical equipment.  *Id*.

As part of its business, Diamond communicates daily with prospective and current customers over the phone and via facility visits.  *Id*. ¶ 6; Diamond Dep. (Grammatic Decl., Ex. A) at 30:17–21.  Diamond's customers often communicate by fax because they are subject to HIPAA. Rice Decl. ¶ 8.  Diamond's sales process is not static or uniform; rather, Diamond encourages its sales representatives to interact with customers face-to-face and over the phone to organically develop relationships with their customers.  *Id.* ¶ 7; Diamond's Resp. to Interrog. 18 (Grammatico Decl., Ex. D).  Diamond does not have a sales script, and there is no specific method by which sales reps must obtain contact information or consent to contact them.  Rice Decl. ¶ 7.

Because of these practices, Diamond's current and prospective customers consent to receive faxes from Diamond in various ways.  *See* Rice Decl. ¶¶ 6–10; *see also*, Decls. of Ibarra, Rances, Medina, Rodriguez, Politico, Stadler, Ramos, Avila, Briceno, O'Campo-Cruz, Castellanos, Castillo, Quinonez, and Ambartsumian (collectively "Customer Decls.") (establishing consent for Diamond to send faxes like the one at issue).  This includes obtaining express permission to send marketing and informational materials in the context of an individualized overview of Diamond's business, and simply asking to send them information, by fax or otherwise, including information on promotions or products.  Rice Decl. ¶¶ 6, 10; Diamond Dep. at 85:1–15, 73:1–7.  Prospective and current customers also regularly give Diamond's reps their business cards during facility visits

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

in response to Diamond's description of its business services, thereby expressing a desire to receive information (including advertisements) regarding Diamond's products via the contact information provided.  Rice Decl. ¶ 9.

Diamond's customers, which include many physician's offices, typically have numerous employees, who come and go over time, and Diamond typically communicates with the employees, not the actual physicians.  *Id*. ¶ 11; *see generally*, Customer Decls. ("There are **multiple** people at the Office that communicate with Diamond . . . ." (emphasis added)).

Diamond uses a customer relationship management system (or "CRM") to maintain the contact information of its customers.  Rice Decl. ¶ 12.  The fax numbers to which the hand-sanitizer fax at issue in this case were attempted to be sent were primarily culled from this source.  *Id*.  In connection with Plaintiff's Motion, Diamond and its counsel engaged in time-intensive interviews of almost two dozen physicians' offices from Diamond's CRM, which took over a collective approximately 130 hours.  *Id*. ¶¶ 14–15.  All of them confirmed they had prior relationships with Diamond and, during the course, gave consent to send faxes like the hand-sanitizer fax at issue.  Aragon Decl. ¶¶ 6–7.[1]  Fourteen of these were willing to sign sworn statements saying so.  *See generally*, Customer Decls. (establishing consent to send faxes like the one at issue).  It would take similar individual examinations of every individual or entity to determine when and how such individual or entity consented to receive faxes.  Rice Decl. at ¶ 16.

**B.    Plaintiff Sues, Despite Not Knowing If It Has a Relationship with Diamond.**

Plaintiff is a chiropractic clinic owned and run by Jeffrey Katz, who also served as Plaintiff's designated deposition witness.  Katz Dep. (Grammatico Decl., Ex. B) at 17:13–25.  Katz is also a serial TCPA filer who has filed so many suits that he struggles to remember any of them.

---

[1]    Plaintiff (at 17) claims that it was "underhanded" to compile evidence to defend itself by interviewing putative class members regarding consent.  That accusation is unfounded and incredible.  *See* Grammatico Decl. ¶ 5.  What suits that term is Plaintiff's attempts to solicit false statements from the declarants in an effort to put a small company out of business for trying to help its clients during a pandemic.  *See* Avila Supp. Decl.; Rances Supp. Decl.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

*Id*. at 10:17–25, 11:1–18.  The basis of Plaintiff's case is its alleged receipt of a fax stating "HAND SANITIZER NOW IN STOCK" that it allegedly received from Diamond on or about April 23, 2020.  Compl., Ex. A.  Importantly, however, this is not a "blast fax" case where an advertisement is sent out *en masse* to the general public.  This was a one-off transmission during a pandemic that was sent only to customers, who consented in various ways.  As Diamond explained during its deposition, the fax was intended "to let clinicians know that this product, which was in very, very short supply [] at the beginning of the pandemic -- this was to let clinicians know that we had this available."  Diamond Dep. at 54:12–18.  Diamond elaborated further on the purpose of the fax:

> We have to go back to the beginning of the pandemic … if you remember … there was nothing on the shelves … there was -- you know, food was even, to some degree, scarce.  Before that, cleaners started to become quite scarce. On our side, in the home care side, there was -- there was just nothing.  All of the supplies were going to the hospitals.  Home care had this dire situation where we had no cleaners, we had no supplies, we couldn't get gloves, we couldn't get masks, so we came across this particular product in a supply that was more than we needed for our use. We offered that to our -- you know, call them our referral partners or the people that send us stuff because it was -- this was a dire situation.  We couldn't safely see patients in the home without an adequate sanitizer.

*Id*. at 55:21–56:13.

Where Diamond saw an opportunity to assist home care providers of very ill patients with a badly needed product and save lives, Katz—who did not even see the fax before it was sent to his attorney—saw an opportunity to continue profiteering off the TCPA.  *See* Katz Dep. at 51:22–52:21.  Plaintiff apparently had no reservations about this, despite confirming the same points regarding hand sanitizer during the early stages of the pandemic.  In particular, Katz acknowledged during his deposition that:

- Plaintiff was in need of hand sanitizer at the time it received the fax (*Id*. at 55:9–13);
- There was a shortage of hand sanitizer at that time in the medical community (*Id*. at 55:19–20); and
- He did not know whether his office purchased hand-sanitizer from Diamond (*Id*. at 56:14–17).

