1  Paul A. Grammatico (SBN 246380)
2  pgrammatico@kcozlaw.com
   KABAT CHAPMAN & OZMER LLP
3  333 S. Grand Avenue, Suite 2225
   Los Angeles, CA 90071
4  Telephone: (213) 493-3980
   Facsimile: (404) 400-7333
5
6  *Counsel for Defendant*

7  (Counsel continued on following page)
8
9              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
10
11 JEFFREY KATZ CHIROPRACTIC,        Case No.  3:20-cv-04108-CRB
   INC., a California corporation,
12 individually and on behalf of all others   **DECLARATION OF PAUL A.**
   similarly situated                 **GRAMMATICO IN SUPPORT OF**
13                                     **OPPOSITION TO MOTION FOR**
                                       **CLASS CERTIFICATION**
14          Plaintiff,
15     vs.                            Complaint Filed: June 22, 2020
16 DIAMOND RESPIRATORY CARE,          Honorable Charles R. Breyer
   INC., a California Corporation
17
18          Defendant.
19
20
21
22
23
24
25
26
27
28

Ryan D. Watstein (*Pro Hac Vice* to be filed)
rwatstein@kcozlaw.com
Daniel H. Gaynor (*Pro Hac Vice* to be filed)
dgaynor@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

*Counsel for Defendant*

1                                 **DECLARATION OF PAUL A. GRAMMATICO**

2         Pursuant to 28 U.S. Code § 1746, the undersigned, Paul A. Grammatico, says that:

3         1.      My name is Paul A. Grammatico.  I am over the age of 18 years and competent to give

4 this Declaration.  I am counsel at Kabat Chapman & Ozmer LLP ("KCO"), counsel for defendant,

5 Diamond Respiratory Care, Inc., in this action.  The information contained herein is based upon my

6 personal knowledge.

7         2.      On August 6, 2021, I appeared at the deposition of Diamond Respiratory Care, Inc.

8 ("Diamond).  True and correct copies of relevant portions of the deposition transcript of this

9 deposition are attached hereto as Exhibit A.

10         3.      On August 12, 2021, I appeared at the deposition of Jeffery Katz Chiropractic, Inc.,

11 the Plaintiff in this action.  True and correct copies of relevant portions of the deposition transcript

12 of this deposition are attached hereto as Exhibit B.  A true and correct copy of Exhibit 5 from this

13 deposition is attached hereto as Exhibit C.

14         4.      Attached as Exhibit D to this declaration are true and correct copies of relevant portions

15 of Diamond's responses to Plaintiff's second set of interrogatories.

16         5.      I, along with Chris Aragon, a member of Diamond's sales team, interviewed over 20

17 putative class members from Diamond's customer relationship management system regarding the

18 hand-sanitizer fax at issue in this case.  Prior to commencing these interviews, all of the subjects of

19 these interviews were specifically informed by me that:

20                 •   I was an attorney representing Diamond—not the interviewee—regarding the fax

21                      practices of Diamond and I was reaching out to gather information about relevant facts

22                      in the lawsuit;

23                 •   I could not speak with the interviewee if they were represented by an attorney in

24                      connection with the lawsuit against Diamond;

25                 •   Speaking with me was entirely voluntary.

26         6.      Fourteen of these interviewees signed sworn statements saying so, and these

27 declarations are included with Diamond's opposition.  The others, although confirming that they had

28

given consent, either were reluctant to become involved with any legal process or we lost contact with them before they signed any statement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 13, 2021, in Los Angeles, California.


_____

Paul A. Grammatico

# Exhibit A

1                    UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF CALIFORNIA

2                      (SAN FRANCISCO DIVISION)

3

     Civil Action No. 3:20-cv-04108-CRB

4

5    _____

6    JEFFREY KATZ CHIROPRACTIC, INC.,

     a California corporation, individually

7    and on behalf of all others similarly

     situated,

8

              Plaintiff,

9

     vs.

10

     DIAMOND RESPIRATORY CARE, INC.,

11   a California corporation,

12            Defendant.

13

     _____

14

15           VIDEOCONFERENCED 30(b)(6) DEPOSITION OF

16                 DIAMOND RESPIRATORY CARE, INC.

17                   BY CHRIS MICHAEL RICE

18                      August 6, 2021

19   _____

20

21

22

23

24

25

                                            Page 1

```
1    APPEARANCES (VIA VIDEOCONFERENCE):
2    ON BEHALF OF THE PLAINTIFFS:
             TAYLOR T. SMITH, ESQ.
3            WOODROW & PELUSO, LLC
             3900 East Mexico Avenue, Suite 300
4            Denver, Colorado 80210
             Phone:  720-213-0675
5            Email:  tsmith@woodrowpeluso.com
6
7    ON BEHALF OF THE DEFENDANTS:
             PAUL A. GRAMMATICO, ESQ.
8            KABAT CHAPMAN & OZMER, LLP
             333 South Grand Avenue, Suite 2225
9            Los Angeles, California 90071-3490
             Phone:  213-493-3988
10           Email:  pgrammatico@kcozlaw.com
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 2

```
 1          PURSUANT TO WRITTEN NOTICE and the appropriate

 2    rules of civil procedure, the videoconferenced 30(b)(6)

 3    deposition of DIAMOND RESPIRATORY CARE, INC., by CHRIS

 4    MICHAEL RICE, called for examination by the Plaintiff,

 5    was taken via Zoom videoconference, commencing at 9:06 a.m.

 6    PDT, on August 6, 2021, before Linda M. Breech, California

 7    CSR #9811, RPR, and Notary Public in and for the State of

 8    Colorado.

 9

10                    I N D E X

11    EXAMINATION:                                         PAGE

12          By Mr. Smith                                     5

13

14    EXHIBITS:                                            PAGE

15    Exhibit 1  Plaintiff's Notice to Defendant of         18
                 Rule 30(b)(6) Deposition
16
      Exhibit 2  Diamond's fax to Plaintiff                 48
17
      Exhibit 3  Hand sanitizer fax                         90
18
      Exhibit 4  Excel spreadsheet entitled                101
19               Diamond_000016  Confidential
20    Exhibit 5  April 29, 2020, jBlast transmission       108

21    Exhibit 6  April 23, 2020, jBlast transmission       116

22    Exhibit 7  May 6, 2020, 2:37 p.m./6:34 p.m. (UTC)    121
                 jBlast transmission
23
      Exhibit 8  May 6, 2020, 3:25 p.m./7:22 p.m. (UTC)    125
24               jBlast transmission

25

                                                    Page  3
```

30(b)(6) Diamond Respiratory Care Chris Michael Rice - August 6, 2021

```
 1    EXHIBITS:                                        PAGE

 2    Exhibit 9   April 21, 2020, jBlast transmission   127

 3    Exhibit 10  April 22, 2020, jBlast transmission   131

 4    Exhibit 11  May 1, 2020, jBlast transmission      134

 5    Exhibit 12  Excel spreadsheet entitled jSubpoList 145

 6    Exhibit 13  Declaration of Ena Ibarra             159

 7    Exhibit 14  Declaration of Adrien Rances          167

 8    Exhibit 15  Declaration of Lianna Medina          171

 9    Exhibit 16  Declaration of Ivon Rodriguez         176

10    Exhibit 17  Declaration of Maria Teresa Politico  180

11    Exhibit 18  Declaration of Jodi Stadler           182

12    Exhibit 19  Declaration of Mayra Ramos            189

13    Exhibit 20  Declaration of Laura Avila            191

14    Exhibit 21  Declaration of Rose Briceno           194

15

16

17

18

19

20

21

22

23

24

25

                                              Page  4
```

1          Q.      Clinician.  Okay.  Basically your

2    doctor's office.

3                  Is that fair to say?

4          A.      Sure.  Doctor's office, home health --

5    there's a -- there's a wide gamut of health care

6    facilities that would order from us.

7          Q.      Okay.  Does Diamond have two separate

8    operations, one for patient direct and one for clinical

9    offices?

10         A.      No.

11         Q.      Is it just you will sell to whoever that

12   day needs a product, basically?

13         A.      Yes.

14         Q.      All right.  Can you tell me how Diamond

15   markets its products and services?

16         A.      Sure.  I mean, there are several ways.

17                 We have a -- salespeople that go out and

18   visit offices, visit clinician offices, and seek their

19   referrals.  We do that via, you know, in person, and we

20   do that via telephone.  We do different promotions from

21   time to time.

22         Q.      Okay.  And what other ways?

23         A.      For the most part, that's it.

24         Q.      Just the -- the salesperson direct to

25   the clinic or the person.

1   do it through salespersons directly in person, through

2   salespersons through the telephone, they also receive

3   online referrals, and they also receive referrals

4   through insurance carriers.

5                  Is that correct?

6                  MR. GRAMMATICO:  Objection.  Misleading.

7   Misstates prior testimony.

8                  Go ahead, Chris.

9                  THE DEPONENT:  With the exception of

10  receiving online referrals, that sounds about right.

11       Q.     (By Mr. Smith)  Okay.  And does

12  telephone marketing -- would you include fax marketing

13  in that as well?

14       A.     No.

15       Q.     Okay.  All right.  Does Diamond utilize

16  faxing to market its products and services?

17       A.     No.

18       Q.     Has it ever?

19       A.     We send out notifications.  We -- I

20  can't say that we use it to market products.

21       Q.     Okay.  Can you explain that to me a

22  little more?

23       A.     Sure.  Sometimes an issue will rise to

24  what we think needs to be known by the referral

25  community that sends patients to us, so we, in the

Page 32

1    past, have sent out faxes to let them know that.

2         Q.    To let them know about what?

3         A.    Whatever the policy change is, typically

4    from a -- either a regulatory standpoint or, say, for

5    example, a Medicare change.

6         Q.    Okay.  Have Diamond -- Diamond's never

7    sent faxes to solicit the purchase of any of their

8    products and services?

9              MR. GRAMMATICO:  Objection to the form.

10   Misleading.

11             Go ahead, Chris.

12             THE DEPONENT:  Okay.  Are we talking

13   about the fax at issue, or are we talking about the

14   history of Diamond?

15        Q.    (By Mr. Smith)  Right.  I -- let's talk

16   about the relevant time period, so June 22, 2016, to

17   the present.

18             Has Diamond ever utilized fax marketing

19   to solicit the sale of products or services to anyone?

20             MR. GRAMMATICO:  Objection.  It's asked

21   and answered.  I think you said no, but you can go

22   ahead.

23             THE DEPONENT:  Right.  No.  We don't see

24   that as -- we don't see that as marketing; we see that

25   as getting a notification out.

Page 33

1        Q.       (By Mr. Smith)  Notification out -- to

2    your referral community, you said?

3        A.       Yes.

4        Q.       What is the referral community?

5        A.       Those are the people, clinicians, and

6    entities that refer patients to us.

7        Q.       Does Diamond utilize any third parties

8    to send out faxes on its behalf?

9                 MR. GRAMMATICO:  Objection.  Ambiguous

10   as to time.

11                MR. SMITH:  During the relevant time

12   period.

13                THE DEPONENT:  During the relevant time

14   period, we've used jBlast.

15       Q.       (By Mr. Smith)  jBlast.  All right.

16   Tell me about jBlast.

17                MR. GRAMMATICO:  Objection.  Calls for a

18   narrative, misleading, ambiguous.

19                MR. SMITH:  You can respond.

20                THE DEPONENT:  Could you be more

21   specific?

22       Q.       (By Mr. Smith)  Yeah.  What is it?

23                MR. GRAMMATICO:  Objection.  What is --

24   okay.  Never mind.  Retracted.

25                Go ahead, Chris.

Page 34

