Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KATZ CHIROPRACTIC, INC., a California corporation, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIAMOND RESPIRATORY CARE, INC., a California corporation,<br><br>Defendant. | Case No. 3:20-cv-04108-CRB<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO STRIKE OR EXCLUDE CLASS MEMBER DECLARATIONS OR FOR LEAVE TO TAKE DEPOSITIONS**<br><br>Date: December 9, 2021<br>Time: 10:00 AM<br>Judge: Hon. Charles R. Breyer<br>Courtroom: 6<br>Complaint Filed: June 22, 2020 |

**PLEASE TAKE NOTICE** that on December 9, 2021, at 10:00 AM, counsel for Plaintiff Jeffrey Katz Chiropractic, Inc. ("Plaintiff" or "Katz") shall appear before the Honorable Charles R. Breyer or any judge sitting in his stead in Courtroom 6, 17th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102 and present Plaintiff's Motion to Strike or Exclude Class Member Declarations or for Leave to Take Depositions ("Motion").

Plaintiff requests that the Court issue an Order striking or excluding all of the class member declarations filed in support of Defendant Diamond Respiratory Care, Inc.'s opposition to motion for class certification or grant Plaintiff's counsel leave to depose the declarants.

On November 3, 2021, counsel for Plaintiff and Diamond conferred regarding the instant

1  motion and were unable to come to an agreement regarding the requested relief.

2       This Motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities and exhibits attached thereto, oral argument of counsel, and any other matter that may be submitted at the hearing.

Dated: November 4, 2021

**JEFFREY KATZ CHIROPRACTIC, INC.**, individually and on behalf of all others similarly situated,

/s/ Patrick H. Peluso
One of Plaintiff's Attorneys

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso
ppeluso@woodrowpeluso.com*
Taylor T. Smith
tsmith@woodrowpeluso.com*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Class*

*pro hac vice admission

# MEMORANDUM OF POINTS AND AUTHORITIES

At the commencement of this litigation, Defendant Diamond Respiratory Care, Inc. ("Defendant" or "Diamond") lacked any evidence to support its claim that it supposedly complied with the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 ("JFPA" or the "Act"). In an attempt to cure this shortcoming, Diamond and its counsel have attempted to manufacture such "evidence" by leveraging its *existing client relationships* and requesting that Diamond's existing clients sign declarations supporting its arguments. This has netted Diamond fourteen declarations plus two supplemental declarations. Unfortunately for Diamond, all of the declarations should be stricken or excluded.

First, Diamond failed to adequately disclose any of its claimed witnesses in discovery. Despite being notified in July 2021 of its obligation to disclose such information, Diamond waited until October 15, 2021—two days after it filed its opposition to class certification—to even attempt to supplement its initial disclosures to identify any of these witnesses. Even still, Diamond has not disclosed the contact information for any of the witnesses, which it culled from its own internal systems.

Second, the declarations were procured in a misleading and potentially coercive fashion. That is, Diamond failed to disclose the actual purpose for which it sought to interview the potential class members. Instead, Diamond informed the declarants that it was simply gathering facts related to the case. In reality, Diamond was attempting to procure declarations that were adverse to the declarants' own interests. Diamond also failed to explain what the terms of the declarations meant in the context of this litigation. Consequently, the Court should strike or exclude all of the declarations procured through this process.

Third, portions of the declarations should be stricken because they include legal conclusions. That is, all of the declarations contain a nearly identical statement that they "consented" to receive faxes from Diamond absent any facts to support the conclusion. Now, Diamond attempts to pass off these legal conclusions as evidence of prior invitation or permission to send the faxes at issue. This is improper.

Finally, three of the declarations are undated. It's well-settled that for a declaration to be

admissible it must be signed and dated. This offers the Court an alternative basis to strike these declarations.

For all of these reasons and as set forth below, the Court should enter an order striking or excluding the class member declarations or granting leave to depose the declarants.

## I. STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should strike or exclude the declarations of potential class members, which were produced as evidence by Diamond in opposition to Plaintiff's motion for class certification.

## II. FACTS AND PROCEDURAL HISTORY

On June 22, 2020, Plaintiff filed the instant case against Diamond alleging wide-scale violations of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227, *et seq*.

