Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

[Additional counsel appearing on signature page]

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

JEFFREY KATZ CHIROPRACTIC, INC., a California corporation, individually and on behalf of all others similarly situated,

Plaintiff,

v.

DIAMOND RESPIRATORY CARE, INC., a California corporation,

Defendant.

Case No. 3:20-cv-04108-CRB

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Date: December 3, 2021
Time: 10:00 AM
Judge: Hon. Charles R. Breyer
Courtroom: 6
Complaint Filed: June 22, 2020

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

I.     INTRODUCTION AND SUMMARY OF THE ARGUMENT ................................... 1

II.    ARGUMENT ............................................................................................................... 2

    A.    Contrary to Diamond's assertions, there is no requirement to identify
        individual class members at this stage of the case. .............................................. 2

    B.    Diamond's attacks on predominance, superiority, and commonality fail
        because every class member was subjected to a common course
        of conduct. ............................................................................................................. 5

        1.    Hypothetical consent issues cannot defeat certification. ......................... 5

        2.    Diamond's standing argument falls apart—the Class is limited to
            individuals that received a fax, as such, every class member will have
            suffered a concrete injury. ....................................................................... 9

        3.    Virtual fax recipients should remain in the Class. ................................ 10

        4.    Diamond's opposition overlooks the numerous other common
            questions that predominate. .................................................................... 12

    C.    Rule 23(b)(2) certification is also appropriate .................................................. 12

    D.    Diamond's attacks on numerosity, adequacy, and typicality fare
        no better ............................................................................................................... 13

        1.    Numerosity is not seriously in dispute here ......................................... 13

        2.    Plaintiff and its counsel will continue to adequately represent
            the Class ................................................................................................. 14

        3.    Plaintiff is typical of the proposed Class. ............................................. 16

III.   CONCLUSION ......................................................................................................... 16

## **TABLE OF AUTHORITIES**

*Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, No. 1:17-cv-01149, 2020 WL 4937790 (W.D. Tenn. Aug. 24, 2020) ..........................................................................10, 11

*Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) ........................................3, 10

*Ambrosia v. Cogent Commc'ns, Inc.*, 312 F.R.D. 544 (N.D. Cal. 2016)......................................14

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) ..........................................................2, 4

*Barrett v. Wesley Fin. Grp., LLC*, No. 13CV554-LAB (KSC), 2015 WL 12910740 (S.D. Cal. Mar. 30, 2015).................................................................................................................5

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014)..................2, 3, 9, 10

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ..................................................4

*Buchanan v. Tata Consultancy Servs., Ltd.,* No. 15-CV-01696-YGR, 2017 WL 6611653 (N.D. Cal. Dec. 27, 2017) ...............................................................................................15

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434 (3d Cir. 2017).................4

*Dioquino v. Sempris, LLC*, No. CV1105556SJOMRWX, 2011 WL 13127143 (C.D. Cal. Dec. 8, 2011) ...............................................................................................................................13

*Dr. Robert L. Meinders D.C., Ltd v. Emery Wilson Corporation*, Case No. 14-cv-596-SMY-SCW, 2016 WL 3402621 (S.D. Ill. June 21, 2016)...................................................................5, 6

*G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ........................................................................................................................5

*Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012) ..................................................9

*Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099 (W.D. Mo. 2020)........................................9

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)....................................................16

*Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013)....................................................................11

*Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015)..............................................11

*In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06- 06213 MMM JCX, 2011 WL 3505264 (C.D. Cal. Mar. 29, 2011) ............................................................................................14

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols.*, 2010 WL 9446806 (C.D. Cal. Oct. 1, 2010)..........11

*Javine v. San Luis Ambulance Serv., Inc.*, No. CV1307480BROSSX, 2015 WL 12672090 (C.D.

    Cal. Jan. 13, 2015) ......................................................................................7

*Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015)......................................9

*Pavloff v. Cardinal Logistics Mgmt. Corp.*, No. CV 20-00363 PA (KKX), 2020 WL 6821072

    (C.D. Cal. Oct. 7, 2020) ...............................................................................13

*Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959 (7th Cir. 2020)......7, 9

*Raffin v. Medicredit, Inc.*, No. CV154912GHKPJWX,

    2017 WL 131745 (C.D. Cal. Jan. 3, 2017) ........................................................12

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) .................................2, 11

*Retina Assocs. Med. Grp., Inc. v. Alliancemed, LLC*, No. SACV181670JVSKES, 2019 WL

    7195329 (C.D. Cal. Nov. 18, 2019).................................................................10

*Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218 (6th Cir. 2015) ...........10

*Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal. Sept. 5,

    2008) ...................................................................................................12

*Stemple v. QC Holdings, Inc.*, No. 12-CV-01997-BAS, 2015 WL 1344906 (S.D. Cal. Mar. 20,

    2015) ....................................................................................................7

*Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No. 2:13-CV-02468-CAS, 2014 WL

    4627271 (C.D. Cal. Sept. 8, 2014)....................................................................3

*Tech Instrumentation Inc. v. Eurton Elec. Co. Inc.*, No. 16-CV-2981-MSK-KMT, 2018 WL

    3382914 (D. Colo. May 29, 2018)..................................................................5, 6

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017)..............................9

*Veliz v. Cintas Corp.*, No. C 03-1180 RS, 2008 WL 4911238 (N.D. Cal. Nov. 13, 2008) ............8

*Wortman v. Air New Zealand*, 326 F.R.D. 549 (N.D. Cal. 2018)....................................13

*Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017)......12

*Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500 (S.D.N.Y. 2014)......................................9

**STATUTES, RULES, SECONDARY SOURCES**

Junk Fax Prevention Act, 47 U.S.C. § 227, *et seq.* ....................................................................9, 10

Fed. R. Civ. P. 23, et seq. .....................................................................................................13

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd.

