# Exhibit 1

1   Paul A. Grammatico (SBN 246380)
    pgrammatico@kcozlaw.com
2   KABAT CHAPMAN & OZMER LLP
    333 S. Grand Avenue, Suite 2225
3   Los Angeles, CA 90071
    Telephone: (213) 493-3980
4   Facsimile: (404) 400-7333

5
    *Counsel for Defendant, Diamond Respiratory Care, Inc.*
6
7   (Counsel continued on following page)

8                    **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
9

10  JEFFREY KATZ CHIROPRACTIC, INC., a          Case No.  3:20-cv-04108-CRB
    California corporation, individually and on
11  behalf of all others similarly situated       **DEFENDANT, DIAMOND
                                                   RESPIRATORY CARE, INC.'S SUR-**
12             Plaintiff,                           **REPLY IN SUPPORT OF OPPOSITION
         vs.                                        TO PLAINTIFF'S MOTION FOR CLASS**
13                                                  **CERTIFICATION**

14  DIAMOND RESPIRATORY CARE, INC., a
    California Corporation                         Date:   December 9, 2021
15                                                 Time:  10:00 a.m.
               Defendant.                          Crtrm: 6
16
17                                                 Honorable Charles R. Breyer

18
19
20
21
22
23
24
25
26
27
28

Ryan D. Watstein (*Pro Hac Vice*)
rwatstein@kcozlaw.com
KABAT CHAPMAN & OZMER LLP
171 17th Street NW, Suite 1550
Atlanta, GA 30363
Telephone: (404) 400-7300
Facsimile: (404) 400-7333

*Counsel for Defendant*

Rebecca Davis (SBN 271662)
rebecca@lozeaudrury.com
LOZEAU DRURY LLP
1939 Harrison St., Suite 150
Oakland, CA 94612
Telephone: (510) 836-4200
Facsimile: (510) 836-4205

Patrick H. Peluso (*Pro Hac Vice*)
ppeluso@woodrowpeluso.com
Taylor T. Smith (*Pro Hac Vice*)
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, CO 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiff*

DEFENDANT'S SUR-REPLY IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II.   PLAINTIFF HAS NO WAY OF IDENTIFYING CLASS MEMBERS WITHOUT
      ENDLESS MINI-TRIALS, DESTROYING ASCERTAINABILITY AND
      SUPERIORITY .....................................................................................................................1

III.  ENDLESS MINI-TRIALS WOULD BE REQUIRED TO ESTABLISH LIABILITY,
      DESTROYING PREDOMINANCE AND SUPERIORITY. ...........................................5

      A.    Individualized Issues of Consent Destroy Predominance and Superiority ............6

            1.    Diamond's Evidence of Consent Bars Certification ...................................6

            2.    The Court Should Disregard or Strike Taylor Smith's Hearsay-Riddled
                  Declaration, Which Does Not Impact Diamond's Consent Evidence........8

      B.    Individualized Virtual Fax Issues Destroy Predominance and Superiority............8

      C.    Individualized Standing Issues Bar Certification Under *TransUnion*..................10

III.  NINTH CIRCUIT LAW BARS CERTIFICAITON OF A RULE 23(B)(2)
      INJUNCTIVE RELIEF CLASS.........................................................................................11

IV.   PLAINTIFF AND ITS COUNSEL ARE INADEQUATE TO REPRESENT THE
      CLASS BASED ON THEIR UNETHICAL CONDUCT................................................12

IV.   CLASS CERTIFICATION SHOULD BE DENIED FOR NUMEROUS OTHER
      REASONS ............................................................................................................................13

DEFENDANT'S SUR-REPLY IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Birchmeier v. Caribbean Cruise Line, Inc.*,
   302 F.R.D. 240 (N.D. Ill. 2014) ................................................................5

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3rd Cir. 2013).................................................................6

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
   631 F.3d 939 (9th Cir. 2011) ...............................................................12

*Connelly v. Hilton Grand Vacations Co., LLC*,
   294 F.R.D. 574 (S.D. Cal. 2013) .........................................................12

*Cordoba v. DIRECTV, LLC*,
   942 F.3d 1259 (11th Cir. 2019) ...........................................................10

*Cordoba v. DIRECTV, LLC*,
   2020 WL 5548767 (N.D. Ga. July 23, 2020) ......................................11

*Craftwood II, Inc. v. Wurth Louis & Co.*,
   2018 WL 6258883 (C.D. Cal. Oct. 2, 2018) .........................................7

*Daniel v. Five Stars Loyalty, Inc.*,
   2015 WL 7454260 (N.D. Cal. Nov. 24, 2015) ......................................9

*Dr. Robert L. Meinders D.C., Ltd v. Emery Wilson Corp.*,
   2016 WL 3402621 (S.D. Ill. June 21, 2016) .........................................7

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011).............................................................12

*Espejo v. Santander Consumer USA, Inc.*,
   2016 WL 6037625 (N.D. Ill. Oct. 14, 2016) ...................................4, 13