5

Katz also testified he has multiple employees and does not know if any of them have a relationship with Diamond. *Id.* at 61:13–17. And while he did claim that he did not provide his fax number to Diamond, he also did not inquire (so he cannot know) whether any of his employees did. *See, e.g., id.* at 37:18–24 (Q: Do you recall ever having requested additional information from a salesperson who entered your office? A: Not at the moment. Not that I recall: Q: What about the other chiropractor who works in your office? A: I wouldn't know, but most likely she would not respond to solicitors.").

Further highlighting Plaintiff's inadequacy as a class representative, Katz acknowledged:

- He did not make the decision to hire his attorneys in this case (*Id.* at 65:6–21);
- He never reviewed—and his attorneys never showed him—the detailed individual settlement offer Diamond conveyed to him (*Id.* at 83:3–10, Ex. C);
- He demanded $250K in an individual settlement (*Id.* at 85:20–86:5); and
- He spent no more than two hours participating in the case, excluding his deposition, since its inception (*Id.* at 70:3–9).

**C.     Counsel Failed to Apprise Plaintiff of Important Information about Its Claims.**

In July 2021, Diamond sent a detailed letter to Plaintiff's counsel explaining why this case could never be certified, attaching nine putative class member declarations. Grammatico Decl., Ex. C. It explained that Diamond only faxed individuals from whom it had procured consent. *Id.* at 2–3. In response, Plaintiff agreed to abandon his class claims but demanded $250,000 to do so, which is 500 times the available statutory damages (166 times even if Plaintiff proved willfulness—which he cannot do because the fax was intended to be sent to consenting recipients). Katz Dep. at 84:6–12, 85:20–86:19. Katz testified that he had never even seen the letter. *Id.* at 82:22–83:18.

**D.     The Proposed Class Includes Numerous Members Who Did Not Receive a Fax Because It Is Impossible to Determine Who Received It.**

Plaintiff's motion seeks to certify the following class:

> All persons who, from the date June 22, 2016, through the date notice is sent to the Class, received at least one telephone facsimile message substantially

6

similar to Exhibit B [the hand-sanitizer fax] where prior express permission or invitation to send the faxes was supposedly obtained by Diamond through its general sales process.

In support, Plaintiff asserts (at 4) that it has a "fax list" with 19,985 fax numbers. In the next breath, however, Plaintiff concedes that, of the 19,985 intended recipients on the list, he only has proof that jBlast, the third party that sent the fax, attempted to send the fax to 17,219 numbers—that is the total number of faxes reflected on the jBlast Job Summary Reports. *See* Motion, Ex. C (jBlast Job Summary Reports). And, further, because the jBlast Summary Reports do not show any fax numbers and jBlast produced no records pertaining to the subject fax, there is no evidence whatsoever regarding what numbers the fax was actually sent to. For example, we do not know which of the 17,219 actually received the fax of the intended 19,985. In other words, Plaintiff concedes that he has no evidence regarding to what numbers the fax was sent, and its proposed "class list" contains thousands of individuals who definitively never received a fax. But the ascertainability problem is even worse than that because the jBlast Reports also demonstrate that there are thousands of additional numbers that were removed prior to transmission or for which the transmission failed—meaning there are thousands of additional numbers on the proposed list that will lack standing because they did not receive a fax. *See id.*; Clark Decl. ¶¶ 4–7. Further, jBlast confirmed that it has no information regarding to whom the fax was sent, when it was sent, and whether it was received on an internet-based "virtual fax" service. Clark Decl. ¶¶ 4–7.

## III.    RULE 23'S STRICT REQUIREMENTS.

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). To police this exception, Rule 23 imposes "stringent requirements" for certification. *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). "Rule 23 does not set forth a mere pleading standard"; rather, a "party seeking class certification must affirmatively demonstrate his

compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). Certification is proper only if "the trial court is satisfied, after a rigorous analysis," that Rule 23 is satisfied. *Id.* It is Plaintiff's burden to prove, by a preponderance, that Rule 23's stringent requirements are met. *Id.* at 351; *Wortman v. Air New Zealand*, 326 F.R.D. 549, 554 (N.D. Cal. Aug. 8, 2018) (Breyer, J.) (same).

Meeting this burden is "a three-step process. First, plaintiffs must demonstrate that an identifiable and ascertainable class exists … Second, plaintiffs must meet the four explicit requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy … Third, plaintiffs must show their proposed classes fulfill one of Rule 23(b)'s three requirements." *Wortman*, 326 F.R.D. at 554 (cleaned up). Plaintiff seeks certification under two provisions of Rule 23(b). It seeks to certify a "damages class"' under (b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods[.]" Plaintiff also seeks to certify an injunctive relief class under (b)(2), which requires the defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief [] is appropriate respecting the class as a whole[.]"

Here, Plaintiff cannot meet its burden on any of these three steps.

## IV.    ARGUMENT.

### A.    The Court Should Deny Class Certification Because There Is No Ascertainable or Identifiable Class.

"A class is not ascertainable unless membership can be established by means of objective, verifiable criteria[.]" *Id.* at 555 (cleaned up). Relatedly, ascertainability requires the class definition be such that it is administratively feasible for the court to ascertain whether an individual is a member before trial. *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623, 2020 WL 7391299, at *7 (N.D. Cal. July 22, 2020) (quot. omitted). Here, Plaintiff claims its class is comprised of

businesses who (a) received a fax; (b) where their consent was "supposedly" obtained through a "general sales process." This class fails both ascertainability requirements.