```
1              A.      That Plaintiff --
2                      MR. GRAMMATICO:  Objection.  Ambiguous.
3                      THE DEPONENT:  What was the question?
4              Q.      (By Mr. Smith)  Yeah.  Is it fair to
5      say -- if this is Plaintiff's fax number ending in
6      3052, is it reasonable to say that it was the Plaintiff
7      that received this fax?
8                      MR. GRAMMATICO:  Objection.  Ambiguous.
9      Calls for speculation.
10                     THE DEPONENT:  I don't know.  I don't
11     know.  I don't know who received it.
12             Q.      (By Mr. Smith)  Okay.  What's the
13     purpose of this fax?
14             A.      The purpose of this fax was to let
15     clinicians know that this product, which was in very,
16     very short supply because of -- this was at the
17     beginning of the pandemic -- this was to let clinicians
18     know that we had this available.
19             Q.      Available for sale?
20             A.      Available for sale, yes.
21             Q.      So it's fair to say the purpose of this
22     fax was to sell hand sanitizer.
23             A.      No.
24                     MR. GRAMMATICO:  Objection.
25                     MR. SMITH:  No?
```

Veritext Legal Solutions
303-988-8470

```
 1                    MR. GRAMMATICO:  It's misleading.  Calls

 2       for a legal conclusion.

 3                    MR. SMITH:  Where did I go wrong there?

 4                    MR. GRAMMATICO:  Are you asking me?

 5                    MR. SMITH:  No, I'm asking Chris.

 6                    THE DEPONENT:  Where --

 7                    MR. SMITH:  Strike that.

 8                    MR. GRAMMATICO:  Same objections.

 9                    THE DEPONENT:  What was the question

10       again, please?

11            Q.    (By Mr. Smith)  I'm sorry.  What part of

12       my rephrasing was incorrect?

13                    MR. GRAMMATICO:  Objection.  Ambiguous.

14                    THE DEPONENT:  What was your

15       information?

16            Q.    (By Mr. Smith)  Is the purpose -- or was

17       the purpose of this fax to sell hand sanitizer?

18            A.    We have to back up.  We have to go back

19       to the beginning of the pandemic, which is the time

20       frame we're talking about.

21                    And that -- if you remember, you would

22       go to Target, and there was nothing on the shelves --

23       or your grocery store or whatever that is -- there was

24       no toilet paper, there was no paper towels, there

25       was -- you know, food was even, to some degree, scarce.
```

Page 55

1                        Before that, cleaners started to become

2       quite scarce.  On our side, in the home care side,

3       there was -- there was just nothing.  All of the

4       supplies were going to the hospitals.  Home care had

5       this dire situation where we had no cleaners, we had no

6       supplies, we couldn't get gloves, we couldn't get

7       masks, so we came across this particular product in a

8       supply that was more than we needed for our use.

9                        We offered that to our -- you know, call

10      them our referral partners or the people that send us

11      stuff because it was -- this was a dire situation.  We

12      couldn't safely see patients in the home without an

13      adequate sanitizer.

14              Q.      So when you say "offered," what does

15      that mean?

16              A.      Well, it means that we made them aware

17      that it was available.

18              Q.      Available for what?

19              A.      They could buy it.  I think in some

20      cases, we donated some cases of it.

21              Q.      Okay.  All right.  Let's read through

22      this.  So at the top it says -- in Exhibit 2 -- "Hand

23      sanitizer now in stock."  Correct?

24              A.      Yes.

25              Q.      Was the intention of that statement to

Page 56

1         A.      Well, I'm sure at some point, we show

2    them how to use the fax machine, and then on the sales

3    side, we explain to them, you know, what the -- the

4    trailer part of our sales process, places made from --

5    it's common for whatever type of clinician's office it

6    is to request documentation or some type of documents

7    from us that we send to them via fax.

8         Q.      Okay.  And so the training -- is it just

9    to explain how Diamond sends the faxes?

10        A.      Yes.  We're a small company.  We don't

11   have, you know --

12        Q.      You don't have formal training.

13               Is that what you are saying?

14        A.      Right.

15        Q.      How frequently would you say you train

16   your employees in any respect in faxing?

17        A.      Probably when they get hired and, you

18   know, during -- during some onboard training.

19        Q.      Okay.  Is there any training to ensure

20   compliance with the JFPA?

21               MR. GRAMMATICO:  Objection.  Asked and

22   answered.

23               THE DEPONENT:  No.

24        Q.      (By Mr. Smith)  Has Diamond ever taken

25   any other steps to ensure compliance with the JFPA?

Page 73

1          Q.      Okay.  Can you walk me through how

2    Diamond would do that?

3                  MR. GRAMMATICO:  Objection.  Ambiguous.

4    Calls for a narrative.

5                  THE DEPONENT:  I wouldn't be able to

6    walk you through the steps, no.

7          Q.      (By Mr. Smith)  You don't know how to do

8    that?

9          A.      I would have to be in front of it and

10   poke around.

11         Q.      Okay.  So you couldn't really explain

12   how it works unless we do, like, an inspection.

13                 MR. GRAMMATICO:  Objection.  Ambiguous.

14   Misstates testimony.  Calls for a narrative.

15                 THE DEPONENT:  I think the gist of it is

16   you would export records and then send those records to

17   jBlast.

18         Q.      (By Mr. Smith)  Okay.  When you say

19   export, would that be, like, to a .csv data file?

20         A.      I assume so, yes.

21         Q.      Okay.  All right.  Has Diamond ever

22   obtained leads from any third parties?

23         A.      No.

24         Q.      Has Diamond ever purchased leads?

25         A.      No.

Page 82

1            A.      I think so, yeah.

2            Q.      You can't send a fax through it, either?

3            A.      I don't think so.

4            Q.      Do you know where the data on Highrise

5     is maintained?

6            A.      The data on what?

7            Q.      The data on Highrise is maintained?

8                    THE DEPONENT:  Oh, data.

9                    MR. GRAMMATICO:  Objection.  Ambiguous.

10                   THE DEPONENT:  The question was?

11           Q.      (By Mr. Smith)  I just want to know if

12    you know where the data on Highrise is maintained.

13           A.      No.

14                   MR. GRAMMATICO:  Same objection.

15           Q.      (By Mr. Smith)  Does Diamond take any

16    steps to ensure that individuals it sends faxes to have

17    provided prior express invitation or permission to

18    receive those faxes?

19                   MR. GRAMMATICO:  Objection.  Calls for a

20    legal conclusion.  Ambiguous.

21                   Go ahead, Chris.

22                   THE DEPONENT:  I need to hear the

23    question again.

24           Q.      (By Mr. Smith)  Does Diamond take any

25    steps to ensure that individuals that it sends faxes to

1    have provided prior express invitation or permission to

2    receive those faxes?

3                    MR. GRAMMATICO:  Same objections.

4                    THE DEPONENT:  Well, yeah.  We -- you

5    know, we have conversations with these people often,

6    and a lot of the times -- well, often, they ask us to

7    send them a fax, or we say, hey, can we fax over, you

8    know, order forms, prescriptions -- really, whatever it

9    is -- product info.  And they gave us -- you know, they

10   give us the green light to do that.

11        Q.     (By Mr. Smith)  So that's typically the

12   process when one of your sales individuals talks to

13   these potential clients or recipients of faxes, they

14   are just asking for these faxes.  Right?

15        A.     Yes.

16                    MR. GRAMMATICO:  Objection.  Ambiguous.

17        Q.     (By Mr. Smith)  Any other way?

18        A.     Any other way of what?

19        Q.     Is there any other way that Diamond

20   would obtain prior express invitation or permission

21   from these individuals?

22                    MR. GRAMMATICO:  Objection.  Ambiguous.

23   Calls for a narrative.  Calls for a legal conclusion.

24                    THE DEPONENT:  Yeah, I don't know.

25        Q.     (By Mr. Smith)  You don't know?

Page 85

 1          A.     No.

 2          Q.     You're not aware of any?

 3          A.     I'm not aware of any.  I mean, again,

 4   other than we generally get them to want us, or you

 5   know, they ask us to fax things over to them, so that's

 6   the -- that's the gist of it.

 7          Q.     So that's the process that Diamond

 8   utilizes for everyone.  Right?

 9               MR. GRAMMATICO:  Objection.  Misleading.

10   Mischaracterizes prior testimony.  Calls for a

11   narrative.  Ambiguous.

12               THE DEPONENT:  I think so.

13          Q.     (By Mr. Smith)  Okay.  Does Diamond have

14   any records of any individual providing prior express

15   invitation or permission that you would send faxes to?

16               MR. GRAMMATICO:  Objection.  Ambiguous.

17               THE DEPONENT:  I didn't totally hear

18   what you said.

19               MR. SMITH:  Yeah.  Let me rephrase that.

20          Q.     (By Mr. Smith)  So for the individuals

21   that Diamond sends faxes to, does Diamond have any

22   records of the prior express invitation or permission

23   that they provided?

24               MR. GRAMMATICO:  Objection.  Ambiguous.

25   Calls for a legal conclusion.

                                        Page 86

1                        THE DEPONENT:  No.

2              Q.      (By Mr. Smith)  Do you have any

3      recordings?

4                        MR. GRAMMATICO:  Same objections.

5                        THE DEPONENT:  No.

6              Q.      (By Mr. Smith)  Does Diamond know where

7      to obtain Plaintiff's fax number?

8              A.      No.

9              Q.      I believe we discussed this already, but

10     I just want to confirm.

11                        Does Diamond have any procedures in

12     place in which persons or businesses can revoke their

13     consent to receive future faxes?

14                        MR. GRAMMATICO:  Objection.  Ambiguous.

15     Calls for a legal conclusion.

16                        THE DEPONENT:  And what was the

17     beginning of the question?

18             Q.      (By Mr. Smith)  Does Diamond have any

19     procedures in place where a person or business can

20     revoke their consent to receive future faxes?

21                        MR. GRAMMATICO:  Objection as to form.

22     Ambiguous.  Calls for a legal conclusion.

23                        THE DEPONENT:  If somebody asked us to

24     not fax them, we wouldn't fax them.

25             Q.      (By Mr. Smith)  Do you have -- but are

                                            Page 87

30(b)(6) Diamond Respiratory Care Chris Michael Rice - August 6, 2021