Over a year later, on July 12, 2021, Diamond, in the context of a settlement communication, produced nine (9) declarations from potential class members, including declarations executed by Ena Ibarra, Adrien Rances, Lianna Medina, Ivon Rodriguez, Maria Teresa Politico, Jodi Stadler, Mayra Ramos, Laura Avila, and Rose Briceno (collectively "Initial Declarations"). (Declaration of Taylor T. Smith ("Smith Decl.") ¶ 3, attached hereto as Grp. Ex. A; *see also* Dkt. 37-2, pg. 61.) The Initial Declarations, which are attached hereto as Group Exhibit B, were not formally produced in discovery until August 13, 2021. (Smith Decl. ¶ 3.)

In or around July 2021, after receiving the Initial Declarations, Plaintiff's counsel requested that Diamond supplement its initial disclosures to identify the declarants if it intended to rely on the declarations in this case. (*Id.* ¶ 4.) At this time, Diamond's counsel, Paul Grammatico, stated that he would review the disclosures and discovery responses to determine if that was necessary. (*Id.*)

In August 2021, having received no disclosures from Diamond, Plaintiff's counsel began attempting to locate and speak with the individuals who had signed the declarations. (*Id.* ¶ 5.) Based on those conversations, it was clear that Diamond and its counsel failed to inform the declarants of the nature and purpose of their interactions. (*Id.* ¶¶ 7, 9, 11, 13, 17.) Further, it was

MOTION TO STRIKE OR EXCLUDE       2
CLASS MEMBER DECLARATIONS

also clear that Diamond and its counsel failed to define the terms contained within the declarations. (*Id.*) Indeed, none of the declarants interviewed could recall any facts to support the declarations' claims that they had consented to receive faxes from Diamond. (*Id.*) The declarations also contained inaccuracies (*Id.* ¶¶ 7, 19), and one of the declarants could not be located (*Id.* ¶ 20).

On September 2, 2021 Plaintiff moved for class certification. (Dkt. 34.) Six weeks later, on October 15, 2021, Diamond served its supplemental initial disclosures. (Smith Decl. ¶ 22.) For the first time, the disclosures generally listed the names of the declarants, however, Diamond still did not provide any contact information for any of the declarants or the subject matter of their testimony. (*Id.*) At the same time, Diamond also disclosed five additional declarants (attached hereto as Group Exhibit C), along with two supplemental declarations from prior declarants, Adrien Rances (attached hereto as Ex. D) and Laura Avila (attached hereto as Ex. E).

### III.   ARGUMENT

The class member declarations produced in opposition to class certification should be stricken or excluded because Diamond failed to adequately disclose any of its purported witnesses, the declarations were obtained through coercive and misleading communications, portions of the declarations constitute legal conclusions, and some of the declarations are undated.

#### A.   Diamond Failed To Adequately Disclose The Declarants In Discovery.

Fed. R. Civ. P. 26 "requires that potential witnesses be identified and <u>their contact information</u> and <u>subjects of the relevant information</u> that they possess provided, either in initial or supplemental disclosures." *Holak v. K Mart Corp.*, No. 1:12-CV-00304-AWI, 2014 WL 4930762, at *5 (E.D. Cal. Sept. 30, 2014) (emphasis added). The Ninth Circuit has warned litigants to not "indulge in gamesmanship with respect to the disclosure obligations". *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 863 (9th Cir. 2014) (citation omitted). Indeed, a delayed disclosure frustrates the purpose of discovery—which is "to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Alves v. Riverside Cty.*, No. 519CV02083JGBSHK, 2021 WL 3601986, at *2 (C.D. Cal. Apr. 12, 2021) (citation omitted). As such, when a party "fails to provide information or identify a witness as required by