14014 (2003) .............................................................................................................10

*In the Matter of WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd. 8620

(2015) ..........................................................................................................................11

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION AND SUMMARY OF THE ARGUMENT

To hear Defendant Diamond Respiratory Care, Inc. ("Defendant" or "Diamond") tell it, a class can't be certified here because individualized issues supposedly predominate with respect to consent, standing, and whether the fax was received virtually. Fortunately for Plaintiff Katz and numerous others who received Defendant's unwanted faxes, there is no requirement to identify class members at this stage of the case. Rather, for certification purposes, Plaintiff need only propose a class that is sufficiently definite so that members can be identified through a claims process. For this reason, Diamond's arguments unravel.

First, Diamond speculates that consent varies across the Class because its general sales process, which it claims it used to obtain consent from every class member, may have varied. In reality, however, Diamond has no record of consent for anyone—which is unsurprising given that it took no steps to comply with the JFPA. Indeed, Diamond fails to provide any evidence to show any class member consented. Instead, it hangs its hat on hypotheticals and a series of misleading declarations. This is insufficient to show individualized consent.

Diamond's other perceived individualized issues also fail. Katz has standing, which is sufficient for certification purposes, and the Class is limited to individuals that *received* an unsolicited fax in any case. Likewise, Diamond's defenses based on virtual faxes goes nowhere. First, Diamond relies too heavily on the FCC's *Amerifactors* declaratory ruling, which is currently on appeal. Second, even if the Court follows *Amerifactors* (it should not), the proper remedy would be to exclude virtual fax recipients from the Class.

Diamond's back up arguments fare no better. It claims that certification under Rule 23(b)(2) is improper because the primary relief sought is monetary. This misunderstands hybrid class certification. Indeed, courts routinely certify classes for both injunctive relief pursuant to Rule 23(b)(2) and monetary relief pursuant to Rule 23(b)(3). Diamond also attacks numerosity on the supposed ground that Plaintiff has not offered evidence to show that any class member received the subject fax. This is inaccurate. At this stage, the Court is permitted to make a reasonable estimate as to the size of the Class based on the available evidence. Here, Plaintiff

produced the Fax List that was uploaded into the jBlast system to send the faxes along with fax transmission reports demonstrating that thousands of faxes were sent to the class members.

Diamond also asserts that Plaintiff and its counsel are inadequate. To push this claim, Diamond minimizes Plaintiff's involvement in the case, and improperly uses settlement negotiations to claim that Plaintiff and its counsel attempted to sell out the Class. Put simply, Diamond's retelling of the negotiations is disingenuous. Diamond also claims that Plaintiff's counsel has acted unethically in its communications with potential class members—a quick review of the communications exposes this contention as untrue.

Lastly, Diamond claims that Plaintiff is atypical because there is no evidence that Katz consented in the same manner as the Class. Diamond's designee, however, testified that it procured consent from Plaintiff in the same manner as it did for every class member.

As such, and as explained below, each of Diamond's arguments against certification fails.

## II.   ARGUMENT

### A.   Contrary to Diamond's assertions, there is no requirement to identify individual class members at this stage of the case.

Diamond first claims that the Class is not ascertainable because it is supposedly "impossible to determine" who consented to receive the faxes through its "general sales process" or "who received a fax". (Opp. at 9-10.) Diamond misunderstands the certification requirements.

Contrary to Diamond's assertion, "[t]here is no requirement that 'the identity of the class members ... be known at the time of certification.'" *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012) (citation omitted); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) ("a court need not ascertain 'absent class members' actual identities ... before a class can be certified.'" (citation omitted)). Rather, "'[i]t is enough that the class be ascertainable,' with class members to be identified during a claims administration process if the class prevails." *Birchmeier*, 302 F.R.D. at 245. At this stage, "[a]s long as the class definition is sufficiently definite to identify putative class members, '[t]he challenges entailed in the administration of this class are not so burdensome as to defeat certification.'" *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) (citation omitted).

Here, the proposed class definition is definite. Plaintiff seeks to certify a class consisting of the recipients of Diamond's hand sanitizer faxes whose consent was supposedly obtained through Diamond's general sales process. Diamond's contention that there is no way to determine who consented via its "general sales process" is refuted by its own testimony in which it confirmed that every fax number contained on the Fax List was obtained in the same manner— through its general sales process. (Dkt. 34-1, at 103:4-21.) As such, if the customer's fax number appears on the Fax List, then consent was procured in the same manner.