*F.T.C. v. H.N. Singer, Inc.*,
   1982 WL 1907 (N.D. Cal. Oct. 26, 1982) .............................................8

*Karhu v. Vital Pharm., Inc.*,
   621 F. App'x 945 (11th Cir. 2015).......................................................4

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) .................................................................6

*Moore v. Apple, Inc.*,
   309 F.R.D. 532 (N.D. Cal. 2015) .......................................................10

*Muniz v. United Parcel Serv., Inc.*,
  738 F. 3d 214 (9th Cir. 2013) ................................................................8

*Nebraska Press Assn. v. Stuart*,
  427 U.S. 539 (1976) ...........................................................................13

*Patel v. Facebook, Inc.*,
  932 F.3d 1264 (9th Cir. 2019) ..............................................................5

*Pierce v. County of Orange*,
  526 F.3d 1190 (9th Cir. 2008) ..............................................................1

*Raffin v. Medicredit, Inc.*,
  2017 WL 131745 (C.D. Cal. Jan. 3, 2017)...........................................12

*Silver v. Pennsylvania Higher Educ. Assistance Agency*,
  2020 WL 607054 (N.D. Cal. Feb. 7, 2020) ............................................7

*Tech Instrumentation Inc. v. Eurton Elec. Co., Inc.*,
  2018 WL 3382914 (D. Col. May 29, 2018) .............................................7

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ...................................................................10, 11

*True Health Chiropractic, Inc. v. McKesson Corp.*,
  896 F.3d 923 (9th Cir. 2018) ................................................................6

*True Health Chiropractic Inc. v. McKesson Corp.*,
  2020 WL 7664484 (N.D. Cal. Dec. 24, 2020) ........................................9

*True Health Chiropractic Inc. v. McKesson Corp.*,
  2021 WL 4818945, . (N.D. Cal. Oct. 15, 2021) ..................................9, 10

*US W. Commc'ns, Inc. v. Hamilton*,
  224 F.3d 1049 (9th Cir. 2000) ..............................................................9

*Van Patten v. Vertical Fitness Grp., LLC*,
  847 F.3d 1037 (9th Cir. 2017) .............................................................11

*Wortman v. Air New Zealand*,
  326 F.R.D. 549 (N.D. Cal. 2018) ..........................................................1

*Xavier v. Philip Morris USA, Inc.*,
  787 F. Supp. 2d 1075 (N.D. Cal. 2011)..................................................6

*Zepeda v. Paypal*,
  2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ......................................12

**Constitution**

U.S. Const., amend I.............................................................................13

**Rules**

Fed. R. Civ. P. 23 ...........................................................................................................1, 3, 8, 10

**Other Authorities**

*In the Matter of Westfax, Inc. Petition for Consideration & Clarification,*
    30 F.C.C. Rcd. 8620 (2015) ....................................................................................10

DEFENDANT'S SUR-REPLY IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Diamond submits this sur-reply in support of its opposition to Plaintiff's Motion for Class Certification to address the following:

- Plaintiff's misrepresentation of the record with regard to the available class records, consent, and Katz's adequacy as a class representative.

- A decision within this district that came out after the opposition that decertified a TCPA fax case *solely* because, like here, there is no way to determine whether a fax was received virtually via email as opposed to on a traditional fax machine.

- Plaintiff's submission of new and improper evidence—a declaration from class counsel saturated with numerous pages of rank hearsay that purports (unsuccessfully) to undermine sworn statements from putative class members.

- Plaintiff's invitation to the Court to commit reversible error by failing to address *controlling* Supreme Court and Ninth Circuit authorities with regard to putative class member standing, FCC orders, and certification of a 23(b)(2) class.

Plaintiff's misrepresentations, sham evidence, and disregard of binding authority only further confirm that (1) at the threshold, there is no ascertainable class; (2) Plaintiff cannot establish predominance or superiority as a matter of law; (3) the Court may not certify a Rule 23(b)(2) injunctive relief class; and (4) Plaintiff and its counsel are inadequate to represent the class given their misconduct.  Accordingly, the Court should deny Plaintiff's motion for class certification.

## II.     PLAINTIFF HAS NO WAY OF IDENTIFYING CLASS MEMBERS WITHOUT ENDLESS MINI-TRIALS, DESTROYING ASCERTAINABILITY AND SUPERIORITY

Although "the ascertainability requirement is not explicitly required by the Federal Rules of Civil Procedure … courts in this district routinely require plaintiffs to demonstrate it as part of Rule 23 class certification motions."  *Wortman v. Air New Zealand*, 326 F.R.D. 549, 554, 554 n.3 (N.D. Cal. 2018) (Breyer, J.).  If a plaintiff cannot do so, class certification must be denied for lack of superiority.  *See Pierce v. County of Orange*, 526 F.3d 1190, 1200 (9th Cir. 2008) (district court did not abuse its discretion in decertifying class because "Rule 23(b)(3) would not offer a superior

1    method for fair and efficient adjudication in light of expected difficulties identifying class

2    members").