*First*, Plaintiff's class is not objectively defined because it is impossible to determine who "supposedly" consented "through [Diamond's] general sales process." Plaintiff offers no description of what the "general sales process" is, which is unsurprising because there is no specific process. Rather, the evidence establishes that Diamond's customers consented to receive faxes from Diamond in various ways, including by asking Diamond to fax them. *See* Rice Decl. ¶¶ 6–10. Therefore, the Motion fails at the outset because the class is hopelessly vague. *See, e.g.*, *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 266–67 (S.D. Fla. 2003) (denying certification where class definitions vague and thus unmanageable).

*Second*, Plaintiff proposes no administratively feasible way to ascertain whether an individual is a member, twice over.[2] Initially, there is no way to determine who consented via the "general sales process," as explained immediately above. Additionally, Plaintiff has no way to identify who received a fax, which is the other prerequisite to class membership. *See Chinitz*, 2020 WL 7391299, at *7. Plaintiff concedes that its proposed "fax list" (intended recipients) has *thousands* of numbers that did not receive a fax. Motion at 4:20–27. And it also contains additional *thousands* of numbers that were removed prior to transmission or for which the transmission failed. *See* Motion, Ex. C; Clark Decl. ¶¶ 4–7. There is also no evidence regarding what numbers the fax was actually transmitted. *See* Clark Decl. ¶¶ 4–7. Given these problems, Plaintiff (by his own admission) has no idea which numbers received a fax and is forced to suggest (at 7) that potential claimants "submit some records, such as affidavits or other supporting

---

[2]     As this Court has stated, and as Plaintiff's Motion acknowledges, although "the ascertainability requirement is not explicitly required by the Federal Rules of Civil Procedure … courts in this district routinely require plaintiffs to demonstrate it as part of Rule 23 class certification motions." *Wortman*, 326 F.R.D. at 554 n.3 (Breyer, J.); Motion at 6:25–28; *accord Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387, 2014 WL 60097, at *1 (N.D. Cal. Jan. 7, 2014). Under *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127-28 (9th Cir. 2017), "administrative feasibility" is viewed as encompassed under the superiority requirement of 23(b)(3).

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

documentation . . . to establish class membership."

But this proposal fails.  Plaintiff has submitted no method and offered no evidence for how the Court would identify historic users of the fax numbers on the list.  And even if that could be done in a reliable and administratively feasible process (it cannot), Plaintiff would still face the insurmountable problem of how to prove class membership via receipt of a fax on a class-wide basis.  Very few people, if any, will recall receiving the fax (*see generally* Customer Decls), and submitting a copy of the fax proves nothing because it could simply be printed from the docket. Just as Plaintiff cannot use declarations to prove whether defenses do or do not apply, *see infra* at IV.B.1, Plaintiff cannot use them to establish class membership without violating Diamond's Due Process rights.  Accordingly, the Motion fails because the class is not ascertainable.  *See Katz v. Capital Med. Educ., LLC*, No. 3:20-cv-02524, 2021 WL 3472809, at \*6 (D.S.C. Aug. 6, 2021) (denying motion to certify TCPA fax case where no "feasible method for identification of fax recipients"). [3]

**B.   The Court Should Deny Class Certification Because Plaintiff Cannot Satisfy Rule 23(b)(3) or 23(b)(2).**

**1.   With Regard to 23(b)(3), Individual Issues Predominate over Common Ones.**

Pursuant to Rule 23(b)(3), Plaintiff must prove: (1) common issues "predominate over questions affecting only individual members"; and (2) a class action is "superior" to other methods of adjudicating this dispute.  *Marlo v. United Parcel Serv.*, 639 F.3d 942, 947 (9th Cir. 2011).  To show predominance, Plaintiff must "establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those that are

---

[3]   Contrary to Plaintiff's argument (at 8), Diamond is not required to anticipate class actions that might be filed against it and enact recordkeeping practices—not required by any law—to help identify members of future class actions.  *See Hayes v. Wal-Mart Stores, Inc.*, 725 F. 3d 349, 356 (3d Cir. 2013) ("[T]he nature or thoroughness of a defendant's record keeping does not alter the plaintiff's burden to fulfill Rule 23's requirements. . . . Rule 23's requirements cannot be relaxed or adjusted on the basis of [Plaintiff's] assertion that [Defendant's] records are of no help to him.").

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

subject only to individualized proof.'"  *Minkler v. Kramer Labs., Inc.*, No. CV 12-9421, 2013 WL 3185552, *5 (C.D. Cal. Mar. 1, 2013).  Critically, the evidence used to satisfy predominance must be "sufficient to sustain a jury finding as to [liability] if it were introduced in each [plaintiff's] individual action."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016).  It is Plaintiff's burden to prove that individualized inquiries are not necessary and will not predominate.  *See In re Yasmin*, No. 3:09–md–02100, 2012 WL 865041, at *21 n.51 (S.D. Ill. Mar. 13, 2012) ("It is not defendant's burden … to prove that class certification is improper."); *accord Meja v. DHL Express (USA), Inc.*, No. CV-15-890, 2016 WL 9450680, at *6–7 (C.D. Cal. Feb. 25, 2016).

Here, even if Plaintiff could **identify** its proposed class (it cannot), mini-trials would still be required on a litany of issues to determine whether Defendants are **liable** to each of the proposed class members.  Thus, Plaintiff has not and cannot satisfy its burden to show that common issues predominate over those "subject only to individualized proof" at trial, as it must.  *See Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (cit. omitted).

### a) Consent.

"Prior express invitation or permission," *i.e.*, consent, is a complete defense to a TCPA claim.  *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018).  Under Ninth Circuit authority, where a defendant offers evidence that customers consented to receive the fax in a variety of ways, that defeats predominance, thus precluding class certification.  *Id.*; *see also Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106–07 (N.D. Ill. 2013) (denying class certification where consent defense would require a series of "mini-trials" to determine liability).  This is particularly true where, as here, the consent defense is "based on individual communications and personal relationships between [the defendant's] representatives and their customers."  *True Health*, 896 F.3d at 931 (affirming denial of class certification as to fax recipients whose consent defendant obtained via "individual communications and personal

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

relationships" because "[t]he variation in such communications and relationships" defeated predominance).