```
 1    asking about the declaration.
 2                   MR. SMITH:  No, no, no, no.
 3                   MR. GRAMMATICO:  Okay.
 4          Q.    (By Mr. Smith)  I'm just wondering how
 5    Diamond -- if you recall how Diamond procured Primrose
 6    Home Health, Incorporated's fax number.
 7                   MR. GRAMMATICO:  Okay.  I withdraw -- I
 8    retract the objections.  I'll -- my -- actually, my
 9    objection is the question is misleading.
10                   But you can answer it.
11                   THE DEPONENT:  What was the question how
12    did we get their fax number?
13          Q.    (By Mr. Smith)  Yeah.
14          A.    Well, I assume through a sales call.
15          Q.    You assume.  But you don't know?
16          A.    I don't know.
17          Q.    Okay.  You don't know if you ever had
18    permission to fax them.
19          A.    Well, I mean, it says right here that
20    they consented.
21          Q.    All right.  But that's your sole basis,
22    though.
23          A.    I mean, if they do business with us,
24    they likely fax things to us and we fax things to them.
25          Q.    Okay.  But do you have any other basis
```

Page 161

1          Do you know who Adrien Rances is?

2     A.    No.

3     Q.    Do you know who Suncrest Home Health

4  Services is?

5     A.    I'm familiar with the name.

6     Q.    Okay.  How is it you are familiar with

7  them?

8     A.    They refer patients to us.

9     Q.    They refer patients.  Okay.

10         Do you -- are you familiar with anyone

11  that works at Suncrest Home Health Services?

12     A.    No.

13     Q.    You've just heard the name?

14     A.    I'm sorry?

15     Q.    You've just heard the name.

16     A.    I recognize the name.  Yes.

17     Q.    Got it.  Do you know what Suncrest Home

18  Health Services' fax number is?

19     A.    No.

20     Q.    Okay.  And do you know how many faxes

21  Diamond has sent to Suncrest Home Health Services?

22     A.    No.

23     Q.    Do you know how Diamond would have

24  obtained Suncrest Home Health Services' fax number?

25     A.    Most likely through a sales call.

                                    Page 168

1        Q.      Okay.  But you don't -- you don't

2   specifically recall that.

3        A.      No.

4        Q.      Okay.  Do you know how Suncrest Home

5   Health Services provided any permission to receive

6   faxes from Diamond?

7        A.      Most likely through a sales call.

8        Q.      Just based on your procedures?

9        A.      Yes.

10        Q.      Is that what you are basing it on?

11              Okay.  You don't have any independent

12   knowledge of how they would have consented?

13        A.      No.

14        Q.      Okay.  Do you know how long Diamond has

15   done business with Suncrest Home Health Services?

16        A.      Personally, no, but they say that

17   approximately four years, so --

18        Q.      But you don't know that; you are just

19   basing that on what they put in the declaration?

20        A.      Correct.

21        Q.      Okay.  Do you know if Chris Aragon would

22   have been the individual that also contacted Adrien

23   Rances?

24              MR. GRAMMATICO:  Objection.  Misleading.

25              THE DEPONENT:  I don't know.

Page 169

1              Do you know who Ivon Rodriguez is?

2       A.     No.

3       Q.     What about the office of Dr. Amer

4  Jandali, MD?

5       A.     And the question?  What is --

6       Q.     Do you know who that is?

7       A.     One more time?

8       Q.     Do you know who it is?

9       A.     Do I know who it is?

10             I recognize the doctor's name.

11      Q.     Okay.  Do you know what the doctor's fax

12  number is?

13      A.     No.

14      Q.     Do you know if Diamond ever sent faxes

15  to Dr. Jandali's office?

16      A.     I'm sure we have.

17      Q.     You're sure you have, but do you have

18  any knowledge that you did?

19      A.     I'm not sure what the difference is.

20      Q.     I mean, do you actually know you sent

21  faxes, or are you just assuming?

22             MR. GRAMMATICO:  Objection.  Ambiguous.

23             MR. SMITH:  Go ahead.

24             THE DEPONENT:  I'm assuming we have.

25      Q.     (By Mr. Smith)  Okay.  But you don't

                                        Page 177

1    know.

2                        MR. GRAMMATICO:  Same objection.

3           Q.    (By Mr. Smith)  Correct?

4           A.    The question was?

5           Q.    You don't know for sure.

6           A.    That we've sent faxes to this doctor?

7           Q.    Yeah.  Correct.

8           A.    Correct.

9           Q.    Do you know how Diamond procured

10   Dr. Jandali's fax number?

11          A.    I'm guessing 13 years ago, we probably

12   did a sales call to Dr. Jandali's office.

13          Q.    Okay.  But again, you are just assuming

14   that.  Right?

15          A.    I am.

16          Q.    You don't know that.  Correct?

17          A.    Correct.

18          Q.    Okay.  Do you have any knowledge about

19   how Dr. Jandali's office provided any consent to

20   receive faxes?

21                        MR. GRAMMATICO:  Objection.  Calls for a

22   legal conclusion.

23                        THE DEPONENT:  Most likely during a

24   sales call.

25          Q.    (By Mr. Smith)  Based on your

                                        Page 178

1              I, CHRIS MICHAEL RICE, the deponent in

2    the above deposition, do acknowledge that I have read

3    the foregoing transcript of my testimony and state

4    under oath that it, together with any attached

5    Statement of Change Pages, constitutes my sworn

6    statement.

7

8    _____ I have made changes to my deposition

9    _____ I have NOT made any changes to my deposition

10

11

12

13                 _____

                        CHRIS MICHAEL RICE

14

15

16   Subscribed and sworn to before me this _____ day of

17   _____, 2021.

18

19

20        My commission expires:  _____

21

22                 _____

                        Notary Public

23

24

25

                                          Page 206

1                    REPORTER'S CERTIFICATE

2

3              I, Linda M. Breech, a Registered

4    Professional Reporter and Notary Public within and for

5    the State of Colorado, commissioned to administer

6    oaths, do hereby certify that previous to the

7    commencement of the examination, the witness was duly

8    sworn by me to testify to the truth in relation to

9    matters in controversy between the said parties; that

10   the said deposition was taken in stenotype by me at the

11   time and place aforesaid and was thereafter reduced to

12   typewritten form by me; and that the foregoing is a

13   true and correct transcript of my stenotype notes

14   thereof.

15              I further certify that I am not an

16   attorney, nor counsel, nor in any way connected with

17   any attorney or counsel for any of the parties to said

18   action, nor otherwise interested in the outcome of this

19   action.

20              My commission expires:  July 7, 2024.

21

22

23   _____

                 Linda M. Breech, RPR

24               Registered Professional Reporter

                 Notary Public, State of Colorado

25

                                         Page  207

# Exhibit B

```
1              UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3     _____

4     JEFFREY KATZ CHIROPRACTIC, INC.,

5     a California corporation,

6     individually and on behalf of all

7     others similarly situated,

8              Plaintiffs,

9        v.                          Case No.

10    DIAMOND RESPIRATORY CARE, INC.,    3:20-cv-04108-CRB

11    a California Corporation

12             Defendant.

13    _____

14              VIDEOCONFERENCE DEPOSITION OF

15                   JEFFREY KATZ

16    DATE:          Thursday, August 12, 2021

17    TIME:          9:19 a.m.

18    LOCATION:      Remote Proceeding

19                   Los Angeles, CA 90017

20    REPORTED BY:   Ariel Dallas, Notary Public

21    JOB No.:       4759106

22

23

24

25
```

Page 1

```
 1                  A P P E A R A N C E S
 2     ON BEHALF OF PLAINTIFFS JEFFREY KATZ CHIROPRACTIC, INC.,
 3     a California corporation, individually and on behalf of
 4     all others similarly situated:
 5          TAYLOR T. SMITH, ESQUIRE (by videoconference)
 6          Woodrow & Peluso, LLC
 7          3900 East Mexico Avenue, Suite 300
 8          Denver, CO 80210
 9          tsmith@woodrowpeluso.com
10          (720) 213-0676
11
12     ON BEHALF OF DEFENDANT DIAMOND RESPIRATORY CARE, INC., a
13     California Corporation:
14          PAUL GRAMMATICO, ESQUIRE (by videoconference)
15          Kabat Chapman & Ozmer LLP
16          333 S. Grand Avenue, Suite 2225
17          Los Angeles, CA 90071
18          pgrammatico@kcozlaw.com
19          (213) 493-3980
20
21
22
23
24
25
```

Page  2

```
1                    I N D E X
2    EXAMINATION:                                PAGE
3         By Mr. Grammatico                      5
4         By Mr. Smith                           91
5

6                    E X H I B I T S
7    NO.              DESCRIPTION                 PAGE
8    Exhibit 1        Notice of Deposition        18
9    Exhibit 3        Plaintiff's Objections and
10                    Responses to Interrogatories  77
11   Exhibit 4        Plaintiff's Objections and
12                    Responses to Defendant's
13                    First Set of Requests        80
14   Exhibit 5        Settlement Offer Letter      83
15   Exhibit A        Hand Sanitizer Fax           49
16

17              (*Exhibits attached.)
18

19         QUESTIONS INSTRUCTED NOT TO ANSWER
20                  PAGE          LINE
21                   30            20
22                   74            9
23

24

25
```

Page 3

```
 1          Q     Under the influence of any drugs or alcohol?

 2          A     No.

 3          Q     Any other reason you can think of that would

 4     prevent you from giving your best testimony today?

 5          A     No.

 6          Q     Okay.  You previously stated your full name

 7     for the record.  Do you go by any aliases?

 8          A     No.

 9          Q     Any other nicknames?

10          A     No.

11          Q     And what is your age and date of birth?

12          A     7/8/1957; I am 64 years old.

13          Q     Ever been charged with any crimes?

14          A     No.

15          Q     Ever been convicted of a felony?

16          A     No.

17          Q     Okay.  You mentioned before that you've been

18     involved in some previous TCPA cases.  I want to go

19     through those for a moment.  So how many TCPA cases have

20     you been involved in?

21          A     Maybe up to ten.

22          Q     And was Jeffery Katz Chiropractic the

23     plaintiff in all of those cases?

24          A     Yes.

25          Q     And how many of those cases do you recall?
```

```
 1     The names of the cases, I'm asking for.
 2          A     The names of them, is that your question?
 3          Q     Yes.
 4          A     I couldn't name one of them offhand.
 5          Q     You can't name any of them?
 6          A     Not offhand, no.
 7          Q     Okay.  Is one of them Jeffrey Katz
 8     Chiropractic vs. Canadian Medical District?  Is that one
 9     of them?
10          A     I don't recall.
11          Q     How about Jeffrey Katz Chiropractic vs. Tivity
12     Health Support, LLC?
13          A     That sounds vaguely familiar to me, yes.
14          Q     And what was the result of that case?
15          A     I don't recall.
16          Q     Do you recall the result of any of the cases?
17          A     I recall that there was some money paid out
18     because of what they had done, yes.
19          Q     Okay.  Now did you do anything to prepare for
20     the deposition today?
21          A     I spoke with my attorney.
22          Q     Other than speaking with your attorney, did
23     you do anything else?
24          A     I reviewed some documents.
25          Q     And what documents were those?
```

Page 11

```
1          A     Graduate school.