MOTION TO STRIKE OR EXCLUDE
CLASS MEMBER DECLARATIONS

3

1  Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on
2  a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."
3  *Epitech, Inc. v. Krause*, No. CV1505672SJOAGRX, 2016 WL 7637660, at *2 (C.D. Cal. Sept.
4  21, 2016) (citing Fed. R. Civ. P. 37(c)(1)).
5       To determine whether a late disclosure was substantially justified or harmless, courts
6  consider the following factors: "(1) prejudice or surprise to the party against whom the evidence
7  is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the
8  trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Barnett v.*
9  *Garrigan*, No. 20-CV-02585-VC, 2021 WL 4851043, at *1 (N.D. Cal. Oct. 19, 2021) (citing
10 *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. App'x 705, 713 (9th Cir. 2010)). The burden to
11 demonstrate that the withholding was substantially justified or harmless falls on Diamond.
12 *Tristrata, Inc. v. Microsoft Corp.*, No. 11-CV-03797-JST, 2013 WL 12172909, at *3 (N.D. Cal.
13 May 13, 2013). However, "[d]isruption to the schedule of the court and other parties ... is not
14 harmless." *Id.* at *2 (quoting *Wong v. Regents of Univ. of California*, 410 F.3d 1052, 1062 (9th
15 Cir. 2005)).
16      Here, Diamond's failure to disclose the witnesses' contact information was not harmless.
17 There is no doubt that Diamond considers this evidence important to its defense. It specifically
18 identified a sample of the declarations in its July 12, 2021, settlement letter as a basis for its
19 defense against class certification. (*See* Dkt. 37-2, pg. 62.) Further, it relies heavily on the
20 declarations throughout its opposition to class certification. (*See, e.g.,* Dkt. 37.) And regardless,
21 Diamond failed to disclose any of the contact information—which it obtained from its own
22 internal systems—as required by Rule 26. (Smith Decl. ¶ 22; *see also* Diamond Supp.
23 Disclosures, attached hereto as Ex. F.) This has prejudiced Plaintiff's ability to locate the
24 witnesses. (Smith Decl. ¶¶ 16, 19, 20.) Indeed, one of the declarants does not work for the
25 business that Diamond claims it does (*id.* ¶ 19), and one apparently works for a business that isn't
26 registered with the California Secretary of State, and its only publicly listed telephone number is a
27 disconnected number (*id.* ¶ 20). Additionally, five of the declarations were not disclosed until
28 after Diamond filed its opposition to class certification despite the declaration being obtained in

September. (*Id.* ¶ 23; *see also* Grp. Ex. C.) In short, Diamond understood in July 2021 that this evidence would play a critical role in its defense. Nevertheless, it chose to withhold all of the declarants' contact information. As such, Diamond's actions have deprived Plaintiff of a meaningful opportunity to question its witnesses.

Additionally, there is no justification for Diamond's failure to disclose the witnesses. During a conversation in or around July 2021, Plaintiff's counsel specifically notified Diamond's counsel of its obligation to supplement its initial disclosures if it planned to rely on the declarations. (*Id.* ¶ 4.) Diamond's counsel stated that he would review the disclosures. (*Id.*) Nevertheless, Diamond waited to supplement its disclosures until October 15, 2021 (17-days prior to the close of discovery). (Ex. F; Smith Decl. ¶ 22.) Still, Diamond only included the names of the "witnesses" absent any of the corresponding contact information as required by Fed. R. Civ. P. 26(a)(1)(A). (*See* Ex. F.) Given the late stage of the disclosure, there is simply no way to cure this defect. Discovery has now closed, and Plaintiff has lost a meaningful opportunity to question many of the declarants.

Put simply, Diamond's gamesmanship should not be countenanced. It intentionally delayed disclosing the witnesses that it intended to rely on to oppose class certification. The Court should strike or exclude each of these declarations accordingly.

### B. By Failing To Disclose The Actual Purpose Of Its Communications, Diamond Obtained The Declarations In A Coercive And Misleading Manner.

The Court should also strike the declarations because they were obtained through coercive and misleading exchanges. While defendants are not barred from pre-certification communications with potential class members, courts may place limitations on "pre-certification communications" when there is evidence that "misleading, coercive, or improper communications have taken place." *Quezada v. Schneider Logistics Transloading & Distribution*, No. CV 12-2188 CAS DTBX, 2013 WL 1296761, at *4 (C.D. Cal. Mar. 25, 2013) (*Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 236 (C.D. Cal. 2007); *Longcrier v. HL–A Co., Inc.*, 595 F.Supp.2d 1218, 1227 (S.D.Ala.2008)). Courts have recognized that "in an ongoing business relationship, . . . any communications are more likely to be coercive." *Mevorah v. Wells Fargo Home Mortg., Inc., a*

1  *div. of Wells Fargo Bank*, No. C 05-1175 MHP, 2005 WL 4813532, at *4 (N.D. Cal. Nov. 17,

2  2005) (citation omitted). Evidence obtained through coercive or misleading communications

3  should be stricken or excluded. *See Longcrier*, 595 F. Supp. 2d at 1230; *Bowe v. Pub. Storage*,