Diamond's assertion that there is no way to identify historical fax users or determine who received the subject fax is also incorrect. Indeed, the Fax List came from Diamond's own HighRise system, which houses contact information. (*See* Diamond Depo. Tr., add'l excerpts attached as Ex. A, at 79:6-9; 81:18-20.) This information can be produced to an administrator to identify class members.[1] Moreover, it was this Fax List that Diamond claims it uploaded into jBlast to send the hand sanitizer faxes. (Dkt. 34-1, at 104:8-20.) While Diamond points to the discrepancy between the number of fax numbers on the Fax List and the jBlast Fax Reports, Diamond conceded that the jBlast fax reports may be incomplete. (*Id.* at 136:18-137:8.) Even assuming that the Fax List is overinclusive, this doesn't pose an issue. Rather, class members can provide supplemental evidence of the illegal faxes (such as affidavits or fax records) through a claims process to prove membership. *Birchmeier*, 302 F.R.D. at 249; *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wash. 2012) ("Whether other consumers received the messages can be determined using claim forms and phone records").

While Diamond repeatedly protests that utilizing affidavits would violate its due process rights (Opp. at 2, 10, 15, 18), it misunderstands the proposed plan. Diamond incorrectly presumes that Plaintiff's proposal requires class members to self-identify based solely on affidavits. It does not. Rather, and just as in *Birchmeier*, Plaintiff proposes using the affidavits in combination with documentary evidence (the Fax List). 302 F.R.D. at 249 ("Defendants' arguments, however,

---

[1] If any issues remain, names and addresses can be identified through "reverse lookup directories". *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, No. 2:13-CV-02468-CAS, 2014 WL 4627271, at *6 (C.D. Cal. Sept. 8, 2014).

primarily assume a class or claim identification process that is based on affidavits alone, not the combination of documentary evidence and a sworn statement that plaintiffs propose."). Indeed, in *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, the Third Circuit clarified its *Marcus* holding—on which Diamond relies (*see* Opp. at 15)—to explain that while affidavits <u>alone</u> are insufficient, "affidavits <u>in combination</u> with the [defendant's] database" does not violate a defendant's due process right. 867 F.3d 434, 442 (3d Cir. 2017) (emphasis added). The Ninth Circuit also rejected this same argument in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017), where it found that Rule 23 provides due process safeguards *at the time class members file claims*:

> At the claims administration stage, parties have long relied on "claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court" to validate claims. *Mullins*, 795 F.3d at 667. Rule 23 specifically contemplates the need for such individualized claim determinations **after a finding of liability.** *See* Fed. R. Civ. P. 23 advisory committee's note to 1966 amendment (explaining that certification may be proper "despite the need, if liability is found, for separate determinations of the damages suffered by individuals within the class"); *see also Levya v. Medline Indus. Inc.*, 716 F.3d 510, 513–14 (9th Cir. 2013) (reaffirming, after *Comcast Corp. v. Behrend*, —— U.S. ——, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013), that the need for individualized damages determinations after liability has been adjudicated does not preclude class certification). ConAgra does not explain why such procedures are insufficient to safeguard its due process rights.
>
> Given these existing opportunities to challenge Plaintiffs' case, it is not clear why requiring an administratively feasible way to identify all class members at the certification stage is necessary to protect ConAgra's due process rights. As the Seventh Circuit put it, "[t]he due process question is not whether the identity of class members can be ascertained with perfect accuracy at the certification stage **but whether the defendant will receive a fair opportunity to present its defenses when putative class members actually come forward.**" *Mullins*, 795 F.3d at 670. ConAgra may prefer to terminate this litigation in one fell swoop at class certification rather than later challenging each individual class member's claim to recovery, but there is no due process right to "a cost-effective procedure for challenging every individual claim to class membership." *Id.* at 669.

*Id.* at 1131-32 (emphasis added). Ultimately, Diamond objects that the claims process will involve some work, but this is common (and acceptable). *See Astiana*, 291 F.R.D. at 500 ("If class actions could be defeated because membership was difficult to ascertain at the class certification stage, 'there would be no such thing as a consumer class action.'" (citing *Ries*, 287

F.R.D. at 536; *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011))).

Because class members can be identified through a claims process if Plaintiff prevails, the Court should find that the proposed Class is ascertainable.

**B.      Diamond's attacks on predominance, superiority, and commonality fail because every class member was subjected to a common course of conduct.**

For its argument in chief, Diamond contends that Katz cannot satisfy predominance (opp. at 10-18), superiority (*id.* 18-19), and commonality (*id.* 21-22) because, supposedly, individualized inquiries are necessary with respect to consent, standing, and whether the class members received the fax on a virtual fax machine. (*Id*. at 11-18.) Diamond's arguments fail.

**1.      Hypothetical consent issues cannot defeat certification.**

As to consent, Diamond claims that it has "presented sufficient evidence of consent, obtained by a variety of methods." (Opp. at 13.) In reality, Diamond subjected every class member to a common course of conduct and its supposed evidence of consent was manufactured *after the commencement of this litigation*.

"Courts determine whether issues of individualized consent defeat commonality and predominance in a TCPA on a case-by-case basis after evaluating the s*pecific evidence available to prove consent.*" *Barrett v. Wesley Fin. Grp., LLC*, No. 13CV554-LAB (KSC), 2015 WL 12910740, at *5 (S.D. Cal. Mar. 30, 2015) (citation omitted) (emphasis added). When it comes to the issue of consent, "[f]actual variations amongst class members' claims…do not necessarily defeat class certification as long as the representatives claims are based on the **same course of conduct and legal theory as the class as a whole.**" *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324 *5 (N.D. Ill. Aug. 20, 2009) (citing *De LaFuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)) (emphasis added).