3          To be clear, this is not a requirement that all class members be identified by name at the class

4    certification stage—as Plaintiff mischaracterizes Diamond's argument (at 2).   Rather, it is a

5    requirement that Plaintiff prove at the class certification stage that he has a method of identifying

6    who will eventually fall within the proposed class, as he has defined it, without the need for endless,

7    highly individualized mini-trials on class membership.  Plaintiff has utterly failed to do that.

8          Here, as Diamond pointed out in its Opposition, it is impossible to determine who

9    "supposedly" consented "through [Diamond's] general sales process," as Plaintiff *still* cannot

10   articulate what this term means, and Diamond's evidence establishes that there is no uniform process

11   by which Diamond's customers provided consent.  Rather, consent is obtained in myriad, individual

12   ways.  Rice Decl. ¶¶ 6–10; Diamond Dep. at 84:24–86:6, 161:4–24, 168:3–169:9, 177:14–178:24;

13   Customer Decls.  And, even if Plaintiff could provide objective criteria defining an alleged "general

14   sales process," which does not exist, the class proposed by Plaintiff would still not be identifiable

15   because the **only** evidence regarding class membership is an "incomplete" list of 19,985 fax numbers

16   ("Fax List") that were uploaded into the fax transmission system ("jBlast") but that Plaintiff has no

17   evidence ever actually were sent a transmission.  *See* Motion at 4.

18         Indeed, it is undisputed that **thousands** of these numbers were definitively never sent a fax.

19   The record establishes that Diamond uploaded 19,985 fax numbers to jBlast.  *Id.*  We also know that

20   every time Diamond uploaded numbers into jBlast, jBlast produced one-page reports that show the

21   total number of number of attempted faxes and completions.  *Id.*, Ex. C.  Importantly, here, Plaintiff

22   concedes that the total number of attempted faxes is only 17,219 (*Id.* at 4)—meaning the total number

23   of attempted faxes does not match up with the amount of numbers Diamond uploaded.  Plaintiff

24   cannot explain this discrepancy—and it confirms that JBlast could not have actually sent faxes to

25   thousands of the numbers on the supposed Fax List.  Did jBlast send the transmissions to some of

26   them?  Or did it accidentally send the transmission to a different list altogether, which might explain

27   the discrepancy?  Or did jBlast only send the one batch of faxes on which Plaintiff's number was

28   included and not any of the others?  Plaintiff does not know, because it did not even attempt to take

discovery on this critical issue.  Further, as Diamond pointed out in its Opposition—and as Plaintiff also concedes—aside from the discrepancy between the Fax List and jBlast reports, the jBlast reports also confirm that there were; (1) **5,811** unidentifiable numbers that were removed prior to attempted transmission (*See* Clark Decl. at ¶ 9 and Motion Ex. C); and (2) **1,585** attempted transmissions for which the transmission failed (*See* Clark Decl. at ¶ 10 and Motion Ex. C).  At the end of the day, there is simply no evidence that ***any*** attempted transmissions, other than the one Plaintiff received, were successful—because the jBlast reports do not identify ***any*** numbers whatsoever, much less to which numbers a fax was successfully sent.

Plaintiff, then, is left with an inexplicable difference between a list of numbers supposedly uploaded into j-Blast and reports of the quantity of faxes actually transmitted, which Plaintiff does not even try to explain, despite bearing the burden under Rule 23.  Ultimately, it is impossible to tell what happened because: (a) there is a huge discrepancy between the quantity of numbers Diamond uploaded and the quantity of numbers actually sent a fax; (b) the summaries of transmitted faxes do not identify any numbers (just the total quantity of attempted transmissions, errors, and removed numbers); and (c) there is no evidence in the record that anyone other than Plaintiff ever received the hand-sanitizer fax.  *See, e.g.*, Castillo Decl. ("I do not recall whether the Office received [the hand-sanitizer fax]."  Thus, as Plaintiff has no method for identifying recipients, other than by highly individualized fact inquiries— especially since many of the fax numbers may have been reassigned since any purported transmission—this fact alone dooms class certification.

Plaintiff also misrepresents the record by stating that recipients can be determined through a process based on (1) database records and (2) affidavits, citing *Marcus v. BMW of N. Am., LLC*, 867 F.3d 434, 442 (3rd Cir. 2017) ("Affidavits, in combination with records or other reliable and administratively feasible means, can meet the ascertainability standard.").  But this argument fails for two reasons.  *First*, **there are no database records available** to identify successful fax recipients (*see, e.g.*, Clark Decl. at ¶ 12 ("jBlast has no records … pertaining to which numbers the fax was sent to, which numbers were removed, and which numbers the fax failed to be sent to.")).  Nor has Plaintiff offered any evidence, expert opinion, or argument about what specific records could be used

and exactly how such a claims process would work.  It could not work, as a claims administrator cannot conjure records that do not exist.