Following *True Health*, courts in this circuit and across the country have continued to deny class certification where the question of consent "will devolve into individualized inquiries which would overwhelm the trial." *See Revitch v. Citibank, N.A.*, No. C 17-06907, 2019 WL 1903247, at *4 (N.D. Cal. Apr. 28, 2019) (denying class certification on that basis); *Silver v. Pennsylvania Higher Educ. Assistance Agency*, No. 14-CV-00652, 2020 WL 607054, at *11 (N.D. Cal. Feb. 7, 2020) (denying certification where "the need to inquire into the parties' specific statements and actions to make such determination [about each potential class member's consent] effectively eliminate[d] classwide proof on that issue"); *Craftwood II, Inc. v. Wurth Louis & Co.*, No. SACV1700606, 2018 WL 6258883, at *8 (C.D. Cal. Oct. 2, 2018) (individualized questions regarding consent defeated predominance where company distributed faxes to customers who consented to receive them rather than population at large).[4]

In *True Health*, the Ninth Circuit held that "[a] defendant can produce evidence of a predominance-defeating consent defense in a variety of ways" 896 F.3d at 932. This includes through "individual communications and personal relationships between [defendant's] representatives and their customers." *Id.* Here, Diamond submitted evidence—deposition testimony, written discovery responses, a declaration of its President, a declaration of its sales manager, and over a dozen customer declarations—that it sent the subject fax to customers who consented to receive it. And this evidence establishes that most, if not entirely all, consented to receive marketing and other faxes through direct conversations with Diamond's sales

---

[4]   *See also Trenz v. On-Line Administrators, Inc.*, No. 2:15-CV-08356-JLS-KS, 2020 WL 5823565, at *8 (C.D. Cal. Aug. 10, 2020) (decertifying class where plaintiff's subclass proposal "fail[ed] to account for the 'nearly endless' permutations" of methods by which defendants obtained consent); *Bais Yaakov of Spring Valley v. ACT, INC.*, 328 F.R.D. 6, 13 (D. Mass. 2018), *aff'd*, 12 F. 4th 81 (1st Cir. 2021); *Licari Fam. Chiropractic Inc. v. eClinical Works, LLC*, No. 8:16-CV-3461 , 2019 WL 7423551, at *11 (M.D. Fla. Dec. 16, 2019).

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

representatives.[5]   Rice Decl. ¶¶ 6–10;  Diamond Dep. at 84:24–86:6, 161:4–24, 168:3–169:9, 177:14–178:24;  Customer Decls.   More specifically, some customers expressly requested that Diamond fax them information about its products, while others gave consent to receive faxes upon Diamond's request.   Rice Decl. ¶¶ 8, 10;  Diamond Dep. at 84:24–85:15.   Indeed, Diamond obtained more than a dozen declarations from the intended recipients of the faxes at issue, most of whose numbers appear on the purported "class list."  *See, e.g.*, Quinonez Decl. (explaining Dr. Joel Doughten's office has done business with Diamond for at least 13 years and stating, "In the context of this business relationship and during its communications with Diamond, the Office voluntarily provided its fax number to Diamond and consented to receiving faxes providing its express invitation or permission to Diamond, including to receive [the subject fax].");  Aragon Decl. ¶¶ 6–7.

Thus, Diamond has presented sufficient evidence of consent, obtained by a variety of methods, based on individual communications and long-standing relationships with its customers. See *Licari*, 2019 WL 7423551, at *11 (holding the defendant "provided sufficient, non-speculative evidence demonstrating that the issue of consent is individualized and will predominate in this matter," which consisted of deposition testimony of its CEO and corporate representative and employee declarations as to the various ways defendant obtained consent, as well as customer declarations attesting they consented to receive the fax); *Revitch*, 2019 WL 1903247, at *4 (same); *Bais*, 328 F.R.D. at 13 (same); *Craftwood*, 2018 WL 6258883, at *8 (finding sufficient evidence of consent defense based on customer declarations stating, "I am a longtime customer of [the defendant].  I have received fax advertisements from [the defendant].  I consented to receive those (and other) faxes.").   To the extent that Plaintiff or any purported class members disputes this

---

[5]       Plaintiff (at 1) argues it is significant that Diamond has no written record of consent; however, no such record is legally required, and, further, this argument ignores the circumstances surrounding how Diamond obtained consent—which was often through sales representatives receiving contact information contemporaneously with consent to receive faxes.  *See* Rice Decl. ¶ 6–10.  Thus, the very existence of the fax numbers in Diamond's database is evidence of consent.  *See id*; Diamond Dep. at 84:24–87:24.  Regardless, Diamond has established consent through the declarations of putative class members.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

evidence, individualized inquiries will be required to resolve such disputes—including cross examination of multiple current and former employees from the various physicians' offices at issue. *See Silver*, 2020 WL 607054, at \*11; *Craftwood*, 2018 WL 6258883, at \*8; *Licari*, 2019 WL 7423551, at \*11. Individualized investigations into consent would be particularly important here, because the physician's offices comprising Diamond's customers have numerous employees who come and go—and Diamond typically communicates with them, not the actual physicians. Rice Decl. ¶ 11; *see generally*, Customer Decls. Because Diamond has provided sufficient, non-speculative evidence of consent, it is Plaintiff's burden to show that consent is susceptible to common proof. *See Silver*, 2020 WL 607054, at \*12 (cit. omitted); *Trenz*, 2020 WL 5823565, at \*8 (cleaned up). Plaintiff has not and cannot do so.