2          Q     And what school did you graduate from?

3          A     National College of Chiropractic.

4          Q     And what year was that?

5          A     1981.

6          Q     And where is that school located?

7          A     Chicago, Illinois.

8          Q     Okay.  Are you presently employed?

9          A     Yes.

10         Q     What is your occupation?

11         A     I have two occupations.  I am a doctor of

12    chiropractic.  I am also a real estate broker.

13         Q     Okay.  So the plaintiff in this action, the

14    entity Jeffrey Katz Chiropractic; is that your

15    chiropractic office?

16         A     Yes.

17         Q     And how long has that office been opened?

18         A     The office or the corporation?

19         Q     Let's start with the office.

20         A     I've had that practice since 1984.

21         Q     Have you had any other chiropractic offices?

22         A     I have had one other one; yes.

23         Q     What was the name of that one?

24         A     It was the same name.  It's just a satellite

25    office.
```

Page 17

1    supposed to inform you of those conversations?

2         A    Usually if someone comes in soliciting

3    something, they'll let me know the person is there and

4    if I want to speak with them.

5         Q    Usually but not always?

6         A    Well I'm not in the office, then I wouldn't be

7    informed of it.  They would just leave a card for me to

8    be aware of.

9         Q    Okay.  And I mean, the staff that would greet

10   the people entering your office, it's the particular

11   individuals we already identified, correct?

12        A    Correct.

13        Q    And would it be anyone else?

14        A    No.

15        Q    Have you ever personally had a conversation

16   with a salesperson that entered your office?

17        A    Not in many years that I can recall.

18        Q    Do you recall ever having requested additional

19   information from a sales person who entered your office?

20        A    Not at the moment.  Not that I recall.

21        Q    What about the other chiropractor who works in

22   your office?

23        A    I wouldn't know, but most likely she would not

24   respond to solicitors.

25        Q    How do you know that?

Veritext Legal Solutions
866 299-5127

```
 1    top.  Do you see that?  (628) 242-2813.

 2         A    Yes.

 3         Q    Who's phone number is that?

 4         A    I don't know.

 5         Q    Have you ever seen that number before?

 6         A    No.

 7         Q    Okay.  And then if you go to the right of that

 8    there's another number there.  Do you see that?

 9         A    Yes.

10         Q    (415) 584-3052.  Do you see that?

11         A    Yes.

12         Q    What number is that?

13         A    That's my fax number at my office.

14         Q    So this is the fax number at which you

15    received this particular fax?

16         A    Correct.

17         Q    And your understanding is that you received it

18    on 4/23/2020?

19         A    That's my understanding.

20         Q    Were you in the office that day?

21         A    I don't recall.

22         Q    Did you pick up this fax or did an employee

23    pick it up?

24         A    An -- an employee.

25         Q    And which employee was that?
```

Veritext Legal Solutions
866 299-5127

```
 1          A     I'm not -- I don't know.
 2          Q     Did you ask any of the employees prior to
 3     today's deposition?
 4          A     No.
 5          Q     Okay.  So one of the employees picked it up,
 6     but you're not sure which one?
 7          A     Correct.
 8          Q     Do you know what that employee did after he
 9     picked it up?
10          A     I assume they put it into a folder.
11          Q     Okay.  But you don't know.
12          A     Well at some point they sent it over to my
13     attorney's office.  I know that.
14          Q     Okay.  Well let me ask you this first, so you
15     didn't pick it up, but one of your employees did?
16          A     Correct.
17          Q     Did the employee read it?
18          A     I assume so.
19          Q     Why do you assume that?
20          A     Because they would read any fax that came in
21     to see what they're supposed to do with it.
22          Q     Okay.  And do you have a particular policy in
23     place if it's a junk fax?
24          A     Yes.
25          Q     So do you have a particular policy in place if
```

Page 52

```
 1    it's a fax that's unrelated to a patient?

 2         A    If it's a junk fax; yes.

 3         Q    So if you -- here's my question.  Do you know

 4    how much time you employee spent reading it?

 5         A    No.

 6         Q    Did your employee send it to you or did he

 7    send it to your attorneys?

 8         A    My attorneys.

 9         Q    So the employee would have been directed to

10    send this particular fax to your attorneys before you

11    even looked at it?

12         A    Correct.

13         Q    Why would that be the case?

14         A    That's my procedure in my office.

15         Q    Okay.  So you have a particular procedure for

16    sending faxes that you don't want to your attorneys?

17         A    For solicitations, yes.

18         Q    But don't you have multiple TCPA attorneys?

19         A    No.  Well in this case, I do.  But all my junk

20    faxes get sent to one attorney's office.

21         Q    Okay.  And which attorneys are those?

22         A    Mr. Heidarpour.

23         Q    Mr. Heidarpour?

24         A    Yes.

25         Q    Can you spell that name, please?
```

Page 53

```
 1          A      H-E-I-D-A-P-O-U-R, I believe it's spelled.

 2          Q      And are those the attorneys who are

 3     representing you in this lawsuit?

 4          A      Those are one of them.

 5          Q      Okay.  So your understanding is that the

 6     employee received this fax and he immediately sent it to

 7     your attorney?

 8          A      He or she, correct.

 9          Q      He or she.  But you don't know when that

10     occurred?

11          A      Not exactly, no.

12          Q      And you don't know how much time he or she

13     spent reading it?

14          A      Well I would assume not much time because

15     there's only a few sentences on it.

16          Q      Okay.  And do you see in this fax where it

17     says, "Hand Sanitizer Now In Stock"?  Do you see that?

18          A      Yes.

19          Q      Did you need hand sanitizer at the time?

20          A      We were using hand sanitizer.  Did we need it

21     from another company?  I always bought it at Costco.

22          Q      Well, okay.  You said the date was 4/23/2020.

23          A      Correct.

24          Q      That's your understanding for when you

25     received this fax, right?
```

Veritext Legal Solutions
866 299-5127

1      A     Correct.

2      Q     And was there some type of worldwide chaotic

3   event that was going on during that particular time?

4      A     Are you referring to the pandemic?

5      Q     Yes.

6      A     Yes, there was.

7      Q     Okay.

8      A     All right.

9      Q     So during April of 2020, there was a chaotic

10   worldwide event going on which we'll refer to as the

11   pandemic.  Now during that particular time, were you in

12   need of hand sanitizer?

13      A     Yes.

14      Q     So if you were --

15      A     Well I'm sorry, I meant -- was not necessarily

16   "in need."  We were using hand sanitizer.  Was I

17   actively looking to purchase it from somewhere?  No,

18   because I was buying it at Costco.

19      Q     But wasn't there a shortage of it in the

20   medical community?

21      A     There was.  But we --

22              MR. SMITH:  Objection.  Objection.

23              MR. GRAMMATICO:  Sorry.  Go ahead,

24   Taylor.

25              MR. SMITH:  This calls for speculation.

Page 55

```
 1                    MR. GRAMMATICO:  Okay.

 2                    THE WITNESS:  But we never had -- we

 3      never ran out of hand sanitizer, to be clear.

 4      BY MR. GRAMMATICO:

 5          Q    You never ran out of it, but you did have a

 6      need for it at the time.

 7          A    We were using --

 8                    MR. SMITH:  Objection -- the witness'

 9      prior testimony.

10                    THE WITNESS:  We -- we used it all the

11      time in the office to clean our treatment tables, so --

12      BY MR. GRAMMATICO:

13          Q    Did you -- sorry, go ahead.

14          A    Even prior -- even prior to the pandemic, we

15      had sanitizers in my office in all the treatment rooms.

16          Q    Did you buy any hand sanitizer from Diamond?

17          A    Not that I'm aware of.

18          Q    But you may have?

19          A    I don't think so.  Because I am the one that

20      usually bought the hand sanitizer and I bought it at

21      Costco.

22          Q    Who were the other individuals in your office

23      who purchased hand sanitizer?

24          A    Possibly one of my staff members, Wendy Avila

25      or my office manager Rose.
```

Page 56

1        Q     So is it possible that they purchased hand

2     sanitizer from Diamond?

3        A     Possible?  Anything's possible.   Probable;

4     most likely not.

5        Q     So Diamond sent this fax and would you agree

6     with me that the purpose of the fax was to make hand

7     sanitizer available to medical offices?

8        A     Yes.

9        Q     When people badly needed the hand sanitizer

10    during a pandemic?

11       A     I'm sorry.  What's your question?

12       Q     The question was would you agree with me that

13    Diamond was making available hand sanitizer to medical

14    offices during a time when it was badly needed during

15    the pandemic?

16                  MR. SMITH:  Objection.  Argumentative.

17                  THE WITNESS:  I -- I assume so from the

18    fax I'm looking at.

19    BY MR. GRAMMATICO:

20       Q     So why are you suing him for doing what he

21    perceived as a good deed?

22                  MR. SMITH:  Objection.  Calls for legal

23    conclusion.  Misstates the evidence.

24    BY MR. GRAMMATICO:

25       Q     I mean, should we file this one under the

                                              Page 57