4  No. 1:14-CV-21559-UU, 2015 WL 10857339, at *6 (S.D. Fla. June 2, 2015).

5   The case of *Quezada v. Schneider Logistics Transloading & Distribution* is instructive. In

6  *Quezada*, an employer obtained 106 sworn declarations from its employees. No. CV 12-2188

7  CAS DTBX, 2013 WL 1296761, at *1 (C.D. Cal. Mar. 25, 2013). Prior to obtaining the

8  declarations, the defendant explained to the subjects that they were potential class members, that

9  participation was "voluntary", that signing the declaration was "voluntary", that they could ensure

10 that the declarations were "truthful and accurate", and that the defendant could not retaliate

11 against them. *Id.* at *2. Despite all of these disclosures, the court found that the declarations were

12 obtained through improper and coercive methods because it "failed to notify the employees of the

13 nature and purpose of the communications." *Id.* at *5. As the *Quezada* court explained,

14 "[c]rucially, the employees were never told that the purpose of the interviews was to gather

15 evidence to be used *against the employees in a lawsuit*." *Id.* (emphasis added). Indeed:

16  > Failing to inform the employees of the evidence-gathering purpose of the interviews
17  > rendered the communications fundamentally misleading and deceptive because the
    > employees were unaware that the **interview was taking place in an adversarial
18  > context**, and that the employees' **statements could be used to limit their right to
    > relief**.

19 *Id.* (emphasis added). The court ultimately disregarded all of the declarations and issued an order

20 limiting the defendant's contact with potential class members. *Id.* at *6.

21  Similarly, this Court in *Mevorah*, found that failing to inform a subject that their interests

22 may be adverse to the interviewer's interest is misleading. *Mevorah*, 2005 WL 4813532, at *5.

23  The declarations at issue here are the product of coercive and improper communications.

24 While Diamond and its counsel claim that they informed the declarants that speaking with them

25 was entirely voluntary, just as in *Quezada*, none of the declarants were told that their interests

26 may be adverse to Diamond's position in the case. Indeed, when Plaintiff's counsel contacted the

27 same declarants, they stated that they were not informed that they may be potential class members

28

MOTION TO STRIKE OR EXCLUDE                    6
CLASS MEMBER DECLARATIONS

or that by signing the declarations they may be giving up their right to participate in any future class or receive a portion of the money obtained from a favorable judgment. (Declaration of Rosa Briceno ("Briceno Decl.") ¶ 6, attached hereto as Ex. G; *see also* Smith Decl. ¶¶ 7, 9, 11, 13.) Even Diamond's counsel concedes that its actual purpose was not disclosed. That is, Mr. Grammatico avers that he informed the declarants that he "was reaching out to gather information about relevant facts in the lawsuit". (Dkt. 37-2 ¶ 5.) But in its deposition, Diamond's designee testified that the purpose of contacting class members was to find individuals who would say they "consented" to receive faxes. (Dkt. 34-1, at 154:1-155:6.) In other words, Diamond set out to obtain statements favorable to its own position and adverse to the declarants' interests. In the process, Diamond misled those individuals.

      Even more problematic is the fact that Diamond never defined what the term "consent" meant within the context of the JFPA. (Briceno Decl. ¶ 4; Smith Decl. ¶¶ 7, 9, 11, 13, 17.) Rather, many of the declarants clarified that they signed the declarations because they had an ongoing business relationship with Diamond and that they had no issue receiving faxes from Diamond. (*Id.*) This is not consent under the JFPA. *See Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 966 (7th Cir. 2020) ("evidence of permission to generally send faxes does not establish prior express permission to fax ads."). Further, none of the declarants that were interviewed could identify when their fax number was provided to Diamond or if they provided Diamond permission or invitation to receive faxes prior to the receipt of faxes. (Briceno Decl. ¶ 4; Smith Decl. ¶¶ 7, 9, 11, 13, 17.) Nevertheless, Diamond still requested that the individuals sign declarations saying they "consented" to receive faxes absent any explanation of what that term meant. Diamond then offered those declarations as "evidence" to the Court of prior invitation or permission to attempt to defeat certification. This further evinces Diamond's intent to mislead the declarants for its own advantage.