The cases of *Tech Instrumentation Inc. v. Eurton Elec. Co. Inc.* (hereafter "*Eurton*") and *Dr. Robert L. Meinders D.C., Ltd v. Emery Wilson Corporation* (hereafter "*Emery Wilson*"), in which predominance was found are instructive. In *Eurton*, the defendant sent fax advertisements to a list of over 1,000 people/businesses using an online fax service. No. 16-CV-2981-MSK-KMT, 2018 WL 3382914, at *1 (D. Colo. May 29, 2018). Eurton "developed the list by locating

potential customers online and cold calling them to ask whether they would be interested in receiving more information." *Id.* Eurton also possessed no records of "who it contacted or who agreed to receive more information." *Id.* Ultimately, the *Eurton* court rejected the defendant's contention that individual mini-trials were necessary regarding consent because the defendant had "no records of who it contacted and who consented. Instead, it seeks to rely on its 'normal practice' to obtain consent prior to sending faxes". *Id.* at *2.

Likewise, in *Emery Wilson*, the defendant maintained "a customer contact database known as the 'central file' containing customer information." Case No. 14-cv-596-SMY-SCW, 2016 WL 3402621, at *1 (S.D. Ill. June 21, 2016). While Emery Wilson's "unwritten policy" was to obtain consent prior to faxing advertisements, it "did not regularly maintain copies of materials sent to customers, notes regarding which faxes were sent, or documentation of the consent allegedly obtained." *Id.* at *2. Instead, Emery Wilson produced twelve declarations from its customers that attest to providing prior invitation or permission to send the faxes at issue. *Id.* at *6. The court rejected the defendant's attempt to defeat certification by explaining that its evidence that some individuals may have consented was "far from overwhelming." *Id.*

This case is similar. Just as in *Eurton* and *Emery Wilson*, Diamond also maintains a Fax List, which is comprised of fax numbers obtained in the same manner—through its "general sales process." While Diamond now proceeds as if it cannot determine who may have consented, in discovery it described the process as follows: Diamond contacts offices (in person or by phone) to acquire contact information (Dkt. 34-1, at 81:5-13); in the course of that conversation, Diamond would discuss various products with potential clients (*id.* at 203:6-13); and when a product met a potential client's needs, Diamond would request to send order forms and product documents by fax (*id.*). Critically, Diamond's request was not specific to send fax <u>advertisements</u> but rather was simply a request to send faxes more generally. (*Id.* at 203:14-19.) Also like *Eurton* and *Emery Wilson*, Diamond failed to maintain any record of this supposed consent. (*Id.* at 86:20-87:1.) Due to the lack of records, Diamond's only evidence of consent is the same for every class member— it must rely on its general sales process.

Likely in recognition that its prior testimony dooms its consent defense, Diamond now

attempts to shift gears and revise its earlier testimony. Specifically, Diamond previously testified that it did not obtain consent to send "marketing" related faxes (Dkt. 34-1, at 203:14-19), and that it did not engage in "fax marketing". (Ex. A, at 70:20-24 ("We don't do fax marketing.").) Seeking to perform a "180", Diamond lodges declarations executed by Chris Rice[2] (Dkt. 37-1) and Chris Aragon (Dkt. 37-19), both of which suddenly claim that Diamond obtains express permission to fax "marketing" materials and "advertisements". (Dkt. 37-1 ¶¶ 6, 9, 10.) Put simply, Diamond can't file declarations that contradict its own sworn testimony. *See Javine v. San Luis Ambulance Serv., Inc.*, No. CV1307480BROSSX, 2015 WL 12672090, at *4 (C.D. Cal. Jan. 13, 2015) (disregarding contradictory affidavits and explaining, "Defendant[ ] cannot offer testimony that contradicts the testimony of its Rule 30(b)(6) witnesses." (collecting cases)). Moreover, this change is material. As Diamond is aware, "evidence of permission to generally send faxes does not establish prior express permission to fax ads." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 966 (7th Cir. 2020). As such, if Diamond failed to procure consent to send marketing related faxes (as it testified), then it doesn't matter if its sales process varies because no portion of the Class would have consented regardless of any variations.

Even if the Court considers the declarations (it should not), this does not constitute "specific evidence." Rather, it's simply Diamond's own self-serving, conclusory statements that its sales process varies. No factual differences are identified—Diamond simply relies on the fact that conversations were hypothetically different. But "on the issue of individualized consent, hypotheticals are insufficient to defeat class certification." *Stemple v. QC Holdings, Inc.*, No. 12-CV-01997-BAS, 2015 WL 1344906, at *3 (S.D. Cal. Mar. 20, 2015) (citing *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1042 (9th Cir.2012); *Agne*, 286 F.R.D. at 567).

Perhaps recognizing the deficiency of such hypotheticals, Diamond and its counsel have sought to manufacture supposed "evidence." To do this, Diamond leveraged its *existing client relationships* to request that its clients sign declarations claiming they "consented" to receive faxes. (Dkt. 34-1, at 150:7-23; 154:24-155:6.) Out of 19,985 potential class members, this process

---

[2] Mr. Rice was also Diamond's Rule 30(b)(6) corporate designee. (Dkt. 34-1, pg.1.)

netted Diamond fourteen (14) declarants[3] (i.e. 0.07 percent of the Class). These declarations are insufficient to establish individualized issues of consent.