*Second*, Plaintiff offers nothing more than the "submission of affidavits" to prove receipt of a fax, but this process does nothing to resolve class membership, as Plaintiff has defined his class. Specifically, affidavits showing ***whether*** the affiants received a fax does not allow the Court (or the parties) to determine the circumstances under which they received the fax or the manner in which they provided consent.  And because the "general sales process" component of the class definition is amorphous and undefined, there is no possible way any putative class member could attest to whether they did or did not provide consent in this manner.  Given the foregoing, it is unsurprising that Plaintiff has not proposed a specific procedure for obtaining such affidavits.

Finally, the authorities Plaintiff relies upon are inapposite.  For example, *Briseno v. ConAgra Foods, Inc.*, held that defendants could individually challenge the *damages* claims of absent class members, which were a *few cents* there, through the claims administration process.  844 F.3d 1121, 1130 (9th Cir. 2017) ("Why would a consumer risk perjury charges and spend the time and effort to submit a false claim for a de minimis monetary recovery?").  This case is patently different because Plaintiff is seeking $1,500 per fax—thus,  here, the damages at issue per class member are **thousands** of times more than the damages at issue in *Briseno*, meaning the incentive to submit false claims is far greater—a concern other courts have specifically addressed in the TCPA context.  *See Espejo v. Santander Consumer USA, Inc.*, No. 11 C 8987, 2016 WL 6037625 at *12 (N.D. Ill. Oct. 14, 2016) (recognizing class treatment is not superior in TCPA context where there are "substantial difficulties involved in identifying putative class members" because TCPA provides "built-in incentives for aggrieved plaintiffs to litigate individually" rather than on a class-wide basis); *see also Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 948 (11th Cir. 2015) ("allowing class members to self-identify without affording defendants the opportunity to challenge class membership provide[s] inadequate procedural protection to Defendants and implicates their due process rights.") (cit. omitted).  Further, unlike *Briseno*, this is not a case where the maximum financial extent of the defendant's liability is fixed (there a fixed and identifiable number of bottles of Wesson cooking oil were sold to consumers), such that "identification of class members will not affect a defendant's liability."  Here,

DEFENDANT'S SUR-REPLY IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

Plaintiff has not presented any evidence that anyone else actually received a fax and, even if this issue could be resolved through affidavits (it cannot), it still does nothing to resolve class membership given the absence of objective criteria defining Diamond's "general sales process."   Rather, Plaintiff's proposal is targeted only to the threshold question of who may have received a fax, and does nothing to resolve class membership for the reasons discussed above.

Similarly, Plaintiff's reliance on *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014), is misplaced because, unlike here, the defendants there **conceded** that all the phone numbers on the list had been called—*i.e.*, the class was ascertainable based on the defendant's records and admissions.  Here, the list of fax numbers undisputedly includes thousands of numbers that did not receive a single fax and there is no evidence that anyone other than Plaintiff received one, which Diamond does not concede.  Thus, here, unlike *Briseno* and *Birchmeier*, there is no way to ascertain class membership based on Diamond's (or anyone else's) records or through affidavits, much less determine liability, as discussed below.

## III.   ENDLESS MINI-TRIALS WOULD BE REQUIRED TO ESTABLISH LIABILITY, DESTROYING PREDOMINANCE AND SUPERIORITY.

Even if Plaintiff were correct that it has enough information to determine *class membership* (and it is not), Plaintiff still has no way to establish *liability* on a class-wide basis.  As discussed below, there are multiple threshold liability questions that cannot be determined on a class-wide basis, including, for example, (1) whether the recipients consented, (2) whether the fax was received on a virtual machine, and (3) whether the recipients were harmed (as opposed to helped) even in the absence of consent.  Binding Ninth Circuit authority makes clear that certification must be denied in such circumstances.  *See, e.g.*, *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1275-76 (9th Cir. 2019) ("Because the district court would have to conduct countless mini-trials … common questions do not predominate, and the district court erred in certifying the class.").

Moreover, as a threshold matter, Plaintiff's proposed method of identifying class members by affidavits would raise serious due process problems that also bar certification.  Specifically, if Plaintiff was permitted to obtain affidavits from putative class members stating whether they received a fax, which it would undoubtedly argue proves liability, such a process would violate

Diamond's due process rights to cross examine each class member to prove up each of its defenses set forth below.  *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012); *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3rd Cir. 2013) ("A defendant in a class action has a due process right to raise individual challenges and defenses to claims, and a class action cannot be certified in a way that eviscerates this right or masks individual issues.").  Indeed, Plaintiff would undoubtedly use such affidavits to take the place of Diamond's right to cross-examine the affiants at trial, which is obviously improper.  *See Briseno*, 844 F.3d at 1132; *see also Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1090-91 (N.D. Cal. 2011) ("If absent class members are permitted to testify [regarding class membership] by way of affidavit … [defendant] would be forced to accept their [testimony] without the benefit of cross-examination. Such a procedure would not be proper or just.").  Accordingly, given the significant, individualized liability questions that would have to be addressed as to each class member, the Court should not certify any class.