Plaintiff attempts to argue otherwise by suggesting Diamond had a generalized sales process in which consent was never obtained—but this is flatly contracted by the evidence. Indeed, this is not a case where a defendant had a specific, legally deficient sales script that all its salespeople followed, or where a defendant purchased a list of non-consenting members of the public. *See* Rice Decl. ¶ 7. Instead, Diamond's sales reps interacted with and organically developed relationships with their customers, often over a period of years. *Id.*; *see generally* Customers Decls. Every single personal interaction between Diamond's sales representatives and their customers was necessarily unique. Accordingly, this case will be rife with individualized consent issues necessitating "mini trials" to determine liability as to every fax recipient. A fact finder would have to hear testimony about the recollections of all Diamond's sales representatives and thousands of current and former employees of physicians' offices regarding conversations that occurred over five years ago. *See Silver*, 2020 WL 607054, at \*17 (denying class certification in TCPA case due to "the need to inquire into the parties' specific statements and actions to make such determination"). Thus, Plaintiff cannot satisfy its burden to show that common issues

predominate.

Nor can affidavits solve this problem—to the extent Plaintiff suggests that, which is unclear—as Diamond would be entitled to contest each.  Indeed, as consent is a complete defense to Plaintiff's TCPA claim, Diamond is entitled to **prove** at trial that it had consent to send **every** fax.  Thus, the exact type of fact disputes that would be typical here—whom Diamond communicated with and what was said—would require cross examination and discovery as to multiple current and ex-employees for even one office.  That is proven true even by looking at Plaintiff's own individual case, as Katz was unable to confirm his office had no relationship with Diamond, or that none of the people in his office had spoken with Diamond.  *See* Katz Dep. at 61:13–17; 37:18–24.[6]

Accordingly, class certification must be denied because of consent alone.  *See Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2015 WL 1909765, at *7 (M.D. Fla. May 27, 2020) (recognizing "constitutional right to a jury determination as to whether any person consented to receiving calls to their cellular telephone.") (cit. omitted); *Gannon v. Network Tel. Servs., Inc.*, No. CV-12-9777, 2013 WL 2450199, at *4 (C.D. Cal. June 5, 2013), *aff'd*, 628 F. App'x 551 (9th Cir. 2016); *Kahu v. Vital Pharmaceuticals, Inc.*, 621 Fed. Appx. 945, 948 (11th Cir. 2015); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012) ("Forcing [Defendants] to accept **as true** absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications.") (emphasis added).

**b)     Standing.**

---

[6]        Diamond anticipates that Plaintiff will produce a supplemental declaration from Rosa Briceno in which she now states she does "not recall" if Diamond was given consent.  But this apparent memory lapse simply **confirms** Diamond's point: an individualized inquiry into thousands of persons' fading recollections is required to determine consent.  Further, it is noteworthy that Ms. Briceno did not change her prior statements that her company uses a "virtual fax" service (which is alone a dispositive individualized issue as explained *infra*) and that it has done business with Diamond for years.  Finally, the circumstances by which Plaintiff's counsel obtained this declaration calls it into question, considering other putative class members confirmed Plaintiff's counsel was not clearly identifying himself and was seeking false testimony.  *See* Avila Supp. Decl.; Rances Supp. Decl.  And presumably Plaintiff's counsel attempted to contact **all** of these declarants, but could obtain no additional declarations.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2214 (2021) held that all putative class members must have standing to recover. *See also Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("[N]o class may be certified that contains members lacking Article III standing."). Accordingly, Plaintiff must be able to resolve standing on a class wide basis, or else certification must be denied on predominance grounds. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019) (remanding case because "individualized issue of standing will predominate over common issues in the case, when it appears that a large portion of the class does not have standing . . . and making that determination for these members will require individualized inquiries").[7]

Here, individualized inquiries would be required for each putative class member to determine both if they even received a fax from Diamond ***and*** if they suffered any injury from the fax. This is evidenced by the fact that Plaintiff's proposed class list contains thousands of numbers that Plaintiff concedes received no fax, in addition to all the other recipients that suffered no injury (and thus will lack standing) because they consented to receiving such faxes or were not even aware that they received them. *See Shuckett v. DialAmerica Mktg., Inc.*, No. 17CV2073, 2019 WL 3429184, at *3 (S.D. Cal. July 30, 2019) (finding plaintiff suffered no concrete harm and thus lacked standing under the TCPA where she received a single call and there was no evidence she noticed it); *TransUnion*, 141 S. Ct. at 2205 ("Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to ***independently*** decide whether a plaintiff has suffered a concrete harm under Article III.") (emphasis added); Motion at 4:20–27, Group Ex C.; Clark Decl. ¶¶ 4–7; *see generally* Customer Decls. Thus, the question of whether each class member has standing must be resolved individually, as to each class member, defeating predominance. *See Cordoba*, 2020 WL 5548767, at *4–7 (denying certification

---

[7] The district court then denied certification after the remand on predominance grounds. *Cordoba v. DIRECTV, LLC*, No. 1:15-CV-3755, 2020 WL 5548767, at *4–7 (N.D. Ga. July 23, 2020).

on remand).

### c)       Whether the Fax Was Received on a Virtual Fax.

In addition to the individualized issues regarding consent and standing, Plaintiff faces the unsolvable problem of whether the fax was received on an internet-based virtual fax machine or a traditional fax machine.  The Consumer and Government Affairs Bureau of the FCC has held that "an 'online fax service' is not a 'telephone facsimile machine' under the TCPA."  *True Health Chiropractic Inc. v. McKesson Corp.*, 2020 WL 7664484, at *4 (N.D. Cal. Dec. 24, 2020); *see In Re Amerifactors Fin. Grp., LLC, Decl. Ruling*, CG Docket No. 02-278, CG Docket No. 05-338, DA 19-1247, 34 FCC Rcd 11950 (FCC Dec. 9, 2019).  Thus, if a fax is received on an online fax service, as opposed to a traditional machine, there is no viable TCPA claim because "an online fax service . . . falls outside the scope of the statutory prohibition."  *True Health*, 2020 WL 7664484, at *4.[8]  Further, "the Ninth Circuit has indicated that [because of the Hobbs Act] district courts do not have jurisdiction to question the validity of FCC final orders, and district courts have recognized this limitation."  *Id*. at *6; *US W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1055 (9th Cir. 2000), *as amended on reh'g* (Sept. 13, 2000).