```
1     BY MR. GRAMMATICO:
2         Q    Did Diamond send any other faxes to you?
3         A    Not that I'm aware of.
4         Q    Do you have any evidence that Diamond ever
5     sent you another fax?
6         A    No.
7         Q    Did anyone in your office ever indicate to you
8     that Diamond had sent another fax?
9         A    Not that I'm aware of.
10        Q    Prior to your receipt of the hand sanitizer
11    fax, did you have any relationship with Diamond?
12        A    No.
13        Q    Did anyone in your office have any
14    relationship with Diamond?
15        A    Not that I'm aware of.
16        Q    Did you ask?
17        A    No.
18        Q    So you never asked the other people in your
19    office whether or not they have ever had any
20    relationship with Diamond?
21        A    I asked my staff if they had authorized any
22    type of fax to be sent over regarding any goods or
23    services.  And they said, "No."
24        Q    But you didn't specifically ask them about
25    their relationship with Diamond?
```

Page 61

1      A    No.

2      Q    That's correct; yes?

3      A    That's correct.

4      Q    Okay.  Did you speak with any of your patients

5   about whether or not they had a relationship with

6   Diamond?

7      A    No.

8      Q    Okay.  Did the employee who opened the fax

9   eventually share it with you?

10     A    Not -- no, not this one.

11     Q    When is the first time you saw this fax?

12     A    When my attorney brought it to my attention.

13     Q    And when was that?

14     A    I don't recall.

15     Q    I mean, had you already filed the lawsuit by

16   that point?

17     A    I don't recall.

18     Q    If you knew that the fax was making available

19   hand sanitizer during a pandemic, would you still have

20   filed the lawsuit?

21     A    Yes.

22              MR. SMITH:  Objection.  Argumentative.

23   BY MR. GRAMMATICO:

24     Q    Do you have any knowledge of other people who

25   received a fax?

1      A     All the attorneys I've used in the past have

2    been through Mr. Heidarpour's office.

3      Q     Okay.  Here's my question; what I'm wondering:

4    Is there some type of selection criteria for how you

5    chose your lawyers in this particular case?

6      A     All the solicitations are sent to Mr.

7    Heidarpour's office.

8      Q     And does Mr. Heidarpour make the final call on

9    who the litigation attorneys are going to be?

10      A     That's correct.

11      Q     So what's your involvement in that?

12      A     They ask me if I want to use them and I

13    consent to it if I want to.

14      Q     And do you have input into it?

15      A     Well somewhat, yes.

16      Q     And what input is that?

17      A     Just, you know, the terms of the agreement.

18      Q     Okay.  I mean, he makes the call regarding

19    what attorneys are going to be hired, but then you

20    review the retainer agreement to make sure it's

21    acceptable to you?

22                    MR. SMITH:  Objection.  Mischaracterizes

23    the witness' testimony.

24                    THE WITNESS:  Correct.

25    BY MR. GRAMMATICO:

1       Q     Was the complaint filed before you read it?

2       A     No.

3       Q     So how much time do you think you put into the

4    case thus far?

5       A     Maybe two hours; not including today, of

6    course.

7       Q     I'm sorry.  How -- you said two hours since

8    the lawsuit started?

9       A     Two hours, not including today.

10      Q     And that would include your participation in

11   both putting together the complaint and the discovery

12   responses?

13      A     Yes.

14      Q     All right.  I'm going to go ahead and see if I

15   can mark another exhibit here.  Actually, never mind.

16   Let's just go back to -- I'm going to go back to an

17   exhibit we already marked, which is Exhibit 2.  So you

18   can pull up that one again, if you're able to.

19      A     Are we still looking at the fax?

20      Q     No.  I'm going to ask you now about -- you can

21   scroll back to the first page.  I'm going to ask you

22   about the document, not just the exhibit.

23      A     Okay.  All right.

24      Q     Okay.  So have you seen this document before?

25      A     Yes.

```
 1    one, to stop sending these faxes to my office and to

 2    recover damages due to it.  Faxes that have been sent to

 3    a whole class of people.

 4    BY MR. GRAMMATICO:

 5         Q    So you're saying that -- you said faxes, but

 6    you only received one fax from Diamond.  Isn't that

 7    right?

 8         A    That's correct.

 9         Q    So are you aware of what you would be entitled

10    to under the statue for one fax?

11         A    I am; yes.

12         Q    And what amount is that?

13         A    I believe it's $1500.

14         Q    So would you be willing to settle the case for

15    $1500?

16         A    I would have to discuss that with my attorney,

17    but at this point, no.

18         Q    Have you had any communications with other

19    punitive class members about the particular fax at issue

20    in this case?

21         A    No.

22         Q    You can bring up the Zoom screen again.  I'm

23    not --

24         A    Okay.

25         Q    I don't have any other questions at this time
```

Veritext Legal Solutions
866 299-5127

1          A     Yes.

2          Q     And in responding to this particular request,

3    did you do any type of investigation?

4          A     I discussed it with my attorney.

5          Q     Other than that, did you do any type of

6    investigation?

7          A     No.

8          Q     Did you talk to anyone?

9          A     No.

10         Q     Did you search for any documents?

11         A     No.

12         Q     Did you search for any documents or do any

13   type of an investigation with regard to any of the

14   others?

15         A     No.

16         Q     Okay.  I'm done with this document.

17               Are you aware that the defendant has conveyed

18   a settlement offer to you in this case?

19         A     Yes.

20         Q     And how did you find that out?

21         A     My attorney informed me of it.

22         Q     Did you see the particular letter that was

23   sent to your counsel?

24         A     No.

25         Q     Okay.  I'm going to pull up another exhibit

                                              Page 82

```
 1    here.

 2         A    Okay.

 3         Q    We're going to call this one Exhibit 5

 4                    (Exhibit 5 was marked for

 5                     identification.)

 6              Let me know when you are able to access that.

 7         A    I have access to it, Paul.

 8         Q    Okay.  So is this the first time you're seeing

 9    this letter?

10         A    Yes.

11         Q    Any idea why your counsel didn't show you the

12    letter?

13         A    I think --

14                    MR. SMITH:  Objection.  Calls for

15    speculation.

16                    THE WITNESS:  I believe he informed me

17    what the settlement was and discussing it was

18    satisfactory.

19    BY MR. GRAMMATICO:

20         Q    And what was your understanding of what the

21    offer was?

22         A    That it was $10,000.

23         Q    And $10,000 to settle with you on a individual

24    basis, correct?

25         A    Yes.
```

Veritext Legal Solutions
866 299-5127

```
 1        Q     And you decided to decline that offer?

 2        A     Correct.

 3        Q     Why did you decide to decline it?

 4        A     Because of how -- my discussions with my

 5   attorney.

 6        Q     Okay.  Earlier you testified that your

 7   understanding was that your maximum recovery on an

 8   individual basis in the case was $1500.  Is that

 9   correct?

10              MR. SMITH:  Objection.  Misstates the

11   witness' testimony.  You can answer.

12              THE WITNESS:  That's correct.

13   BY MR. GRAMMATICO:

14        Q     So via the letter, the defendant was offering

15   you 10,000.  Isn't that right?

16              MR. SMITH:  Objection.  Misstates the

17   evidence.

18              THE WITNESS:  That's correct.

19   BY MR. GRAMMATICO:

20        Q     So I'm just trying to understand.  I mean, why

21   did you reject it?

22              MR. SMITH:  Objection.  Asked and

23   answered.

24              THE WITNESS:  Because of my discussions

25   with my attorney.
```

Page 84

1    BY MR. GRAMMATICO:

2         Q    Did you understand that because the offer was

3    made to you on an individual basis, that any other

4    punitive class members who still have claims against

5    Diamond could still pursue their claims?

6         A    Yes.

7         Q    You understood that?

8         A    Yeah.

9         Q    So you're aware that -- I mean, essentially

10   Diamond has offered you more to settle this case than

11   you would get if the case proceeded to trial and you

12   won.

13                  MR. SMITH:  Objection.  Asked and

14   answered.  Harassing.

15                  THE WITNESS:  Correct.

16   BY MR. GRAMMATICO:

17        Q    And your testimony is that you only got one

18   fax from Diamond, correct?

19        A    Correct.

20        Q    So are you aware that your attorney submitted

21   a counter offer to the $10,000?

22        A    Yes.

23        Q    And you're aware of what that counter offer

24   was?

25        A    I don't recall at the moment.

Page 85

1        Q    Does the figure 250,000 refresh your memory?

2        A    Yes.  It does, actually.

3        Q    So that's more than 166 times what your

4    maximum individual recovery would be, right?

5        A    Correct.

6        Q    What is the basis for such an extortionate

7    individual demand?

8              MR. SMITH:  Objection.  Harassing.  So

9    you don't object to the extent you're asking about

10   communications with his counsel.

11             THE WITNESS:  But I will just say that my

12   answer is:  due to my discussions with my attorney.

13   BY MR. GRAMMATICO:

14       Q    Well are you driving this case or is your -- I

15   mean, who's driving the bus in this case, you or your

16   attorney?

17             MR. SMITH:  Objection.  Vague.

18             THE WITNESS:  I drive the case of my

19   attorney's input.

20   BY MR. GRAMMATICO:

21       Q    Okay.  So you as a class representative and

22   you as the individual who has -- as the representative

23   of the entity who has the claim at stake.  You have some

24   input into whether or not the case settles, correct?

25       A    Correct.

Veritext Legal Solutions
866 299-5127

```
 1              CERTIFICATE OF NOTARY PUBLIC

 2              I, ARIEL DALLAS, the officer before whom the

 3      foregoing proceedings were taken, do hereby certify that

 4      any witness(es) in the foregoing proceedings, prior to

 5      testifying, were duly sworn; that the proceedings were

 6      recorded by me and thereafter reduced to typewriting by

 7      a qualified transcriptionist; that said digital audio

 8      recording of said proceedings are a true and accurate

 9      record to the best of my knowledge, skills, and ability;

10      that I am neither counsel for, related to, nor employed

11      by any of the parties to the action in which this was

12      taken; and, further, that I am not a relative or

13      employee of any counsel or attorney employed by the

14      parties hereto, nor financially or otherwise interested

15      in the outcome of this action.

16

17        Date: August 27, 2021

18

19

20

21      ARIEL DALLAS

22      Notary Public in and for the

23      State of California

24

25      [X] Review of the transcript was requested.

                                              Page 97
```

```
1                    CERTIFICATE OF TRANSCRIBER
2               I, ANGELINE VICENTE, do hereby certify that
3     this transcript was prepared from the digital audio
4     recording of the foregoing proceeding, that said
5     transcript is a true and accurate record of the
6     proceedings to the best of my knowledge, skills, and
7     ability; that I am neither counsel for, related to, nor
8     employed by any of the parties to the action in which
9     this was taken; and, further, that I am not a relative
10    or employee of any counsel or attorney employed by the
11    parties hereto, nor financially or otherwise interested
12    in the outcome of this action.
13
14        Date: August 27, 2021
15
16
17
18
19
20
21    ANGELINE VICENTE
22
23
24
25
```

Page 98

1    TAYLOR T. SMITH, ESQUIRE

2    tsmith@woodrowpeluso.com

3                                    August 27, 2021

4    RE: JEFFREY KATZ CHIROPRACTIC vs. DIAMOND RESPIRATORY CARE

5    August 12, 2021, JEFFREY KATZ, JOB NO. 4759106

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10       to schedule a time to review the original transcript at

11       a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13       Transcript - The witness should review the transcript and

14       make any necessary corrections on the errata pages included

15       below, noting the page and line number of the corrections.

16       The witness should then sign and date the errata and penalty

17       of perjury pages and return the completed pages to all

18       appearing counsel within the period of time determined at

19       the deposition or provided by the Code of Civil Procedure.

20   __ Waiving the CA Code of Civil Procedure per Stipulation of

21       Counsel - Original transcript to be released for signature

22       as determined at the deposition.

23   __ Signature Waived - Reading & Signature was waived at the

24       time of the deposition.

25

                                              Page 99

1    _X_ Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF

2        Transcript - The witness should review the transcript and

3        make any necessary corrections on the errata pages included

4        below, notating the page and line number of the corrections.

5        The witness should then sign and date the errata and penalty

6        of perjury pages and return the completed pages to all

7        appearing counsel within the period of time determined at

8        the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10       requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 100