      Additionally, Diamond's ongoing business relationship with the declarants creates an inherently coercive situation. Tellingly, the declarants that were interviewed explained that they signed the declarations saying they "consented" because of their ongoing business relationship. (Briceno Decl. ¶ 4; Smith Decl. ¶¶ 7, 9, 11, 13, 17.) Some of the declarants also inquired about

1  how this would affect their relationship with Diamond, and many expressed frustration with the
2  process and a desire to not be involved in the litigation. (Smith Decl. ¶ 21.) One of the declarants
3  even refused to speak with Plaintiff's counsel until after she spoke with Diamond's counsel. (*Id.* ¶
4  19.) Put simply, Diamond inappropriately coerced its *existing clients* into signing declarations to
5  attempt to gain an advantage in the litigation.

6        Additionally, Diamond and its counsel aided two of the declarants to sign supplemental
7  declarations that were false. That is, Diamond has produced two declarations signed by Laura
8  Avila and Adrien Rances, both of which claim that Plaintiff's counsel failed to identify who he
9  was and also asked them to sign declarations that contained false statements. (Ex. D; Ex. E.) This
10  is simply not true. Rather, when Plaintiff's counsel reached out to the declarants, he identified
11  who he was, who he represented, and the nature and purpose of the call. (Smith Decl. ¶ 6.) Based
12  on the conversations with Avila and Rances, it was clear that their initial signed declarations were
13  inaccurate—this is mostly because Diamond's counsel failed to explain "consent" under the
14  JFPA. (*Id.* ¶¶ 13, 17) Both Avila and Rances agreed to sign supplemental declarations to clarify
15  their prior defense drafted declarations. (*Id.*) Thereafter, and in direct contradiction to both
16  Avila's and Rances's sworn statements, Plaintiff's counsel sent the draft declarations in word
17  format, along with their prior declarations, and asked whether the declarations were "<u>accurate</u>",
18  "<u>agreeable</u>", or if "<u>the language should be changed</u>". (*See* Avila Emails and Rances Emails,
19  attached as Exs. 1 and 2 to the Smith Decl., respectively.) At no time did Plaintiff's counsel ask
20  either Avila or Rances to sign any declaration that was inaccurate. (Smith Decl. ¶¶ 14, 18.)

21        While Avila did not dispute the accuracy of the declaration, she simply stated that she did
22  not want to be involved in the lawsuit or sign any further declarations. (*Id.* ¶ 15.) At this point,
23  Plaintiff's counsel ceased communication with Avila. (*Id.*) Rances likewise did not dispute the
24  accuracy of the supplemental declaration. (*Id.* ¶ 18.) Instead, in response to a follow-up email,
25  Rances responded by asking if counsel worked for Diamond. (*Id.*; *see also* Ex. 2 to Smith Decl.)
26  Plaintiff's counsel again explained that he did not work for Diamond and that he represented the
27  plaintiff in a lawsuit against Diamond. (*Id.*) To this, Rances responded, "Than [*sic*] I will not be
28  signing thank you" (*id.*)—the implication being that she would have signed the declaration if it

MOTION TO STRIKE OR EXCLUDE         8
CLASS MEMBER DECLARATIONS

helped Diamond. This further demonstrates the coercive effect that Diamond and its counsel have had on the declarants.

Because the declarations were procured by Diamond through misleading and coercive communications, the Court should strike or exclude each of the declarations. Further, the Court should enter an order limiting defense counsel's future communications with the alleged class.

### C. The Declarations Also Contain Improper Legal Conclusions.

Portions of the declarations should also be stricken because they merely state legal conclusions. Relevant here, "legal arguments or conclusions contained in declarations are improper and should be stricken." *McElmurry v. US Bank Nat'l Ass'n*, No. CV-04-642-HU, 2005 WL 8177214, at *3 (D. Or. Dec. 1, 2005) (citing *Pacific Gas & Elec. Co. v. Lynch*, 216 F. Supp. 2d 1016, 1027 (N.D. Cal. 2002); *Starke Cty. Farm Bureau Co-op. Ass'n v. ICC.*, 839 F. Supp. 1329, 1337 n.14 (N. D. Ind. 1993)); *see also Stephens v. Douglas Cty. Fire Dist. No. 2*, No. 2:15-CV-115-RMP, 2016 WL 9462337, at *3 (E.D. Wash. Sept. 7, 2016) ("A lay witness may not testify to a legal conclusion." (citing *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2011))). Where a declarant attempts to pass off a legal conclusion as a fact, the proper remedy is to strike that portion of the declaration. *See Torres v. Mercer Canyons, Inc.*, No. 1:14-CV-03032-SAB, 2015 WL 10937553, at *1 (E.D. Wash. Mar. 27, 2015) (striking a declaration containing "repeated legal conclusions").