First, the declarations are inaccurate, coerced statements, which are comprised almost exclusively of legal conclusions.[4] When obtaining the declarations, Diamond and its counsel misled class members into thinking they were merely gathering facts about the suit (Dkt. 37-2 ¶ 5) and failed to explain what the term "consent" meant under the JFPA. (Declaration of Taylor T. Smith ("Smith Decl.") ¶¶ 8, 9, 11, 13, 17, attached as Grp. Ex. B; *see also* Declaration of Rosa Briceno ("Briceno Decl.") ¶ 4, attached hereto as Ex. C.) Nevertheless, Diamond requested that the declarants sign declarations that claim (in an identical, conclusory fashion) that "[i]n the context of this business relationship" they "consented to receive faxes" without any supporting facts. (Dkts. 37-3, 37-4, 37-6, 37-7, 37-8, 37-9, 37-10, 37-11, 37-13, 37-14, 37-15, 37-16, 37-17, 37-18.) Tellingly, when Plaintiff's counsel interviewed these same declarants, not a single declarant could explain how Diamond obtained their fax number and some weren't even employed with the company when the relationship began. (Briceno Decl. ¶ 4; Smith Decl. ¶¶ 8, 9, 11, 13, 17.) Put simply, Diamond should not be permitted to use coerced legal conclusions to defeat certification. *See Veliz v. Cintas Corp.*, No. C 03-1180 RS, 2008 WL 4911238, at *4 n.3 (N.D. Cal. Nov. 13, 2008) (striking portions of declarations that contain legal conclusions).

Second, the declarations are not evidence of *different* consent. Diamond's designee previously testified that he didn't know who the declarants were or how they supposedly consented. (Ex. A, at 159:24-162:17; 168:1-169:20; 172:12-173:21; 177:1-179:8; 181:2-182:4; 183:5-184:17; 189:20-190:21; 191:20-193:11; 194:13-195:25.) Instead, Diamond's sole basis for believing that the declarations provided prior express invitation to be faxed was based on its general sales process. (*Id.*) As such, Diamond is essentially trying to turn an established business relationship ("EBR") defense into a consent defense. Unfortunately for Diamond, however, it

---

[3] Diamond concedes that three of the declarants (it doesn't identify which ones) are not even in the proposed class. (*See* Dkt. 37-1 ¶ 14 ("at least 11 of the recipients' fax numbers appear on the 'fax list'").)

[4] All of the class member declarations should be stricken or excluded for reasons set fourth more fully in Plaintiff's corresponding motion to strike. (*See* Dkt. 42.)

failed to include any opt-out language on its faxes (Dkt. 34-2), thus dooming an EBR defense. *See Physicians Healthsource, Inc*, 950 F.3d at 964 (Defendant "lacked any kind of disclaimer explaining how to opt out of future faxes. Thus, it cannot rely on the TCPA's established business relationship safe harbor" (citing 47 U.S.C. § 227(b)(1)(C)(iii), (b)(2)(D); 47 C.F.R. § 64.1200(a)(4)(iii))).

As a final point, Diamond failed to maintain records of its claimed consent, and it should not be permitted to rely on this failure as a basis for defeating certification. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015) ("refusing to certify on this basis effectively immunizes defendants from liability because they chose not to maintain records of the relevant transactions."); *Birchmeier*, 302 F.R.D. at 250 ("[D]efendants are essentially arguing that the contours of the class should be defined by defendants' own recordkeeping. . . . Doing this . . . would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct."); *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1150 (W.D. Mo. 2020); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014).

Because the definition is limited to only those persons whose supposed permission was obtained in the same course of conduct, no individualized issues of consent defeat certification.

### 2.    Diamond's standing argument falls apart—the Class is limited to individuals that received a fax, as such, every class member will have suffered a concrete injury.

Diamond also contends individualized inquiries are necessary to determine if each class member "received a fax" and "suffered any injury" because, supposedly, Plaintiff "concedes" that thousands of individuals on the Fax List did not receive a fax. (Opp. at 16.) This is incorrect.

First, it is sufficient for certification purposes that Katz has Article III standing. *Guido v. L'Oreal, USA, Inc*., 284 F.R.D. 468, 475 (C.D. Cal. 2012) ("Not all plaintiffs and class members must demonstrate standing: 'In a class action, standing is satisfied if at least one named plaintiff meets the requirements.'") (citations omitted).

Second, "a violation of the TCPA is a concrete, *de facto injury*." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct.

1540, 1549 (2016)); *see also Retina Assocs. Med. Grp., Inc. v. Alliancemed, LLC*, No. SACV181670JVSKES, 2019 WL 7195329, at *3 (C.D. Cal. Nov. 18, 2019) ("here the recipient of an unwanted fax in violation of the TCPA has a concrete injury in fact." (citations omitted)). Because the proposed class is limited only to individuals that *received a fax* from Diamond, there is no need for inquiries into each class member's standing.

Finally, Plaintiff has not conceded that any of the numbers on the Fax List have not received a fax. Rather, Diamond's designee testified that it uploaded this Fax List into jBlast to send the hand sanitizer faxes during the beginning of 2020. (Dkt. 34-1, at 104:8-25.) Again, even if the Fax List is overinclusive, class members can supplement these records to prove their membership. *Birchmeier*, 302 F.R.D. at 249; *Agne*, 286 F.R.D. at 572.