### A.   Individualized Issues of Consent Destroy Predominance and Superiority.

#### 1.   *Diamond's Evidence of Consent Bars Certification.*

Class certification must be denied where, as here, a defendant offers evidence that customers consented to receive the fax in a variety of ways, thus defeating predominance.  *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018).  Recognizing that consent destroys predominance, Plaintiff (at 5-9) blatantly misrepresents the record.  Contrary to Plaintiff's arguments, the evidence of consent is concrete, not hypothetical, as Diamond submitted undisputed evidence—deposition testimony, written discovery responses, a declaration of its President, a declaration of its sales manager, and over one dozen customer declarations—that it sent the subject fax to customers who consented to receive it.  *See, e.g.*, Diamond Dep. at 84:24–86:6 ("we have conversations with these people often, and a lot of the times – well, often, they ask us to send them a fax, or we say, hey, can we fax over, you know, order forms, prescriptions – really, whatever it is – product info.  And they gave us – you know, they give us the green light to do that."), 161:4–24, 168:3–169:9, 177:14–178:24; Rice Decl. ¶¶ 6–10 ("Diamond also obtains the prospective and current customers' express permission to send them marketing and informational materials via contact information provided in the context of individualized overviews of Diamond's business, which can

DEFENDANT'S SUR-REPLY IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

occur in person or on the phone."); Customer Decls.  This undisputed evidence establishes that Diamond's sales reps interacted with and organically developed relationships with their customers, often over a period of years, and obtained the required consent to market to them via fax.  *See* Rice Decl. ¶ 7; *see generally* Customers Decls. (establishing that customers provided fax number and "consented to receive faxes, including faxes like" the hand-sanitizer fax).

Diamond cited *numerous* cases in its Opposition in which class certification was denied based on less or comparable evidence.  *See, e.g.*, *Craftwood II, Inc. v. Wurth Louis & Co.*, No. SACV1700606, 2018 WL 6258883, at *8 (C.D. Cal. Oct. 2, 2018) (finding sufficient evidence of consent based on customer declarations stating, "I am a longtime customer of [defendant].  I have received fax advertisements from [defendant].  I ***consented*** to receive those (and other) faxes.") (emphasis added).[1]  And Plaintiff's reliance on class certification grants in *Tech Instrumentation Inc. v. Eurton Elec. Co., Inc.*, No. 16-CV-2981, 2018 WL 3382914 (D. Col. May 29, 2018) and *Dr. Robert L. Meinders D.C., Ltd v. Emery Wilson Corp.*, No. 14-cv-596, 2016 WL 3402621 (S.D. Ill. June 21, 2016) is misplaced.  In *Tech*, the defendant did not obtain *any evidence* from putative class members regarding consent.  Similarly, in *Emery*, unlike here, the evidence demonstrated that the defendant's fax marketing practices were based on sending thousands of faxes to potential customers where it was unclear that the defendant had *ever even spoken* with them.  The Court should also disregard Plaintiff's apparent contention that a customer must say the magic words "I consent to fax marketing" to provide consent, which is not the law.  *See, e.g.*, *Craftwood II, Inc.*, 2018 WL 6258883, at *8; *Silver v. Pennsylvania Higher Educ. Assistance Agency*, No. 14-CV-00652, 2020 WL 607054, at *11 (N.D. Cal. Feb. 7, 2020) (denying certification where "the need to inquire into the parties' specific statements and actions to make such determination [about each potential class member's consent] effectively eliminate[d] classwide proof on that issue").

At bottom, Diamond produced evidence from over one dozen putative class members of

---

[1]      Plaintiff also misleadingly argues (at 8) that Diamond's evidence is insufficient because it "only" obtained 14 declarations.  That is nonsense.  Properly interviewing the relevant witnesses from busy doctor's offices to obtain those 14 declarations took over 130 hours of collected time.  Rice Decl. at ¶ 15.  And this evidence of consent is unrebutted, despite Plaintiff bearing the burden to show it can be resolved on a classwide basis without a need for mini-trials.  Indeed, after over a year of discovery, Plaintiff has not put forth a ***single*** individual who has testified about lack of consent (which includes Katz himself, since he did not even know if other people at his office had worked with Diamond or had purchased hand sanitizer (*See* Katz. Dep. at 54:6–14, 56:16–17, 57:1–4)).

consent, whereas Plaintiff (who bears the burden under Rule 23) has not produced any competent evidence that Diamond faxed even one individual without consent (which includes Plaintiff, as Katz did not even know whether Plaintiff had any prior relationship with Diamond in which consent was provided (Katz. Dep. at 61:7–62:3)).