Here, in addition the other individualized inquiries, Plaintiff cannot establish with class-wide proof whether a particular fax was received on a traditional machine or an online fax—and we know from the Customer Declarations that many of the putative class members did not exclusively use a traditional fax machine.  *See, e.g.*, Briceno Decl., Castellanos Decl.; GLAD & MUSCOLINO, FAX MARKET PULSE: TRENDS, GROWTH AND OPPORTUNITIES, IDC (2017), 12–13 (https://www.opentext.com/file_source/OpenText/en_US/PDF/opentext-idc-survey-fax-marketpulse%20-en.pdf.) (last visited October 11, 2021) (estimating that only 36% of monthly fax

---

[8]       This makes sense because the TCPA applies to faxes sent "as a fax over a telephone line to a device that meets the statutory definition of 'telephone facsimile machine[.]'"    *In the Matter of Westfax, Inc. Pet. for Consideration & Clarification*, 30 F.C.C. Rcd. 8620, 8623 (2015).  An online fax is sent over the internet, not a regular telephone line, and thus online faxes fall outside the plain language of the TCPA.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

volume was sent or received using standalone fax machines).   Further, jBlast (which sent the transmissions) confirmed that it has no method to determine whether the subject fax was received on a traditional fax machine or a via an internet-based "virtual fax" service.   Clark Decl. ¶ 6. Plaintiff does not even acknowledge this issue, much less prove, as is its burden, that it has a viable way of resolving it.

This too precludes a finding of predominance, as a Court in this District held just this week. *See* Minute Entry for Proceedings, *True Health Chiropractic, Inc. v. McKesson Corp.*, No. 4:13-cv-2219, [Dkt. 485] (N.D. Cal. Oct. 8, 2021) (decertifying class where consumers failed to submit class-wide proof that fax was received via traditional machines rather than online fax services).

### 2.     With Regard to 23(b)(3), a Class Action Is Not Superior.

Class certification should also be denied because, here, "a class action" is not "superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).   As noted, were this case to be certified, Plaintiff would first face the impossible task of identifying historic users of the fax numbers at issue and whether the numbers actually received a fax, and then the parties would have to conduct thousands of mini-trials about consent, standing, whether the fax was received on a traditional machine, etc.   Diamond would then be entitled, as a matter of due process, to call tens of thousands of witnesses at trial to resolve those issues.   *See Shamblin*, 2015 WL 1909765 at *7; *Gannon*, 2013 WL 2450199, at *4.   No such class action could *ever* be tried.

Moreover, the TCPA provides "built-in incentives for aggrieved plaintiffs to litigate individually" rather than on a class-wide basis: statutory damages of $500 to $1,500 for a single fax.   *Espejo v. Santander Consumer USA, Inc.*, No. 11 C 8987, 2016 WL 6037625 at *12 (N.D. Ill. Oct. 14, 2016).   The superiority of individual actions holds true even where there are just a few faxes involved, as recipients are free to file in small claims court, a "more speedy" venue.   *See*

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

*Vigus v. S. Illinois Riverboat/Casino Cruises*, 274 F.R.D. 229, 238 (S.D. Ill. 2011) (putative TCPA class members "have a quick, adequate and superior remedy in other more speedy venues such as, for example, a small claims court").

In sum, combining "the substantial difficulties involved in identifying putative class members" and the numerous individual inquiries that would be necessary at trial with "the admitted and demonstrated incentive of individuals to sue on their own behalf compels the conclusion that class treatment . . . is neither necessary nor superior to individual actions which have done, and can do, the same." *Espejo*, 2016 WL 6037625 at \*12.

> ### 3. With Regard to 23(b)(2), the Ninth Circuit Has Barred Certification of TCPA Classes and, in Any Event, Certification Is Inappropriate for Various Other Reasons.

Plaintiff also moves to certify a class under 23(b)(2), which permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  This section applies "'only when a single injunction or declaratory judgment would provide relief to each member of the class.  It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant . . . .'"  *Parsons v. Ryan*, 754 F.3d 657, 686 (9th Cir. 2014) (quoting *Dukes*, 564 U.S. at 360).  The "primary role of this provision has always been the certification of civil rights class actions."  *Id*.

Here, Plaintiff cannot certify a class under 23(b)(2) for the same reasons described above: there is no uniform injunction that could possibly be entered because the Court would need to examine individualized issues regarding standing and consent (among others) for **every** putative class member.  Indeed, the Court could not issue a blanket injunction against Diamond for simply legally pursuing its business activities by contacting its consenting customers, as that would violate

19

Diamond's rights to free speech.  *See, e.g., Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 559 (1976) ("[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights.").

In addition to this dispositive point, there is no 23(b)(2) class for various other reasons. *First*, it is not even possible to evaluate Plaintiff's claim to certify a class seeking injunctive relief because Plaintiff does not specify what specific injunction it is seeking.  *See* Fed R. Civ. P. 23 Subdivision (b)(2) advisory committee's note to 1966 amendment ("This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate.").

*Second*, the Ninth Circuit has made explicit that "Rule 23(b)(2) 'does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.'"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011) (quoting *Dukes*, 564 U.S. at 360).  Here, anyone who received a fax in violation of the TCPA would be entitled to $500 (and Plaintiff is seeking such an award for each class member).  Compl. ¶ 11.  Thus, even if there were a viable injunctive relief class (there is not), binding authority compels that such a class may not be certified here.  *See Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. 2013) (holding the availability of statutory damages renders "Plaintiffs' TCPA claims . . . ineligible for Rule 23(b)(2) certification") (citing *Dukes*); *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 516 (E.D. Wis. 2014).