```
 1   CASE: JEFFREY KATZ CHIROPRACTIC vs. DIAMOND RESPIRATORY CARE

 2   WITNESS: JEFFREY KATZ  (#JOB NO 4759106)

 3                    E R R A T A   S H E E T

 4   PAGE_____ LINE_____  CHANGE_____

 5   _____

 6   REASON_____

 7   PAGE_____ LINE_____  CHANGE_____

 8   _____

 9   REASON_____

10   PAGE_____ LINE_____  CHANGE_____

11   _____

12   REASON_____

13   PAGE_____ LINE_____  CHANGE_____

14   _____

15   REASON_____

16   PAGE_____ LINE_____  CHANGE_____

17   _____

18   REASON_____

19   PAGE_____ LINE_____  CHANGE_____

20   _____

21   REASON_____

22

23   _____   _____

24   WITNESS                             Date

25
```

Page 101

# Exhibit C



RYAN D. WATSTEIN
DIRECT DIAL: (404) 400-7307
E-MAIL: rwatstein@*kcozlaw.com*

July 12, 2021

**VIA ELECTRONIC MAIL**

Patrick H. Peluso
Taylor T. Smith
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
ppeluso@woodrowpeluso.com
tsmith@woodrowpeluso.com

<div style="float:right; border:3px solid black; background:yellow; text-align:center;">

**Exhibit
5**

8/12/2021

</div>

RE:     ***Jeffery Katz Chiropractic, Inc. v. Diamond Respiratory Care, Inc.***
        **N. D. Cal. Case No. 3:20-cv-04108**
        **FRE 408 Confidential Settlement Communication**

Dear Counsel:

I write to explain, in conjunction with the attached declarations of a preliminary sampling of putative class members all verifying their consent to receive faxes from Diamond, that the alleged TCPA case here is not certifiable. In recognition of this, and to avoid wasting additional resources continuing to litigate his case, Diamond is willing to offer Plaintiff an individual settlement of $10,000, subject to the terms at the end of this letter.

Diamond's offer is far more than Plaintiff could ever get by proceeding with the case, for the following reasons, explained in more detail below:

1.  Plaintiff would receive significantly more by accepting $10,000 now than he could ever receive, after many months and dollars down the road, even in the unlikely event he prevailed in this putative class action.

2.  A class could never be certified because, even if a class existed here (it does not), individual issues predominate over common ones, as confirmed by the nine declarations enclosed with this letter, all verifying that Diamond obtained consent before faxing.

Patrick H. Peluso
Taylor T. Smith
Page 2
July 12, 2021

3.   The longer this case continues, the higher litigation costs will be. These costs will reduce the amount of money that Plaintiff could receive, even *if* he won, which he will not.

It is entirely up to Plaintiff to decide whether he wants to accept $10,000 now.  Under the law and rules of professional ethics, only he is entitled to decide whether settling this case is right for him, not his lawyers.  *See, e.g., Nehad v. Mukasey*, 535 F.3d 962, 970 (9th Cir. 2008) (citing *In re Falco*, 188 Cal. App. 3d 1004, 1018 (1987) ("[o]nly the client ... may decide whether to make or accept an offer of settlement.").  And he has every reason to accept $10,000.

*First*, $10,000 is more than Plaintiff could get on his best day in court.  If a class is certified, as the complaint seeks, Plaintiff will not get paid on his individual claim; rather, he can only receive his small share of the class award and a possible incentive award.  Diamond's offer is likely to be several multiples of these potential amounts combined, based on other class awards recently granted in this district.  *See, e.g., Richards v. Chime Financial, Inc.*, No. 19-cv-06864, 2021 WL 2075689, at *12-13 (N.D. Cal. May 24, 2021) (denying request for $500 class award where class representatives "would be receiving significantly more money as compared to the other Class Members"); *Adkins v. Facebook, Inc.*, No. C 18–05982, 2021 WL 1817047, at *7 (N.D. Cal. May 6, 2021) (granting $500 award instead of "unreasonably high" request for $5,000).  And even if Plaintiff obtains a class recovery, it will be months, if not years, before he gets his small share.

*Second*, Diamond will defeat class certification.  Put simply, there is no class here of unconsented fax recipients.  And, even if some businesses did not consent received faxes, several individual issues will predominate over common ones, including consent and how a transmission was received, as the attached preliminary sampling of putative class members confirms.

To be clear, Diamond's business practice was only to send faxes to individuals to whom it had procured consent, which is a complete defense to a junk fax TCPA claim.  *See, e.g., Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 619-20 (3rd Cir. 2020) ("Prior express consent can be deduced from a message-recipient's voluntary provision or knowing release of his or her number to a message-sender, such that a message is solicited and thus not prohibited by the TCPA if the message relates to the reason the number was provided.") (cleaned up); *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1101 (11th Cir. 2019) (franchisee's provision of fax number amounted to prior express consent to receive communications from franchisor's affiliates who obtained fax number from franchisee database); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011) (voluntary publication of fax number in industry directory amounted to prior express permission).  Additionally, many businesses to which Diamond sends transmissions receive them via "virtual fax" services that receive transmissions over the internet, not over a telephone line, another dispositive defense.  *See Daisy, Inc. v. Mobile Mini, Inc.*, 489 F. Supp.3d 1287, 1297 (M.D. Fla. 2020) ("At bottom, it is clear Congress did not view one wasted minute spent reviewing a junk fax received through e-mail as a concrete injury.").

Thus, the individualized questions concerning whether putative class members consented and whether they utilized electronic fax services preclude class certification.  Indeed, as the enclosed declarations demonstrate, it will be necessary to individually examine **every** recipient of the fax to determine consent and the device upon which they received the fax.  Thus, the case is

Patrick H. Peluso
Taylor T. Smith
Page 3
July 12, 2021

not suitable for class treatment.  *See, e.g., Gorss Motels, Inc. v. Otis Elevator Co.*, No. 3:16-CV-1781 (KAD), 2019 WL 1490102 (D. Conn. Apr. 4, 2019) (denying class certification due to individualized issues regarding consent to receive faxes); *E&G, Inc. v. Mount Vernon Mills, Inc.*, No. 6:17-CV-318-TMC, 2019 WL 4034951, at *1 (D.S.C. Aug. 22, 2019) (same).

In many instances, Diamond even spoke to potential fax recipients by telephone to obtain verbal consent to send faxes.  These individualized questions regarding the consent obtained from fax recipients forecloses the possibility of class certification.  *See Craftwood II, Inc. v. Wurth Louis and Co.*, No. SA CV 17-00606, 2018 WL 6258883, at *7 (denying class certification because case did not present "a scenario where a company distributed junk faxes to the population at large" and defendant provided evidence of consent as to at least some fax recipients); *Licari Family Chiropractic, Inc. v. eClinical Works, LLC*, No. 8:16-cv-3461, 2019 WL 7423551, at *10 (M.D. Fla. Sept. 16, 2019) (denying class certification where defendant "presented evidence that it received consent from a variety of sources and inquiry into each source will require individual scrutiny").

Aside from the fact that individual issues predominate, class treatment will additionally fail for lack of ascertainability and numerosity, as there is no uniform, non-individualized way to even determine who received the particular fax at issue or whether a sufficiently numerous class of persons did—and Plaintiff has certainly not uncovered any way of doing so via J-Blast's subpoena response or otherwise in discovery.[1]  Even if it were possible to accurately make that determination (and it is not), there is still no uniform, non-individualized way to identify and exclude putative class members who consented or who received the fax on a virtual machine.  Based on Diamond's business practice of only sending faxes to those with whom it had a business relationship or otherwise consented, a class of businesses that received transmissions without consent would not likely even meet the numerosity requirement.  Further, the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, No. 20-927, 2021 WL 2599472 (2021) is a further bar to any potential class treatment here because the great majority of any putative class will not even have standing where, as here, they consented to the fax, received it on a virtual machine, or otherwise suffered no concrete injury.  *Id.* at *26 ("To have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm.  No concrete harm, no standing.").

<u>*Third*</u>, and finally, it is in Plaintiff's financial interest to settle this matter now, rather than to wait and potentially recover nothing.  The longer this case goes on, the higher his lawyer's out-of-pocket costs will be.  Those costs will reduce the amount of money that could go to Plaintiff.  Indeed, the costs of experts and depositions would quickly exceed Plaintiff's maximum recovery, leaving him with nothing, assuming he could prevail on the merits and certify a class.  And even if Plaintiff were to prevail and obtain class certification, it would likely be many more months before he would recover *any* money, which would be significantly less than the $10,000 offered today.  Thus, under no circumstances is it in Plaintiff's best financial interests to refuse $10,000 and continue with this action instead.

---

[1]    It is worth noting that the list produced by J-Blast in response to the subpoena does not even contain the Plaintiff's number on it.

Patrick H. Peluso
Taylor T. Smith
Page 4
July 12, 2021

In sum, Diamond believes it will win this lawsuit, for the reasons explained above, as well as others.  Diamond also recognizes the considerable expense it will incur if the parties continue to litigate this case.  Diamond thus would rather resolve this matter now by paying Plaintiff $10,000 than litigate this case further.

Any settlement must also include standard terms such as confidentiality and non-disparagement in favor of Diamond, confirmation that you are unaware of any other plaintiffs with potential claims against Diamond, a general release in favor of Diamond and its affiliates/employees, and dismissal of Plaintiff's individual claims with prejudice.

Please provide this offer letter directly to your client and fully discuss its substance with him.  We would appreciate your response by **5 p.m. PST on July 12, 2020**, at which point this offer will expire.  Please call me if you have any questions or wish to discuss.

Sincerely,

*/s/ Ryan D. Watstein*

Ryan D. Watstein

Enclosures
cc:      Paul A. Grammatico (pgrammatico@kcozlaw.com)

# Exhibit A

1  Paul A. Grammatico (SBN 246380)
2  pgrammatico@kcozlaw.com
   KABAT CHAPMAN & OZMER LLP
3  333 S. Grand Avenue, Suite 2225
   Los Angeles, CA 90071
4  Telephone: (213) 493-3980
5  Facsimile: (404) 400-7333

6  *Counsel for Defendant*

7
   (Counsel continued on following page)
8

9              **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
10

11 | JEFFREY KATZ CHIROPRACTIC, | Case No.  3:20-cv-04108-CRB |

JEFFREY KATZ CHIROPRACTIC, INC., a California corporation, individually and on behalf of all others similarly situated

       Plaintiff,

   vs.

DIAMOND RESPIRATORY CARE, INC., a California Corporation

       Defendant.

Case No.  3:20-cv-04108-CRB

**DECLARATION OF ENA N. IBARRA**

Complaint Filed: June 22, 2020