Here, all of the declarations contain a nearly identical legal conclusion. That is, each declaration states some form of the phrase, "[i]n the context of this business relationship," the business "voluntarily provided its fax number to Diamond and has **consented to receive faxes**, including faxes like the one attached as 'Exhibit A' from Diamond." (Group Exhibits. B & C (emphasis added).) As explained above, none of the declarants were informed what the term "consent" meant in the context of the JFPA, and none of the declarants that were interviewed could identify when or how they provided their fax number or supposed consent to Diamond. Nevertheless, Diamond has now attempted to pass off these conclusory statements as proof of prior express permission of invitation. This is improper.

Accordingly, this offers the Court a third basis for striking or excluding the declarations.

MOTION TO STRIKE OR EXCLUDE                              9
CLASS MEMBER DECLARATIONS

### D. Three Of The Declarations Are Undated And Therefore Not Proper.

The declarations of Laura Avila, Liana Medina, and Ivon Rodriguez should also be stricken for failure to comply with 28 U.S.C. § 1746. Each of the declarations is undated. (Grp. Ex. B, pgs. 13-22, 38-42.) "For a declaration to be admissible before the Court, it must be dated." *Rosales v. El Rancho Farms*, No. 1:09-CV-00707-AWI, 2011 WL 6153212, at *8 (E.D. Cal. Dec. 12, 2011) (citing 28 U.S.C. § 1746); *see also Walton v. Van Ru Credit Corp.*, No. 10-344, 2011 WL 6016232, at *6 (N.D. Ill. Dec. 2, 2011) (striking affidavits and explaining, "the absence of a signature or specific date easily proves to be the death knell of these submissions." (citation omitted)). The Court should strike these declarations for this reason as well.

### E. To The Extent The Declarations Are Not Stricken, Plaintiff's Counsel Should Be Granted Leave To Depose The Declarants.

In light of the above, the declarations should all be stricken or excluded. To the extent the Court disagrees, however, Plaintiff's counsel should be afforded an opportunity to depose the witnesses. This option is not ideal given that discovery has closed, depositions would take significant time to complete, and these witnesses/proposed class members have been harassed enough already. Depositions would also be costly and of questionable proportion to the needs of the case. At the same time, the declarations shouldn't be accepted untested into the record. As such, and solely in the alternative, in the event the Court isn't inclined to strike or exclude the declarations, Plaintiff's counsel should have a fair opportunity to depose the declarants (who, again, were disclosed late and misled into providing their testimony).

## IV. Conclusion

The Court should put an end to Diamond's gamesmanship. Diamond's procurement of the class member declarations was improper, including its failure to disclose the declarants, its coercive and misleading communications, and its attempt to pass off legal conclusions as facts. As such, the Court should enter an Order striking or excluding the class member declarations (or allow Plaintiff's counsel to depose the declarants), and awarding any further relief that the Court deems reasonable and just.

| | | |
|---|---|---|
| 1 | | |
| 2 | | Respectfully, |
| 3 | Dated: November 4, 2021 | **JEFFREY KATZ CHIROPRACTIC, INC.**, individually and on behalf of all others similarly situated, |
| 4 | | |
| 5 | | */s/ Patrick H. Peluso* |
| | | One of Plaintiff's Attorneys |
| 6 | | |
| 7 | | Rebecca Davis (SBN 271662) |
| | | rebecca@lozeaudrury.com |
| 8 | | LOZEAU DRURY LLP |
| | | 1939 Harrison St., Suite 150 |
| 9 | | Oakland, CA 94607 |
| | | Telephone: (510) 836-4200 |
| | | Facsimile: (510) 836-4205 |
| 10 | | |
| 11 | | Patrick H. Peluso |
| | | ppeluso@woodrowpeluso.com* |
| 12 | | Taylor T. Smith |
| | | tsmith@woodrowpeluso.com* |
| 13 | | Woodrow & Peluso, LLC |
| | | 3900 East Mexico Ave., Suite 300 |
| 14 | | Denver, Colorado 80210 |
| | | Telephone: (720) 213-0676 |
| 15 | | Facsimile: (303) 927-0809 |
| 16 | | |
| 17 | | *Counsel for Plaintiff and the Putative Class* |
| | | |
| 18 | | **pro hac vice admission* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was served upon counsel of record by filing such papers via the Court's ECF system on November 4, 2021.

<u>/s/ Patrick H. Peluso</u>