As such, standing presents no bar to certification.

### 3.    Virtual fax recipients should remain in the Class.

Diamond next contends that the FCC's *Amerifactors* ruling creates an "unsolvable problem" because "Plaintiff cannot establish with classwide proof whether a particular fax was received on a traditional machine or an online fax." (Opp. at 17.) While it is true that the FCC issued a ruling stating than an "online fax service" is not a "telephone facsimile machine" as defined by the statute, the *Amerifactors* ruling is currently on appeal to the full FCC and is therefore not a "final order" of the FCC subject to the Hobbs Act. *Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, No. 1:17-cv-01149, 2020 WL 4937790, at *3 (W.D. Tenn. Aug. 24, 2020) (finding that the *Amerifactors* ruling "is not a final order").

The ruling lacks deference for two additional reasons. First, the term "telephone facsimile machine" is unambiguously defined in the statute. *See* 47 U.S.C. § 227(a)(3). When a statute is unambiguous, courts do not typically defer to an administrative ruling interpreting the clear provision. *See Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 223 (6th Cir. 2015). And second, even if the Court considered the FCC's opinion, the *Amerifactors* ruling (as a non-final order) does not control. Rather, the FCC's prior final rulings do. In 2003, the FCC (in a final order) found that a fax that is forwarded to a consumer by email falls under the statute. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd.

14014, 14133 ¶ 199 ("Congress could not have intended to allow easy circumvention of its prohibition when faxes are (intentionally or not) transmitted to personal computers and fax servers, rather than to traditional stand-alone facsimile machines and also may have serious implications for public safety.").

Further, in 2015 the FCC issued its "WestFax Order". *See In the Matter of WestFax, Inc. Petition for Consideration & Clarification*, 30 FCC Rcd. 8620, 8623, ¶ 9 (2015). There, the FCC rejected "the contention that e-faxes do not implicate the TCPA's consumer protection concerns" because they "may shift the advertising costs of paper and toner to the recipient if they are printed" and they cause "interference, interruptions, and expense" the same way a traditional fax does. *Id.* ¶ 11. The FCC ruled that e-faxes "just like paper faxes, can increase labor costs for businesses, whose employees must monitor faxes to separate unwanted from desired faxes." *Id.* Courts have also consistently rejected efforts by defendants to dodge liability by contending that e-faxes are outside the scope of the statute. *See, e.g., J2 Glob. Commc'ns, Inc. v. Protus IP Sols.*, 2010 WL 9446806 (C.D. Cal. Oct. 1, 2010); *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013); *Imhoff Inv., LLC v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015).

Ultimately, there is no need for the Court to defer to the FCC, or proceed as if the FCC rendered certification impossible in fax cases, as the statute is unambiguous. If it does defer to the FCC, the governing rulings are the 2003 Order and the WestFax Order, not the more recent *Amerifactors* ruling, which is not final and contradicts the FCC's prior Orders.

Even if the Court is inclined to defer to the *Amerifactors* ruling (it should not), the proper remedy is to exclude those individuals from the proposed Class, not to deny certification. *See Advanced Rehab & Med., P.C.*, 2020 WL 4937790, at *8 (excluding e-fax recipients). Whether an individual received a fax on a traditional or virtual fax machine is an objective inquiry. As Diamond concedes, there is simply no way (at this stage) to determine whether a particular class member received a virtual fax. Fortunately, there is no requirement to determine class membership at this stage. *Ries*, 287 F.R.D. at 535. Rather, individual members can demonstrate that they received the fax on a traditional fax machine through a claims process if the Class prevails—to hold otherwise would effectively end class actions under the JFPA.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.   Diamond's opposition overlooks the numerous other common questions that predominate.

As a final point here, Diamond's focus on a handful of supposed individual issues overlooks the bounty of common issues, including whether: (1) the faxes are advertisements under the JFPA; (2) Diamond sent the faxes; (3) the faxes contained any opt-out notice; and (4) Diamond acted willfully. Indeed, "federal courts have recognized that individual issues will likely be present during class actions but that such issues should not prevent class certification so long as they do not override the underlying common question." *Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC, 2008 WL 4156364, at *10 (N.D. Cal. Sept. 5, 2008) (citation omitted). All of these issues will be resolved using common evidence and will drive the litigation.

Accordingly, the Court should find that common issues predominate over any individual issues, and the Class should be certified pursuant to Rule 23(b)(3).

### C.   Rule 23(b)(2) certification is also appropriate.

Diamond next argues that Rule 23(b)(2) certification is improper because Rule 23(b)(2) certification isn't allowed when "each class member is entitled to as individualized award of monetary damages", and because Plaintiff fails to "specify what specific injunction it is seeking" or "demonstrate a real and immediate threat of repeated injury in the future". (Opp. at 20.) Diamond simply misunderstands hybrid class certification.