### 2. *The Court Should Disregard or Strike Taylor Smith's Hearsay-Riddled Declaration, Which Does Not Impact Diamond's Consent Evidence.*

Though it bears the burden to prove all Rule 23 elements, Plaintiff opted not to depose the declarants or seek statements from other class members, instead having its attorney, Taylor Smith, call them and attempt to confuse or coerce them into abandoning their truthful testimony. *See* Avila Supp. Decl.; Rances Supp. Decl. (stating Plaintiff's counsel left her voicemail that "d[id] not clearly identify his firm" asking her to sign draft declaration that "contained false statements"). Plaintiff then submitted a declaration from its counsel that is rife with inadmissible hearsay purporting to summarizes alleged conversations between Smith and the declarants that contradict the declarants' sworn statements. Smith's declaration must be entirely disregarded. *See, e.g.*, *Muniz v. United Parcel Serv., Inc.*, 738 F. 3d 214, 223 (9th Cir. 2013) (attorney declaration repeating paralegal's out of court statements concerning hours she worked constituted inadmissible hearsay); *F.T.C. v. H.N. Singer, Inc.*, No. C-80-3068, 1982 WL 1907, at *8 (N.D. Cal. Oct. 26, 1982) (declaration "so pervaded by hearsay" that Court struck it in its entirety).[2] Plaintiff's reply in support of its motion to strike class member declarations (ECF 47 at 10) further confirms that that the declaration must be disregarded. Plaintiff offers no response to the hearsay argument other than that the Court should disregard "only" the hearsay statements (which is the great majority of it) and that the declaration may still be admissible to show counsel's attempts to contact class members, which are irrelevant to the preeminent issue here—whether the class members consented.

### B. Individualized Virtual Fax Issues Destroy Predominance and Superiority.

Even if it were possible to determine who received a fax and whether the recipient consented

---

[2]     Despite Plaintiff's counsel's best efforts to confuse them, not a *single* declarant recanted the testimony of consent. Rose Briceno, the one declarant that signed an additional statement, merely stated she did "not recall" whether consent was given. This proves *Diamond's* point that individualized inquiries into thousands of persons' fading recollections is required to determine consent.

to the same, the Court would still have to deny certification because it impossible to determine whether a fax was received via traditional fax or virtual transmission.  Plaintiff concedes in its reply (at 11) "there is simply no way (at this stage) to determine whether a particular class member received a virtual fax."  As Judge Gilliam recognized just weeks ago in decertifying a TCPA fax case, in light of the FCC order in *Amerifactors*, "[t]here is now no liability under the TCPA for faxes received via an online fax service" because "the individualized question of whether each class member received the faxes on a stand-alone fax machine predominates over common questions."  *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219, 2021 WL 4818945, at *1-3. (N.D. Cal. Oct. 15, 2021).  And Judge Gilliam decertified the class based ***solely*** on the virtual fax issue, an issue which is also dispositive here—though Diamond has ***numerous*** additional reasons for prevailing as described herein.  Plaintiff's attempts to evade this inescapable result are all unavailing.

*First*, Plaintiff claims (at 10) that the FCC order is currently on appeal and, therefore, not a final order.  This argument fails, as it is contrary to binding Ninth Circuit law holding that the order must be treated as final because it "determines rights and gives rights to legal consequences."  *See True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219, 2020 WL 7664484, at *7 (N.D. Cal. Dec. 24, 2020) (citing *US W. Commc'ns, Inc. v. Hamilton*, 224 F.3d 1049, 1055 (9th Cir. 2000), *as amended on reh'g* (Sept. 13, 2000)).

*Second*, Plaintiff's claim that the order should not be given deference ignores binding Ninth Circuit authority holding that district courts cannot question the validity of FCC final orders, a limitation courts in this Circuit have routinely recognized.  *See, e.g.*, *Hamilton*, 224 F.3d at 1055 (concluding even court of appeals could not invalidate FCC final order where no Hobbs Act petition had been filed); *Daniel v. Five Stars Loyalty, Inc.*, No. 15-CV03546, 2015 WL 7454260, at *6 n.6 (N.D. Cal. Nov. 24, 2015) (determining in TCPA action that "FCC final order" is binding under Hobbs Act "unless it is invalidated by a court of appeals" via direct Hobbs Act challenge).

*Third*, Plaintiff claims that the order conflicts with a prior FCC final order in *In the Matter of Westfax, Inc. Petition for Consideration & Clarification*, 30 F.C.C. Rcd. 8620, 8623 (2015).  This is also false.  *Westfax **confirms*** that "a fax sent as an email over the Internet—*e.g.*, a fax attached to an email message or a fax whose content has been pasted into an email message—**is not subject to the**

DEFENDANT'S SUR-REPLY IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1    **TCPA**[.]"  *Westfax*, 30 F.C.C. Rcd. at 8623–24 (emphasis added).  This is exactly what happened

2    here.  *See, e.g.*, Briceno Decl. ("The Company uses both a traditional fax machine and a "virtual fax"

3    service."); Castellanos Decl. (same).  Accordingly, class certification should be denied, "[w]here, as

4    here, individual inquiries are required to prove a core element of liability[.]"  *True Health*, 2021 WL

5    4818945, at *3.

6         **C.    Individualized Standing Issues Bar Certification Under *TransUnion*.**

7         The Court should also deny Plaintiff's certification bid under binding Supreme Court and

8    Ninth Circuit law because Plaintiff cannot establish class-wide standing, requiring the Court to

9    conduct further endless individualized inquiries that destroy predominance.  *See TransUnion LLC v.*

10   *Ramirez*, 141 S. Ct. 2190, 2214 (2021) (all putative class members must have standing to recover);

11   *Mazza*, 666 F.3d at 594 ("[N]o class may be certified that contains members lacking Article III

12   standing.").  Plaintiff ignores both *TransUnion* and *Mazza*—which is not surprising, because they

13   are fatal to Plaintiff's certification bid on two grounds.