*Third*, Plaintiff has no standing to obtain injunctive relief because it would have to "demonstrate a real and immediate threat of repeated injury in the future."  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc).  Plaintiff cannot do that because its only contention is that Diamond sent it one fax over a year a half ago.  Katz Dep. at 72:5–8.

**C.      The Court Should Deny Class Certification Because Plaintiff Cannot Satisfy Any of the Elements of 23(a).**

In addition to failing to satisfy the requirements of Rule 23(b), Plaintiff cannot even satisfy the generally laxer requirements of Rule 23(a)(1), though it bears the burden of establishing each.

**1.      Plaintiff Cannot Satisfy Numerosity.**

Plaintiff fails to satisfy Rule 23(a)(1), which requires it to prove that its proposed classes are "so numerous that joinder of all members is impracticable."  Here, Plaintiff claims "Diamond *sent* thousands of faxes during the relevant time period."  But, that statement is irrelevant: the proposed class seeks certification of everyone who "*received* a fax where consent was obtained "*through its general sales process*."  There is no evidence that even *one* individual received the fax whereby consent was supposedly obtained through this alleged "general sales process," as there is no evidence about what that term means and what was said during that process.  *See* Rice Decl. ¶¶ 6–7 (stating that no such process exists and that consent is obtained in a variety of ways).  Further, Plaintiff has not produced evidence that more than 40 people received the fax, much less that 40 people received it unsolicited via technology subject to the TCPA (a traditional machine).  This is Plaintiff's burden, and Plaintiff has failed to meet it.  *See Sliwa v. Bright House Networks, LLC*, 333 F.R.D. 255, 273 (numerosity not satisfied even in TCPA case involving millions of calls because plaintiff had not satisfied his burden of proving, with evidence, that sufficient number of call recipients met the proposed class definition) (quot. omitted).

**2.      Plaintiff Cannot Satisfy Commonality.**

To show "commonality" Plaintiff must prove: (1) all class members "suffered the same injury"; and (2) that this common injury is "capable of classwide resolution" through proceedings generating "common answers" that "resolve an issue that is central to the validity of the claims in one stroke."  *Dukes*, 564 U.S. at 349–50.  Thus, the presence of a significant number of uninjured persons in the class is fatal to certification, especially where individualized examinations are

needed to determine who (if anyone) was injured.  *See Manigo v. Time Warner Cable, Inc.*, No.: 2:16–cv–06722, 2017 WL 5149225, at *4 (Apr. 4, 2017) (C.D. Cal. Apr. 4, 2017) (denying certification for lack of commonality where plaintiffs offered no evidence of a uniform policy requiring late meal or rest breaks and defendants produced declarations of "nine putative class members who confirm[ed] they [we]re not victims of any purported meal or rest break violations and thus not injured at all").

Here, certification should be denied because **none** of the issues Plaintiff identified would truly resolve Diamond's liability.  The primary issues central to liability are: (1) whether Diamond had consent to send the fax; (2) whether putative class members received the fax; and (3) if so, whether they received it as an electronic transmission or on a traditional fax machine.  None of these primary issues will "generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350–51.  For example, whether Diamond obtained consent to send a fax does not generate a common answer—it must be analyzed on an individual basis, considering that Diamond has no "general sales process" and routinely obtains consent from customers via differing in-person interactions.  Rice Decl. ¶¶ 6–10; *see generally* Customer Decls.  That is similarly true with regard to whether a fax was ever received at all and whether it was received on a traditional fax machine.[9]  Thus, because the case cannot be tried with Plaintiff's experience as a stand-in for all putative class members, Plaintiff fails to establish commonality.  *See Manigo*, 2017 WL 5149225, at *4 (denying certification where plaintiffs "fail[ed] to identify common questions the answer to which would resolve an issue central to liability").

### 3.   Neither Class Counsel Nor Plaintiff Are Adequate to Represent the Class.

Rule 23(a) requires that the party or parties representing a class "will fairly and adequately

---

[9]    Plaintiff raises other supposed common questions which fare no better, such as whether the fax contained an opt-out notice, whether Diamond acted willfully, whether Diamond sent the fax, and whether the faxes were advertisements—**none** of which matter unless: (1) a fax was actually received; (2) without consent; and (3) on a traditional fax machine.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

protect the interests of the class."  A class representative is only adequate where the representative and their counsel do not have any conflicts of interest with the other class members and where the representative and their counsel will prosecute the action vigorously on behalf of the class.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

Plaintiff is inadequate because it has demonstrated that it has not and will not vigorously prosecute the action on behalf of the class.  Katz testified at his deposition that he only minimally participated in preparing the Complaint and that he spent approximately two hours total working on the case.  And in response to the $10,000 settlement offer Diamond made to avoid mounting legal expenses—which was already over six times the statutory amount of $1,500 Plaintiff could recover on its individual claim—Katz demanded **$250,000**.  That exorbitant sum[10] is **166 to 500 times** what Plaintiff's maximum individual recovery could be, which demonstrates that Plaintiff is willing to not only abandon the class for its own self gain but also to abuse the machinery of class action litigation to extort a small healthcare company trying to help people during a pandemic. Katz Dep. at 84:6–12, 85:20–86:19.  Accordingly, Plaintiff lacks honesty and credibility regarding its motives in bringing this action and its willingness to vigorously pursue relief for the entire class. *See Raffin v. Medicredit, Inc.*, No. CV154912, 2018 WL 6011551, at *7 (C.D. Cal. May 11, 2018) ("the honesty and credibility of a class representative is a relevant consideration … because an untrustworthy plaintiff could reduce the likelihood of prevailing ….").  There is no question that Plaintiff is merely a pawn driven entirely by its attorneys, as demonstrated by its policy of immediately directing any fax solicitations it receives to its designated "junk faxes" attorney, Mr. Heidapour.  Katz Dep. at 52:8–54:8.  Katz did not even read the fax at issue; in fact, he did not even know whether his office had a relationship with Diamond or purchased any hand sanitizer from it.  *Id.* at 54:6–14, 56:16–17, 57:1–4.  Accordingly, Plaintiff does not meet the low threshold

---

[10]   Katz apparently sought to be paid $125K for each hour of work he put into the case.

of knowledge required to serve as class representative.  *See, e.g.*, *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 359 (N.D. Cal. 2018).