Honorable Charles R. Breyer

Ryan D. Watstein (*Pro Hac Vice* to be filed)
rwatstein@kcozlaw.com
Daniel H. Gaynor (*Pro Hac Vice* to be filed)
dgaynor@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

*Counsel for Defendant*

## DECLARATION OF ENA N. IBARRA

Pursuant to 28 U.S. Code § 1746, the undersigned, Ena N. Ibarra, says that:

1.     My name is Ena N. Ibarra.  I am over the age of 18 years and competent to give this Declaration.

2.     I work for Primrose Home Health, Inc. (the "Company").  My current title is Case Manager.  As part of my job function, I am familiar with the Company's communications systems as well as communications and correspondence that the Company receives from third parties.

3.     The Company does business with Diamond Respiratory Care, Inc.  In the context of this business relationship, the Company voluntarily provided its fax number to Diamond and has consented to receive faxes, including faxes like the one attached as "Exhibit A", from Diamond.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June _02_ , 2021, in Burbank, California.


_____
Ena N. Ibarra

1  Paul A. Grammatico (SBN 246380)
   pgrammatico@kcozlaw.com
2  KABAT CHAPMAN & OZMER LLP
3  333 S. Grand Avenue, Suite 2225
   Los Angeles, CA 90071
4  Telephone: (213) 493-3980
5  Facsimile: (404) 400-7333

6  *Counsel for Defendant*

7  (Counsel continued on following page)
8

9          **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
10

11 | JEFFREY KATZ CHIROPRACTIC, | Case No.  3:20-cv-04108-CRB
   | INC., a California corporation, |
12 | individually and on behalf of all others | **DECLARATION OF ADRIEN**
   | similarly situated | **RANCES**
13
14 |          Plaintiff, | Complaint Filed: June 22, 2020
15 |       vs. |
   | | Honorable Charles R. Breyer
16 | DIAMOND RESPIRATORY CARE, |
17 | INC., a California Corporation |
18 |          Defendant. |
19
20
21
22
23
24
25
26
27
28

1  Ryan D. Watstein (*Pro Hac Vice* to be filed)
   rwatstein@kcozlaw.com
2  Daniel H. Gaynor (*Pro Hac Vice* to be filed)
3  dgaynor@kcozlaw.com
   KABAT CHAPMAN & OZMER LLP
4  171 17th Street NW, Suite 1550
5  Atlanta, GA 30363
   Telephone: (404) 400-7300
6  Facsimile: (404) 400-7333

7
8  *Counsel for Defendant*
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DECLARATION OF ADRIEN RANCES**

Pursuant to 28 U.S. Code § 1746, the undersigned, Adrien Rances, says that:

1.      My name is Adrien Rances.  I am over the age of 18 years and competent to give this Declaration.

2.      I work for Suncrest Home Health Services (the "Company") and have done so for approximately four years.  My current title is Case Manager.  As part of my job function, I am familiar with the Company's communications systems as well as communications and correspondence that the Company receives from third parties.

3.      The Company has done business with Diamond Respiratory Care, Inc. for several years.  In the context of this business relationship, the Company voluntarily provided its fax number to Diamond and has consented to receive faxes, including faxes like the one attached as "Exhibit A", from Diamond.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ~~April 16,~~ 2021, in Chino, California.
May 5, 2021

A. Pances
_____
Adrien Rances

1  Paul A. Grammatico (SBN 246380)
   pgrammatico@kcozlaw.com
2  KABAT CHAPMAN & OZMER LLP
3  333 S. Grand Avenue, Suite 2225
   Los Angeles, CA 90071
4  Telephone: (213) 493-3980
5  Facsimile: (404) 400-7333

6  *Counsel for Defendant*

7  (Counsel continued on following page)
8

9            **UNITED STATES DISTRICT COURT**
           **NORTHERN DISTRICT OF CALIFORNIA**
10

11  JEFFREY KATZ CHIROPRACTIC,          Case No.  3:20-cv-04108-CRB
    INC., a California corporation,
12  individually and on behalf of all others   **DECLARATION OF LIANNA**
    similarly situated                        **MEDINA**
13

14          Plaintiff,                  Complaint Filed: June 22, 2020

15      vs.
                                        Honorable Charles R. Breyer
16  DIAMOND RESPIRATORY CARE,
    INC., a California Corporation
17

18          Defendant.

19

20

21

22

23

24

25

26

27

28

1   Ryan D. Watstein (*Pro Hac Vice* to be filed)
2   rwatstein@kcozlaw.com
3   KABAT CHAPMAN & OZMER LLP
    171 17th Street NW, Suite 1550
4   Atlanta, GA 30363
5   Telephone: (404) 400-7300
    Facsimile: (404) 400-7333
6
7   *Counsel for Defendant*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF LIANNA MEDINA

Pursuant to 28 U.S. Code § 1746, the undersigned, Lianna Medina, says that:

1.    My name is Lianna Medina.  I am over the age of 18 years and competent to give this Declaration.

2.    I work for the office of Dr. Dong Kim, MD (the "Company") and have done so for approximately two years.  My current title is Medical Assistant.  As part of my job function, I am familiar with the Company's communications systems as well as communications and correspondence that the Company receives from third parties.

3.    The Office has done business with Diamond Respiratory Care, Inc. for multiple years.  In the context of this business relationship, the Company voluntarily provided its fax number to Diamond and has consented to receive faxes, including faxes like the one attached as "Exhibit A", from Diamond.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June ___, 2021, in Los Angeles, California.

_Lianna Medina_

Lianna Medina

1  Paul A. Grammatico (SBN 246380)
   pgrammatico@kcozlaw.com
2  KABAT CHAPMAN & OZMER LLP
3  333 S. Grand Avenue, Suite 2225
   Los Angeles, CA 90071
4  Telephone: (213) 493-3980
5  Facsimile: (404) 400-7333

6  *Counsel for Defendant,*
7  *Diamond Respiratory Care, Inc.*

8  (Counsel continued on following page)

9
10              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
11
   JEFFREY KATZ CHIROPRACTIC,          Case No.  3:20-cv-04108-CRB
12 INC., a California corporation,
   individually and on behalf of all others   **DECLARATION OF IVON**
13 similarly situated                   **RODRIGUEZ**
14
                   Plaintiff,           Complaint Filed: June 22, 2020
15
          vs.
16                                       Honorable Charles R. Breyer
   DIAMOND RESPIRATORY CARE,
17 INC., a California Corporation
18
                   Defendant.
19
20
21
22
23
24
25
26
27
28

Ryan D. Watstein (*Pro Hac Vice* to be filed)
rwatstein@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

*Counsel for Defendant*

1                 **DECLARATION OF IVON RODRIGUEZ**

2       Pursuant to 28 U.S. Code § 1746, the undersigned, Ivon Rodriguez, says that:

3       1.     My name is Ivon Rodriguez. I am over the age of 18 years and

4 competent to give this Declaration.

5       2.     I work for the office of Dr. Amer Jandali, MD (the "Office") and have

6 done so for approximately 13 years. My current title is Medical Assistant. As part of

7 my job function, I am familiar with the Office's communications systems as well as

8 communications and correspondence that the Office receives from third parties.

9       3.     The Office has done business with Diamond Respiratory Care, Inc. for

10 over 13 years. In the context of this business relationship, the Office voluntarily

11 provided its fax number to Diamond and has consented to receive faxes, including

12 faxes like the one attached as "Exhibit A", from Diamond.

13       I declare under penalty of perjury under the laws of the United States of

14 America that the foregoing is true and correct.

15       Executed on June ___, 2021, in Los Angeles, California.

16

17                               *Ivon Rodriguez*

18                            Ivon Rodriguez

19

20

21

22

23

24

25

26

27

28

1   Paul A. Grammatico (SBN 246380)

2   pgrammatico@kcozlaw.com
    KABAT CHAPMAN & OZMER LLP

3   333 S. Grand Avenue, Suite 2225
    Los Angeles, CA 90071

4   Telephone: (213) 493-3980

5   Facsimile: (404) 400-7333

6

7   *Counsel for Defendant,*
    *Diamond Respiratory Care, Inc.*

8   (Counsel continued on following page)

9

10   **UNITED STATES DISTRICT COURT**
    **NORTHERN DISTRICT OF CALIFORNIA**

| JEFFREY KATZ CHIROPRACTIC, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br>   vs.<br><br>DIAMOND RESPIRATORY CARE, INC., a California Corporation<br><br>      Defendant. | Case No.  3:20-cv-04108-CRB<br><br>**DECLARATION OF MARIA TERESA POLITICO**<br><br>Complaint Filed: June 22, 2020<br><br>Honorable Charles R. Breyer |

1

Ryan D. Watstein (*Pro Hac Vice* to be filed)

2

rwatstein@kcozlaw.com
KABAT CHAPMAN & OZMER LLP

3

171 17th Street NW, Suite 1550
Atlanta, GA 30363

4

Telephone: (404) 400-7300

5

Facsimile: (404) 400-7333

6

*Counsel for Defendant*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **DECLARATION OF MARIA TERESA POLITICO**

Pursuant to 28 U.S. Code § 1746, the undersigned, Maria Teresa Politico, says that:

1.    My name is Maria Teresa Politico.  I am over the age of 18 years and competent to give this Declaration.

2.    I work for ERA Home Health (the "Company") and have done so for over 25 years.  My current title is Director of Professional Services.  As part of my job function, I am familiar with the Company's communications systems as well as communications and correspondence that the Company receives from third parties.

3.    The Company has done business with Diamond Respiratory Care, Inc. since approximately December of 2019.  In the context of this business relationship, the Company voluntarily provided its fax number to Diamond and has consented to receive faxes, including faxes like the one attached as "Exhibit A", from Diamond.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___July 1___, 2021.

_____
Maria Teresa Politico

## DECLARATION OF JODI STADLER

Pursuant to 28 U.S. Code § 1746, the undersigned, Jodi Stadler, says that:

1.      My name is Jodi Stadler.  I am over the age of 18 years and competent to give this Declaration.

2.      I work for Asistencia Villa Rehabilitation and Care Center (the "Company") since 2012.  My current title is Case Manager, a position I have held for the last five years.  As part of my job function, I am familiar with the Company's communications systems as well as communications and correspondence that the Company receives from third parties.

3.      The Company has done business with Diamond Respiratory Care, Inc. for multiple years.  In the context of this business relationship, the Company voluntarily provided its fax number to Diamond and has consented to receive faxes, including faxes like the one attached as "Exhibit A", from Diamond.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on June 29th , 2021.


Jodi Stadler

1  Paul A. Grammatico (SBN 246380)
2  pgrammatico@kcozlaw.com
   KABAT CHAPMAN & OZMER LLP
3  333 S. Grand Avenue, Suite 2225
   Los Angeles, CA 90071
4  Telephone: (213) 493-3980
5  Facsimile: (404) 400-7333

6  *Counsel for Defendant,*
7  *Diamond Respiratory Care, Inc.*

8  (Counsel continued on following page)
9

10  **UNITED STATES DISTRICT COURT**
    **NORTHERN DISTRICT OF CALIFORNIA**

11  JEFFREY KATZ CHIROPRACTIC,          Case No.  3:20-cv-04108-CRB
12  INC., a California corporation,
    individually and on behalf of all others   **DECLARATION OF MAYRA**
13  similarly situated,                  **RAMOS**
14
                   Plaintiff,           Complaint Filed: June 22, 2020
15
         vs.
16                                       Honorable Charles R. Breyer
    DIAMOND RESPIRATORY CARE,
17  INC., a California Corporation
18
                   Defendant.
19
20
21
22
23
24
25
26
27
28

1  Ryan D. Watstein (*Pro Hac Vice* to be filed)