While Rule 23(b)(2) certification alone is inappropriate where "monetary relief is not incidental to the injunctive or declaratory relief", courts "may properly certify Plaintiffs claim for injunctive relief under (b)(2) and their claim for monetary relief under (b)(3)." *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2017 WL 1113293, at *17 (N.D. Cal. Mar. 24, 2017) (collecting cases); *see also Raffin v. Medicredit, Inc.*, No. CV154912GHKPJWX, 2017 WL 131745, at *10 (C.D. Cal. Jan. 3, 2017) ("But Medicredit fails to consider that we can certify Raffin's claim for injunctive relief under (b)(2) and her claim for monetary relief under (b)(3)." (collecting cases)). This is precisely the case here. Plaintiff doesn't seek to certify a Rule 23(b)(2) class for monetary damages. Rather, Plaintiff seeks injunctive relief pursuant to Rule 23(b)(2) to require Diamond to implement policies and procedures so that it stops sending unsolicited faxes. At the same time,

1    Plaintiff seeks certification pursuant to Rule 23(b)(3) for monetary damages.

2              Diamond's contention that Plaintiff faces no real or immediate threat of future injury is

3    likewise incorrect. Diamond testified that it has <u>zero</u> policies, procedures, or training in place to

4    ensure compliance with the JFPA. (Dkt. 34-1, at 71:25-72:16.) While Diamond contends that

5    Plaintiff has only received one fax over a year and a half ago (opp. at 20), it also conveniently

6    omits it is currently not sending any faxes via jBlast (Ex. A, at 36:12-18). Consequently, absent a

7    Court order, Diamond could simply resume blasting out thousands of unsolicited faxes, including

8    to Plaintiff, in the future. Put simply, a defendant cannot moot a claim for injunctive relief based

9    on a voluntarily cessation of a challenged practice. *See Dioquino v. Sempris, LLC*, No.

10   CV1105556SJOMRWX, 2011 WL 13127143, at *4 (C.D. Cal. Dec. 8, 2011) ("[A] defendant's

11   voluntary cessation of a challenged practice does not deprive a federal court of its power to

12   determine the legality of the practice unless it is absolutely clear that the allegedly wrongful

13   behavior could not reasonably be expected to recur.") (quoting *Buckhannon Bd. & Care Home,*

14   *Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 609 (2001)).

15             Accordingly, Plaintiff has met the requirements for certification pursuant to Rule 23(b)(2).

16       **D.    Diamond's attacks on numerosity, adequacy, and typicality fare no better.**

17             **1.    Numerosity is not seriously in dispute here.**

18             Refusing to concede even the most obvious aspects of class certification, Diamond claims

19   that numerosity is not satisfied because "[t]here is no evidence that even one individual received

20   the fax whereby consent was supposedly obtained through this alleged 'general sales process'".

21   (Opp. at 21.) Diamond's own testimony contradicts this assertion.

22             The numerosity inquiry asks whether the class "is so numerous that joinder of all members

23   is impracticable." Fed. R. Civ. P. 23(a)(1). The requirement may be met "[w]here the exact size of

24   the class is unknown but general knowledge and common sense indicate that it is large." *Pavloff*

25   *v. Cardinal Logistics Mgmt. Corp.*, No. CV 20-00363 PA (KKX), 2020 WL 6821072, at *3 (C.D.

26   Cal. Oct. 7, 2020) (citation omitted). A "reasonable estimate" based on the information at hand is

27   sufficient for class certification. *See Wortman v. Air New Zealand*, 326 F.R.D. 549, 556 (N.D.

28   Cal. 2018) ("The plaintiff does not need to allege a precise number of class members, but may

1  make a reasonable estimate." (citation omitted)). "[A] class greater than forty often satisfies the

2  requirement." *Ambrosia v. Cogent Commc'ns, Inc.*, 312 F.R.D. 544, 552 (N.D. Cal. 2016).

3       Here, Plaintiff has proffered a Fax List comprising 19,985 individual fax numbers—which

4  Diamond contends were all obtained through its "general sales process". And Diamond's

5  corporate representative testified that this was the list that was uploaded into jBlast to send the

6  faxes at issue. (Dkt. 34-1, at 104:8-20.) On the back end, Plaintiff has produced the jBlast job

7  summary reports, which reveal that 17,219 fax numbers were uploaded into the system during the

8  relevant time period. (Dkt. 34-4 ¶ 6; Dkt. 34-3.) Even if some of the fax numbers didn't receive a

9  subject fax, the Class is clearly still comprised of more than 40 members, and the Court should

10  find that the proposed class is sufficiently numerous.

11       **2.      Plaintiff and its counsel will continue to adequately represent the Class**

12       Diamond next argues that both Plaintiff and its counsel are inadequate. (Opp. at 23-24.)

13  Diamond asserts that Plaintiff "only minimally participated in preparing the Complaint" and is

14  willing to "abandon the class for its own self gain," (*id.* at 23) and that Plaintiff's counsel is

15  inadequate because he engaged in "unethical and coercive conduct" and "failed to apprise

16  Plaintiff of information about this case." (*id.* at 24.) These statements are false.

17       First, contrary to Diamond's claim, Plaintiff has a demonstrable commitment to the case.

18  Katz has responded to interrogatories and requests for production and has produced substantial

19  responsive documents. (Katz Depo. Tr., excerpts are attached hereto as Ex. D, at 78:9-19; 94:2-

20  95:3.) Plaintiff also testified to reviewing the discovery responses prior to verifying them and to

21  reviewing the complaint prior to filing. (*Id.* at 71:2-21; 91:4-92:2; 94:2-95:3.) On August 12,

22  2021, Plaintiff's representative also sat for a deposition. (*Id.* at pg. 1.) Courts typically find this

23  level of commitment satisfactory. *See In re Northrop Grumman Corp. ERISA Litig.*, No. CV 06-

24  06213 MMM JCX, 2011 WL 3505264, at *15 (C.D. Cal. Mar. 29, 2011) (finding plaintiffs

25  adequate because "the class representatives participated actively in discovery, met with counsel,

26  sat for deposition, and reviewed the complaint before it was filed.").