14        *First*, it is undisputed that (1) the purported class list contains thousands of putative class

15   members who did not receive a fax and (2) there is no way to determine whether the remaining class

16   members received a fax, given the unexplained discrepancy between the purported class list and the

17   number of actual transmissions (which, again, Plaintiff did not even attempt to take discovery to

18   explain, despite bearing the evidentiary burden under Rule 23).  Thus, much of the putative class

19   lacks standing and the Court cannot determine, without individualized inquiries, whether the

20   remaining portion of the putative class received one.  On this basis alone, the Court should deny class

21   certification on predominance grounds.  *See Moore v. Apple, Inc.*, 309 F.R.D. 532, 543 (N.D. Cal.

22   2015) (holding "Plaintiff's proposed class is overbroad and cannot be certified under *Mazza* because

23   it necessarily includes individuals who could not have been injured by Defendant's alleged wrongful

24   conduct as a matter of law"); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019)

25   (remanding case because "individualized issue of standing will predominate over common issues in

26   the case, when it appears that a large portion of the class does not have standing . . . and making that

27

28

DEFENDANT'S SUR-REPLY IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

determination for these members will require individualized inquiries").[3]

Second, even if there were some way to reliably determine who received a fax (there is not), the standing problem would still not be resolved because individualized inquiries would still be required to determine whether the recipient of the hand-sanitizer fax suffered any concrete harm. Plaintiff (at 9) cites to *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) for the proposition that "a violation of the TCPA is a concrete, *de facto injury*." However, Plaintiff ignores the controlling and **subsequent** Supreme Court case, *TransUnion*, which holds that courts must independently determine whether a plaintiff suffered an Article III harm: "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to **independently** decide whether a plaintiff has suffered a concrete harm under Article III." 141 S. Ct. at 2205 (emphasis added). Here, the evidence is uncontroverted that many of the faxes were explicitly invited. *See generally* Customer Decls. In fact, even the single declaration that *Plaintiff* was able to muster confirms that concrete harm requires an individualized analysis. *See* Briceno Decl. with Reply at ¶ 4 ("Valley Comprehensive Medical does not take issue with receiving faxes from third parties"). Considering the urgency and the need in the medical community at the time, most if not all the recipients likely welcomed the fax (like all the declarants).[4] Thus, *TransUnion*'s holding that courts must independently determine Article III standing defeats class certification here. It also illuminates an important point: most people—at least those who, unlike Katz, are not professional litigants—simply do not care about, and thus are not harmed by, a single fax. That is *particularly* true when the fax is an attempt to help medical providers during a global pandemic, and where the providers gave their fax numbers to the sender in the first instance, as here.

## III.   NINTH CIRCUIT LAW BARS CERTIFICAITON OF A RULE 23(B)(2) INJUNCTIVE RELIEF CLASS

Plaintiff simply ignores (again) binding Ninth Circuit authority holding that "Rule 23(b)(2) 'does not authorize class certification when each class member would be entitled to an individualized

---

[3]   The district court then denied certification after the remand on predominance grounds. *Cordoba v. DIRECTV, LLC*, No. 1:15-CV-3755, 2020 WL 5548767, at *4–7 (N.D. Ga. July 23, 2020).

[4]   Even Katz testified at Plaintiff's deposition that Plaintiff needed hand sanitizer at the time it received the fax (Katz Dep. 55:9–13).

award of monetary damages.'"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986 (9th Cir. 2011)

(quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011)).  Every putative member of any

class Plaintiff puts forth here would be entitled to $500 in statutory damages under the TCPA for

each violation—which bars injunctive class treatment under the TCPA as a matter of law.  *See, e.g*.,

*Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 579 (S.D. Cal. 2013) (holding

availability of statutory damages renders "Plaintiffs' TCPA claims . . . ineligible for Rule 23(b)(2)

certification") (citing *Dukes*).  Plaintiff's authorities do not challenge this dispositive point—they are

not TCPA cases or cases recognizing the availability of statutory damages.  *See Zepeda v. Paypal*,

Case No. C 10-2500, 2017 WL 1113293, at *12 (N.D. Cal. Mar. 24, 2017) (payments to compensate

plaintiffs for improper holds on Paypal funds); *Raffin v. Medicredit, Inc.*, No. CV154912, 2017 WL

131745, at *11 (C.D. Cal. Jan. 3, 2017) (violations of California's Invasion of Privacy Act).  Further,

even if a TCPA injunctive relief class were certifiable (and of course it is not, for all the same reasons

there is no 23(a)(3) class), Plaintiff fails to distinguish binding Ninth Circuit authority establishing

that Plaintiff would lack standing because he only received one fax from Diamond *over one-and-a-*

*half years ago*.  *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en

banc) (standing requires "a real and ***immediate*** threat of ***repeated injury*** in the future.") (emphasis

added).