Additionally, the class is not adequately represented by counsel.  Anything "pertinent to counsel's ability to fairly and adequately represent the interests of the class" bears on the class certification decision.  FED. R. CIV. P. 23(g)(1)(B).  Counsel's "'unethical conduct, both before and during the litigation, is relevant to determining whether counsel is adequate under Rule 23.'" *Victorino v. FCA USA LLC*, 322 F.R.D. 403, 408 (S.D. Cal. 2017).  The "degree of unethical conduct justifying a finding of inadequacy is high, and often turns on counsel's integrity and candor." *Id.* (citing *White*, 993 F. Supp. 2d at 1171).

Here, counsel is controlling this litigation to further its own financial interests to the detriment of Plaintiff and the class, which is evidenced by: engaging in unethical and coercive conduct by soliciting putative class members without informing them as to his role in the case and asking them to sign under oath declarations containing false statements (*see* Avila Supp. Decl.; Rances Supp. Decl. (stating Plaintiff's counsel left her a voicemail that "d[id] not clearly identify his firm" and asked her to sign a draft declaration that "contained false statements")); demanding a settlement figure 166 to 500 times what Plaintiff's maximum individual statutory recovery could be (Katz Dep. at 84:6–12, 85:20–86:19); and failing to apprise Plaintiff of information about this case—specifically Plaintiff testified that it had never seen the settlement letter that Diamond submitted to Plaintiff (*Id.* at 82:16–83:10, Ex. C).  *See Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 578–80 (C.D. Cal. 2007) (finding inadequate class counsel who "included statements in Plaintiffs' declarations that were . . . admittedly false" and failed to "ensure the accuracy of the statements Plaintiffs were being asked to swear to.").

### 4.   Plaintiff Is Not Typical of the Classes It Seeks to Represent.

Plaintiff also fails to show that its claims are typical.  *See* FED. R. CIV. P. 23(a)(3).  In

particular, Plaintiff is not even a member of the class; it offers no evidence that it went through a "general sales process."  And, to the extent there is any "process," Plaintiff is not a member based on the testimony of Katz that Plaintiff did not give Diamond its fax number, which would be the exception, not the rule—which was to ***obtain*** consent.  This precludes certification.  *See Arnold v. United Artists Theatre Cir., Inc.*, 158 F.R.D. 439, 449 (N.D. Cal. 1994) ("[C]lass representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members").  In addition, it is far from clear that Plaintiff even has a viable claim in this case, as it will need to be determined at trial in its individual case whether it had any prior relationship with Diamond in which it provided consent—because Katz testified that he did not know.  Katz. Dep. at 61:7–62:3.  Plaintiff is also not typical of members of the putative class who had virtual (non-traditional) fax services.  *See, e.g.*, Briceno Decl.; Castellanos Decl.

## V.    CONCLUSION.

Plaintiff fails to meet its burden that the proposed class is ascertainable, that common issues predominate, and that a class action is the superior method to resolve its claims, nor does it fare any better in establishing that uniform class-wide injunctive relief is appropriate, legal, or even possible.  Similarly, Plaintiff fails to meet its burden as to ***any*** of the elements of 23(a).  Nor can it, as the evidence—declarations, deposition testimony, discovery responses, and sworn statements from putative class members and jBlast—proves that trying this case on a class-wide basis would be impossible.

At the end of the day, Diamond is a small company that reached out to its customer base of medical practitioners during the early stages of a pandemic to offer hand sanitizer to those who badly needed it.  Plaintiff, a professional litigant, who was unharmed and unaffected by receipt this fax, which may have saved lives, seeks to put Diamond out of business for doing so.  Respectfully, Diamond requests that the Court reject Plaintiff's unscrupulous scheme, and deny certification.

1    DATED: October 13, 2021                     **KABAT CHAPMAN & OZMER LLP**

2                                                By: */s/ Paul A. Grammatico*
                                                     Paul A. Grammatico
3

4                                                *Counsel for Defendant*

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **PROOF OF SERVICE**

### **UNITED STATES DISTRICT COURT**
### **NORTHERN DISTRICT OF CALIFORNIA**

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 333 S. Grand Avenue, Suite 2225, Los Angeles, California 90071.

On October 13, 2021, I served the foregoing document(s) described as **DEFENDANT, DIAMOND RESPIRATORY CARE, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION** on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es): SEE ATTACHED LIST

☐ **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service.  This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☒ **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

☐ **(BY E-MAIL SERVICE)** I caused such document to be delivered electronically via e-mail to the e-mail address of the addressee(s) set forth in the attached service list.

☐ **(BY FACSIMILE)** I caused the above-referenced document to be transmitted to the interested parties via facsimile transmission to the fax number(s) as stated on the attached service list.

☒ (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury that the above is true and correct.

Executed on October 13, 2021, at Los Angeles, California.

*/s/ Paul A. Grammatico*
Paul A. Grammatico

1

**SERVICE LIST**

2

Rebecca Davis
LOZEAU DRURY LLP
Email: rebecca@lozeaudrury.com

3

4

Patrick H. Peluso
Taylor T. Smith
Woodrow & Peluso, LLC
Email: ppeluso@woodrowpeluso.com
Email: tsmith@woodrowpeluso.com

5

6

7

8

*Counsel for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28