2  rwatstein@kcozlaw.com
   KABAT CHAPMAN & OZMER LLP
3  171 17th Street NW, Suite 1550
   Atlanta, GA 30363
4  Telephone: (404) 400-7300
5  Facsimile: (404) 400-7333

6  *Counsel for Defendant*

1
## DECLARATION OF MAYRA RAMOS

2
Pursuant to 28 U.S. Code § 1746, the undersigned, Mayra Ramos, says that:

3
1.      My name is Mayra Ramos.  I am over the age of 18 years and competent

4
to give this Declaration.

5
2.      I work for the office of Dr. Luther Mangoba, MD (the "Office") and have

6
done so for approximately two years.  My current title is Medical Assistant.  As part of

7
my job function, I am familiar with the Office's communications systems as well as

8
communications and correspondence that the Office receives from third parties.

9
3.      The Office has done business with Diamond Respiratory Care, Inc. for

10
multiple years.  In the context of this business relationship, the Office voluntarily

11
provided its fax number to Diamond and has consented to receive faxes, including faxes

12
like the one attached as "Exhibit A", from Diamond.

13
I declare under penalty of perjury under the laws of the United States of

14
America that the foregoing is true and correct.

15

16
Executed on ___6__/__29_____, 2021.

17

18

19
Mayra Ramos

20

21

22

23

24

25

26

27

28

1  Paul A. Grammatico (SBN 246380)
   pgrammatico@kcozlaw.com
2  KABAT CHAPMAN & OZMER LLP
3  333 S. Grand Avenue, Suite 2225
   Los Angeles, CA 90071
4  Telephone: (213) 493-3980
   Facsimile: (404) 400-7333
5

6  *Counsel for Defendant*

7
8  (Counsel continued on following page)

9            **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
10

11 JEFFREY KATZ CHIROPRACTIC,          Case No.  3:20-cv-04108-CRB
   INC., a California corporation,
12 individually and on behalf of all others   **DECLARATION OF LAURA**
   similarly situated                      **AVILA**
13

14         Plaintiff,                     Complaint Filed: June 22, 2020

15     vs.
                                          Honorable Charles R. Breyer
16 DIAMOND RESPIRATORY CARE,
   INC., a California Corporation
17

18         Defendant.

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ryan D. Watstein (*Pro Hac Vice* to be filed)
rwatstein@kcozlaw.com
Daniel H. Gaynor (*Pro Hac Vice* to be filed)
dgaynor@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

*Counsel for Defendant*

**DECLARATION OF LAURA AVILA**

Pursuant to 28 U.S. Code § 1746, the undersigned, Laura Avila, says that:

1.    My name is Laura Avila.  I am over the age of 18 years and competent to give this Declaration.

2.    I work for the office of Dr. Jack Cochran, M.D. (the "Office") and have done so since approximately 2008.  My current title is Office Manager.  As part of my job function, I am familiar with the Office's communications systems as well as communications and correspondence that the Office receives from third parties.

3.    The Office has done business with Diamond Respiratory Care, Inc. for many years.  In the context of this business relationship, the Office voluntarily provided its fax number to Diamond and has consented to receive faxes, including faxes like the one attached as "Exhibit A," from Diamond.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April ___, 2021, in Corona, California.

Laura Avila

1

## **DECLARATION OF ROSE BRICENO**

2          Pursuant to 28 U.S. Code § 1746, the undersigned, Rose Briceno, says that:

3          1.     My name is Rose Briceno. I am over the age of 18 years and competent

4     to give this Declaration.

5          2.     I work for Valley Comprehensive Medical (the "Company") and have

6     done so for approximately 23 years. My current title is Office Manager. As part of my

7     job function, I am familiar with the Company's communications systems as well as

8     communications and correspondence that the Company receives from third parties.

9          3.     The Company uses both a traditional fax machine and a "virtual fax"

10    service. With regard to the "virtual fax" service, any transmissions are received via an

11    internet-connected computer. Such transmissions are received over the Company's

12    high-speed internet service, not over a telephone line.

13         4.     The Company has done business with Diamond Respiratory Care, Inc. for

14    multiple years. In the context of this business relationship, the Company voluntarily

15    provided its fax number to Diamond and has consented to receive faxes, including faxes

16    like the one attached as "Exhibit A", from Diamond.

17         I declare under penalty of perjury under the laws of the United States of

18    America that the foregoing is true and correct.

19

20         Executed on _June 25_____, 2021.

21

22                          _Rosa Briceno_____

23                          Rose Briceno

24

25

26

27

28

# Exhibit D

1

Paul A. Grammatico (SBN 246380)

2
pgrammatico@kcozlaw.com
KABAT CHAPMAN & OZMER LLP

3
333 S. Grand Avenue, Suite 2225
Los Angeles, CA 90071

4
Telephone: (213) 493-3980
Facsimile: (404) 400-7333

5

6
*Counsel for Defendant*

7
(Counsel continued on following page)

8
## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

9

10
| JEFFREY KATZ CHIROPRACTIC, INC., a California corporation, individually and on behalf of all others similarly situated | Case No.  3:20-cv-04108-CRB |
|---|---|
| | **DEFENDANT DIAMOND RESPIRATORY CARE, INC.'S RESPONSES TO PLAINTIFF'S SECOND SET OF INTERROGATORIES** |
| Plaintiff, vs. | |
| DIAMOND RESPIRATORY CARE, INC., a California Corporation | Complaint Filed: June 22, 2020 |
| Defendant. | Honorable Charles R. Breyer |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ryan D. Watstein (*Pro Hac Vice* to be filed)
rwatstein@kcozlaw.com
Daniel H. Gaynor (*Pro Hac Vice* to be filed)
dgaynor@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

*Counsel for Defendant*

1    **INTERROGATORY NO. 18:**      For all of the Fax recipients Identified in Your response

2    to Interrogatory No. 17 above, Identify and Describe any prior express invitation or permission that

3    You possessed to send Faxes to any of the Fax recipients.

4        **RESPONSE:**

5        Diamond objects to Plaintiff's definition of "You" and "Your," as it includes Diamond as well

6    as "present or former directors, managers, employees, agents, corporate parents, subsidiaries,

7    divisions, subdivisions, affiliates, predecessors, successors, or joint ventures or anyone acting on

8    behalf of any of them."  As such, this Interrogatory is overly broad, unduly burdensome, and seeks

9    information that is irrelevant and immaterial to the subject matter of the pending litigation, privileged,

10   and disproportionate to the needs of the case.  And this Interrogatory purports to request information

11   about (and from) individuals and entities separate and distinct from Diamond.  Plaintiff's inclusion of

12   "affiliates" and "joint ventures," which could include vendors with or over which Diamond has no

13   common ownership or control, render this Interrogatory particularly problematic and overbroad,

14   making it impossible for Diamond to respond.

15       Diamond objects to Plaintiff's definition of "Fax" and "Faxes," as they not only encompass

16   facsimile messages Diamond did not send and Plaintiff did not receive, but also make no distinction

17   between the subject matter or purpose of the "messages" or the technology by which such messages

18   were sent or received.  As such, this Interrogatory is overly broad, unduly burdensome, and seeks

19   information that is irrelevant and immaterial to the subject matter of the pending litigation and

20   disproportionate to the needs of the case.

21       Diamond objects to this Interrogatory to the extent it seeks information that includes trade

22   secrets or other confidential or proprietary research, development, or commercial information.

23   Diamond will only produce such information, if requested and not otherwise objectionable, subject to

24   the entry of an appropriate protective order.

25       Diamond also objects to this Interrogatory on the grounds that discovery is ongoing and

26   Diamond cannot conclusively state all the facts that ultimately may support or relate to its contentions.

27   Diamond therefore objects to this Interrogatory as a contention interrogatory that need not be

28   answered until after the completion of discovery pursuant to Federal Rule of Civile Procedure 33.

8

DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND INTERROGATORIES

1    Diamond objects to this Interrogatory to the extent it seeks information protected from

2    discovery under the attorney–client privilege, the work product doctrine, or any other privilege

3    recognized by law, such as the common interest or joint defense privilege.

4    Subject to and without waiving the foregoing general and specific objections, Defendant states

5    that it obtains fax numbers from a variety of sources, including from interactions in which a person

6    provides a fax number for the express purpose of receiving fax communications from Diamond.  For

7    instance, Diamond receives fax numbers through telephone conversations, emails, and in person

8    communications, among other methods.  Diamond's records do not reflect, in any uniform, consistent,

9    or readily discernable manner, how it acquired any particular fax number; accordingly, determining

10   the manner in which a particular fax number was obtained requires an individualized review of

11   documents and interviews with one or more Diamond employees.

12

13   Respectfully submitted, this 7th day of May, 2021.

14

15                                                KABAT CHAPMAN & OZMER LLP

16                                                By: */s/ Paul A. Grammatico*
17                                                      Paul A. Grammatico

18                                                *Counsel for Defendant*

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S RESPONSES TO PLAINTIFF'S SECOND INTERROGATORIES

## PROOF OF SERVICE

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 333 S. Grand Avenue, Suite 2225, Los Angeles, California 90071.

On **May 7, 2021**, I served the foregoing document(s) described as **DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND SET OF INTERROGATORIES** on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es): SEE ATTACHED LIST

☐   **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California.  Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

☐   **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

☒   **(BY E-MAIL SERVICE)** I caused such document to be delivered electronically via e-mail to the e-mail address of the addressee(s) set forth in the attached service list.

☐   **(BY FACSIMILE)** I caused the above-referenced document to be transmitted to the interested parties via facsimile transmission to the fax number(s) as stated on the attached service list.

☒   (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.  I declare under penalty of perjury that the above is true and correct.

Executed on May 7, 2021, at Los Angeles, California.

*/s/ Paul A. Grammatico*
Paul A. Grammatico

1

**SERVICE LIST**

2

3    Rebecca Davis
     LOZEAU DRURY LLP
4    Email: rebecca@lozeaudrury.com

5    Patrick H. Peluso
     Taylor T. Smith
6    Woodrow & Peluso, LLC
7    Email: ppeluso@woodrowpeluso.com
     Email: tsmith@woodrowpeluso.com
8

9    *Counsel for Plaintiffs*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28