27       Second, Diamond's remarks about settlement negotiations are unfounded and improper.

28  *Buchanan v. Tata Consultancy Servs., Ltd.,* No. 15-CV-01696-YGR, 2017 WL 6611653, at *22

(N.D. Cal. Dec. 27, 2017) (refusing to consider settlement discussions in connection with class certification because "settlement discussions are privileged and do not constitute evidence which this Court may consider."). Nevertheless, Plaintiff did not sell out the class, as Diamond claims. Instead, Plaintiff informed Diamond that it would only discuss an individual settlement on the condition that it make changes to its faxing practices to ensure compliance with the JFPA. (Smith Decl. ¶ 4.) Only after securing this agreement, which would have undoubtedly conveyed a benefit to all class members, did Plaintiff provide a monetary demand.[5] Further, Diamond's claim that counsel failed to present the settlement letter to Plaintiff is misleading. (Opp. at 24.) As Katz explained in his deposition, he discussed the contents of Diamond's demand with his counsel and made the decision to reject the offer. (Ex. D, at 82:16-21; 83:11-22; 84:20-25.)

Third, Diamond's accusation that Plaintiff's counsel has engaged in unethical conduct is also false. (Opp. at 24.) In supposed support, Diamond points to two declarations signed by Laura Avila and Adrien Rances, which both claim that Plaintiff's counsel failed to identify who he was and asked them to sign declarations that contained false statements. (Dkts. 37-5; 37-12.) Neither of these claims is true. As with every declarant that was contacted, Plaintiff's counsel identified who he was, who he represented, and why he was calling at the beginning of each communication. (Smith Decl. ¶ 7.) After conceding that their initial declarations were inaccurate—primarily because Diamond's counsel failed to explained "consent" under the JFPA—both Avila and Rances agreed to sign supplemental declarations. (*Id.* ¶¶ 13, 17.)

Thereafter, and in direct contradiction to both Avila's and Rances's sworn statements, counsel sent the draft declarations in word format, along with their prior declarations, and asked whether the declarations were "accurate", "agreeable", or if "the language should be changed". (*See* Avila Emails and Rances Emails, attached as Exs. 1 and 2 to the Smith Decl., respectively.) Unlike Diamond's counsel, at no time did Plaintiff's counsel ask either Avila or Rances to sign any declaration that was not accurate. Further, neither Avila nor Rances disputed that the supplemental declarations were accurate. (Smith Decl. ¶¶ 15, 18.) Instead, Avila expressed a

---

[5] Diamond neglects to mention that the demand was inclusive of a payment to Plaintiff plus attorneys' fees and costs. (Smith Decl. ¶ 4.)

desire to not be involved in the litigation (*id.* ¶ 15.) and Rances declined to sign the declaration solely because it didn't benefit Diamond (*id.* ¶ 18). If anything, the actions of Avila and Rances further evidence the corrosive effect that Diamond and its counsel have had on the declarants.

In short, Plaintiff and its counsel are committed to this case and have no conflicts with the Class. As such, the Court should find that both are adequate representatives.

### 3.    Plaintiff is typical of the proposed Class.

Finally, Diamond asserts that Plaintiff is atypical of the Class because supposedly it "is not even a member of the class" and "it offers no evidence that it went through a 'general sales process'". (Opp. at 25.) Diamond again ignores the facts.

Just like every class member, Diamond contends that it obtained consent to send faxes to Plaintiff based solely on its "general sales process." (Dkt. 34-1, at 201:19-202:17.) Further, Plaintiff's fax number is listed on the Fax List, which again Diamond contends were procured in the same manner. (*Id.* at 103:4-21.) Whether that process is sufficient to establish prior express invitation or permission to send faxes is irrelevant: what matters for typicality is whether Diamond has any defenses "unique" to Plaintiff. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" (citation omitted)). Because Diamond contends it obtained consent to fax Plaintiff in the same manner as all class members, Plaintiff's claims are typical.

## III.    CONCLUSION

Try as it may, Diamond's attacks and false statements cannot defeat certification. Plaintiff's proposed Class definition is sufficiently tailored to meet the requirements of Fed. R. Civ. P. 23, and common issues of fact and law predominate over any supposed individual issues. As such, the Court should grant class certification and award such additional relief as the Court deems necessary, reasonable, and just.

1

2  Dated: November 4, 2021

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully,

**JEFFREY KATZ CHIROPRACTIC, INC.**, individually and on behalf of all others similarly situated,


*/s/ Patrick H. Peluso*
One of Plaintiff's Attorneys

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94607
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso
ppeluso@woodrowpeluso.com*
Taylor T. Smith
tsmith@woodrowpeluso.com*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0676
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Class*

*\*pro hac vice admission*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above papers was served upon counsel of record by filing such papers via the Court's ECF system on November 4, 2021.

*/s/ Patrick H. Peluso*