## IV.    PLAINTIFF AND ITS COUNSEL ARE INADEQUATE TO REPRESENT THE CLASS BASED ON THEIR UNETHICAL CONDUCT

Plaintiff (at 15) misrepresents the record regarding Plaintiff's unethical and extortionate

request for a $250,000.00 individual settlement for receipt of one fax—an amount 166 to 500 times

what Plaintiff's maximum individual recovery could be.  Plaintiff claims that the request was coupled

with a request that Diamond change its (legal) fax practices.  But Plaintiff never provided any written

request for such a change and, when asked explicitly about the $250,000.00 demand at his deposition,

Katz never mentioned anything about Diamond changing its fax practices, further confirming his

willingness to sell out the class to enrich himself: "Q: Does the figure 250,000 refresh your memory?

A: Yes. It does, actually. Q: So that's more than 166 times what your maximum individual recovery

would be, right? A: Correct. Q: What is the basis for such an extortionate individual demand? … A:

DEFENDANT'S SUR-REPLY IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

I will just say that my answer is: due to my discussions with my attorney." Katz Dep. (Grammatico Decl., Ex. B) at 86: 1-12.  Further, even if Plaintiff had intended to request both that Diamond pay $250K and change its fax practices, this still evidences his and his counsel's desire to enrich themselves at the expense of the class—because the request does nothing for anyone except Plaintiff and its counsel.  None of the class members would a get a *dime* of that money, and Diamond is not sending any marketing faxes, so the request would not prevent additional faxes or change anything.  Moreover, Plaintiff's reply does not dispute its counsel never showed Katz the settlement letter submitted from Diamond, which contained the substantive reasons Katz's claims were doomed.  *See* Reply at 15.  And, Plaintiff's counsel cannot dispute the evidence from class member declarations that he failed to identify himself when calling declarants with his own self-serving and hearsay-ridden declaration, which must be stricken.  Thus, both Plaintiff and his counsel are inadequate.

## IV.   CLASS CERTIFICATION SHOULD BE DENIED FOR NUMEROUS OTHER REASONS.

In the addition to the foregoing, class certification should be denied for numerous other reasons that Plaintiff fails to address in the Reply, including:

- Plaintiff cannot establish numerosity because, among other reasons, there is no evidence that even one individual received the fax whereby consent was supposedly obtained through this alleged "general sales process," as there is *still* no evidence about what that term means and what the process is.

- Certification of a 23(b)(2) class would violate Diamond's First Amendment rights to contact its customers.  *See, e.g.*, *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 559 (1976) ("[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights.").

- A class-action is not superior where, as here, there is no way to reliably determine who actually has a claim and those who do have a claim have an incentive to pursue it individually because they can obtain statutory damages of up to $1,500.  *See, e.g.*, *Espejo*, 2016 WL 6037625 at *12.

Accordingly, for all the reasons set forth in this Sur-Reply and the Opposition, the Court should deny certification.

DATED: November 30, 2021                    **KABAT CHAPMAN & OZMER LLP**

                                           By: */s/ Paul A. Grammatico*

DEFENDANT'S SUR-REPLY IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1

Paul A. Grammatico

2

*Counsel for Defendant*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S SUR-REPLY IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

1

**PROOF OF SERVICE**

2

3

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

4

5

I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within action; my business address is 333 S. Grand Avenue, Suite 2225, Los Angeles, California 90071.

6

7

8

9

On November 30, 2021, I served the foregoing document(s) described as **DEFENDANT, DIAMOND RESPIRATORY CARE, INC.'S SUR-REPLY IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION** on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es): SEE ATTACHED LIST

10

11

12

13

14

☐   **(BY MAIL)** I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. This correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business at our Firm's office address in Los Angeles, California. Service made pursuant to this paragraph, upon motion of a party served, shall be presumed invalid if the postal cancellation date of postage meter date on the envelope is more than one day after the date of deposit for mailing contained in this affidavit.

15

16

☒   **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

17

18

☐   **(BY E-MAIL SERVICE)** I caused such document to be delivered electronically via e-mail to the e-mail address of the addressee(s) set forth in the attached service list.

19

20

☐   **(BY FACSIMILE)** I caused the above-referenced document to be transmitted to the interested parties via facsimile transmission to the fax number(s) as stated on the attached service list.

21

22

☒   (Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

23

24

Executed on November 30, 2021, at Los Angeles, California.

25

*/s/ Paul A. Grammatico*
Paul A. Grammatico

26

27

28

1

**SERVICE LIST**

Rebecca Davis
LOZEAU DRURY LLP
Email: rebecca@lozeaudrury.com

Patrick H. Peluso
Taylor T. Smith
Woodrow & Peluso, LLC
Email: ppeluso@woodrowpeluso.com
Email: tsmith@woodrowpeluso.com

*Counsel for Plaintiff*

PROOF OF SERVICE