IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY KATZ CHIROPRATIC, INC.,, <br><br> Plaintiff, <br><br> v. <br><br> DIAMOND RESPIRATORY CARE, INC., <br><br> Defendant. | Case No.  20-cv-04108-CRB <br><br> **ORDER DENYING MOTION FOR CLASS CERTIFICATION** |

Defendant Diamond Respiratory Care, Inc. ("Diamond") is a health care company that sells medical devices to clinics.  In April 2020, early in the COVID-19 pandemic, many clinics struggled to procure hand sanitizer.  Diamond had some in stock.  It collected a list of fax numbers pertaining to clients and potential clients that it believed had, over more than two decades of its business, agreed to receive faxes from Diamond.  To about 17,219 fax numbers, Diamond attempted to transmit a fax stating that it had hand sanitizer for sale.

As amended by the Junk Tax Prevention Act, the Telephone Consumer Protection Act ("TCPA") provides statutory damages of $500 (or $1,500) for an "unsolicited advertisement" sent via fax machine.  Plaintiff Jeffrey Katz Chiropractic, Inc. ("Katz") received one of the hand sanitizer faxes.  Katz now seeks to represent the following class under Rule 23(b)(2) and 23(b)(3):

> All persons who, from the date June 22, 2016, through the date notice is sent to the Class, received at least one telephone facsimile message [from Diamond] substantially similar to [the hand sanitizer fax], where prior express permission or invitation to send the faxes was supposedly obtained by Diamond through its general sales process.

The Court denies certification under Rule 23(b)(2) because Katz lacks standing to request injunctive relief.  The Court denies certification under Rule 23(b)(3) because a class action is not a superior vehicle and common answers do not predominate over individualized factual ones such as

(1) whether a recipient consented to receive the fax; and (2) whether the recipient received it on an online fax service.  Katz's motion to exclude class member declarations is denied.

## I.       BACKGROUND

### A.       Facts

Diamond is a "healthcare company that provides respiratory therapy and medical equipment to patients with chronic lung disease, various end stage disorders, and more recently people recovering from COVID-19."  Rice Decl. (dkt. 37-1) ¶ 5.  It sells its products to clinicians and directly to patients with prescriptions.  Id.  It was founded in approximately 1996.  Id. ¶ 2.  It is based in California.  Compl. (dkt. 1) ¶ 2.

Katz is a chiropractic practice based in California.  Id. ¶ 1.

Early in 2020, an unprecedented global pandemic hit the United States.  By April, there was a major shortage of hand sanitizer that made it difficult for medical clinics to service their patients.  See Rice Dep. (dkt. 34-1), at 13-14.[1]  Diamond, however, had hand sanitizer in stock.  Id.  It produced a list of 19,985 unique fax numbers.  Mot. for Cert. (dkt. 34) at 4.  This list of numbers corresponded to clients and potential clients that Diamond believed had, over 26 years of business, agreed to receive fax communications from Diamond.  See Rice Dep. at 52-53; see id. 36-48.  On several days in late April and early May, Diamond used a third-party fax service called jBlast to transmit a fax stating that it had hand sanitizer in stock.  See Mot. for Cert. at 3.  jBlast records indicate that the fax was sent to 17,219 of those 19,985 numbers.  Id. at 4–5.

At the top of the fax were the words: "HAND SANITIZER NOW IN STOCK."  See Fax (dkt. 34-2).  It also stated:

> We've received a small shipment of hand sanitizer that is now available for sale on our website. . . .
>
> As you may know, Diamond created a PPE co-op to help fellow home care facilities and physician's offices obtain the items they need to re-open their offices.

Id.  The fax also included Diamond's website and phone number.  Id.

---

[1] For ease of locating the relevant citations, the Court cites to depositions and other exhibits by the page numbers in the docket filings, not the scattered page numbers in the excerpted depositions themselves.

United States District Court
Northern District of California

United States District Court
Northern District of California

Chris Rice, the President of Diamond, described its sales process and the manner in which it attempts to secure consent to send fax communications:

> Diamond's sales team communicates with prospective and current customers over the phone and via facility visits on a daily basis. During these facility visits and telephone calls, Diamond obtains referrals and contact information from prospective and current customers. These are often provided in connection with a pitch regarding Diamond's products, or a request for information about those products. Diamond also obtains the prospective and current customers' express permission to send them marketing and informational materials via contact information provided in the context of individualized overviews of Diamond's business, which can occur in person or on the phone.

Rice Decl. ¶ 6. In some sales discussions, the record indicates that the customers provided prior express permission for the fax in question. <u>See generally</u> Declarations (dkt. 37-3 to 37-18).[2] But it appears that in many sales talks with clients, Diamond did not specifically ask if it could send marketing materials. <u>See</u> Rice Dep. at 53 (Rice: "I think we just asked if we could fax them, period.").

### B.    Procedure

On June 22, 2020, Katz filed a class action complaint against Diamond for a violation of the TCPA, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227. <u>See</u> Compl. After discovery, on September 2, 2021, Katz moved to certify an "Unsolicited Fax Class" defined as follows:

> All persons who, from the date June 22, 2016, through the date notice is sent to the Class, received at least one telephone facsimile message substantially similar to Exhibit B [the hand sanitizer fax], where prior express permission or invitation to send the faxes was supposedly obtained by Diamond through its general sales process.

Mot. for Cert. at 2. Diamond filed an opposition with attached declarations from about a dozen

---

[2] In its motion to strike the declarations or for leave to take depositions, Katz argues that these declarations are not properly before the Court because the declarants were not properly disclosed during discovery. Yet Katz saw nine of these declarations during settlement negotiations in July 2021. <u>See</u> Mot. to Strike (dkt. 42), at 2. In light of Katz's awareness of the names of these declarants, the clinics where they worked, and the content of their statements, the Court concludes that any discovery failure was harmless. Fed. R. Civ. P. 37(c)(1); <u>Barnett v. Garrigan</u>, 2021 WL 4851043, at *1 (N.D. Cal. Oct. 19, 2021). The Court therefore DENIES the motion to strike. However, the Court also concludes that it makes no difference. It would reach the same conclusion without them, as the record still indicates the difficulties of making any class-wide factual determination as to consent in client conversations over 26 years.

1   putative members of this class attesting that they consented to the hand sanitizer fax.  <u>See</u>

2   Declarations.  Katz filed a motion to strike these declarations or for leave to take depositions.  <u>See</u>

3   Mot. to Strike (dkt. 42).

4   **II.      LEGAL STANDARD**

5          Rule 23(a) of the Federal Rules of Civil Procedure "states four threshold requirements

6   applicable to all class actions: (1) numerosity (a class so large that joinder of all members is

7   impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality

8   (named parties' claims or defenses are typical of the class); and (4) adequacy of representation

9   (representatives will fairly and adequately protect the interests of the class)."  <u>Amchem Prods.,</u>

10  <u>Inc. v. Windsor</u>, 521 U.S. 591, 613 (1997) (citing Fed. R. Civ. P. 23(a)) (internal quotation marks

11  and alterations omitted).  In addition to Rule 23(a)'s above-described "prerequisites," a class

12  action must "fall within one of the three types specified in Rule 23(b)."  <u>In re Hyundai and Kia</u>

13  <u>Fuel Economy Litig.</u>, 926 F.3d 539, 556 (9th Cir. 2019) (en banc).

14         Rule 23(b)(2) permits class certification where "the party opposing the class has acted or

15  refused to act on grounds that apply generally to the class, so that final injunctive relief or

16  corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P.

17  23(b)(2).  "[I]t does not authorize class certification when each class member would be entitled to

18  an individualized award of monetary damages" and where "the monetary relief is not incidental to

19  the injunctive or declaratory relief."  <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 360–61

20  (2011).

21         Rule 23(b)(3) requires that (1) "questions of law or fact common to class members" must

22  "predominate over any questions affecting only individual members," and that (2) the class action

23  must be "superior to other available methods for fairly and efficiently adjudicating the

24  controversy."  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry "tests whether proposed

25  classes are sufficiently cohesive to warrant adjudication by representation."  <u>Id.</u> at 623.  Because

26  Rule 23(a)(2) already requires the existence of common issues of fact or law, Rule 23(b)(3)

27  requires something more: that "common questions present a significant aspect of the case and

28  . . . can be resolved for all members of the class in a single adjudication."  <u>In re Hyundai</u>, 926 F.3d

United States District Court
Northern District of California

at 557 (quoting <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1021 (9th Cir. 1998)).  A court assesses

predominance on the basis of evidence currently in the record, rather than evidence that a

defendant might later advance.  <u>True Health Chiropractic, Inc. v. McKesson Corp.</u>, 896 F.3d 923,

931 (9th Cir. 2018).

The party seeking certification bears the burden of demonstrating that it has met all of Rule

23's required elements.  <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 979-80 (9th Cir. 2011)

(citation omitted).

## III.    DISCUSSION

The Court denies certification because the proposed class does not satisfy the requirements

of either Rule 23(b)(2) or 23(b)(3).[3]

### A.    Certification Under Rule 23(b)(2)

The Court denies certification under Rule 23(b)(2) because Katz lacks Article III standing

to bring a claim for "final injunctive relief or corresponding declaratory relief."  Fed. R. Civ. P.

23(b)(2).  Katz received exactly one fax 18 months ago.  <u>See</u> Katz Dep. (dkt. 37-2) at 45 ("Q: Do

you have any evidence that Diamond ever sent you another fax? Katz: No.").  It faces no "real and

immediate threat" of another fax.  <u>Chapman v. Pier 1 Imports (U.S.) Inc.</u>, 631 F.3d 939, 946 (9th

Cir. 2011) (en banc).  And where a named plaintiff lacks standing as to the requested relief, there

is no class.  <u>See</u> <u>Hodgers-Durgin v. de la Vina</u>, 199 F.3d 1037, 1044-45 (9th Cir. 1999) (en banc).[4]

### B.    Certification Under Rule 23(b)(3)

Rule 23(b)(3) requires that (1) "questions of law or fact common to class members" must

"predominate over any questions affecting only individual members," and that (2) the class action

must be "superior to other available methods for fairly and efficiently adjudicating the

controversy."  Fed. R. Civ. P. 23(b)(3).  The Court holds that neither predominance nor superiority

is met because of the individualized factual questions of (1) whether each class member consented

---

[3] Because these issues are dispositive, the Court need not reach other issues in the parties' briefs.
[4] Nor, for that matter, do <u>any</u> members of the proposed class appear to have standing as to
injunctive relief.  And even if Katz, or some other plaintiff, had standing, Rule 23(b)(2) would still
be inappropriate, as Diamond has not "acted or refused to act on grounds that apply generally to
the class," and no one injunction against Diamond would "respect[] the class as a whole."  Indeed,
Katz does not begin to articulate what such an injunction could look like.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  to receive the fax via Diamond's "general sales process"; and (2) whether each class member

2  received the fax on a standalone fax machine or an online fax service.

3  **1.    Consent**

4  First, common issues do not predominate over individualized issues of consent.  The

5  TCPA prohibits the sending of an "unsolicited advertisement" "to a telephone facsimile machine."

6  47 U.S.C. § 227(b)(1)(c).  "[P]rior express invitation or permission" is an affirmative defense

7  against this claim.  True Health, 896 F.3d at 931.  Common issues therefore may predominate

8  when a consent defense involves "little or no variation," such as when consent was procured

9  through a standardized agreement.  Id. at 932.  But common issues do not predominate when the

10  consent defense has considerable factual "variation" because it is "based on individual

11  communications and personal relationships between [defendant's] representatives and their

12  customers."  Id.

13  Diamond used a wide variety of ways to obtain consent (or fail to do so).  As Chris Rice,

14  Diamond's CEO, explained:

15  
16  Diamond's sales team communicates with prospective and current
   customers over the phone and via facility visits on a daily basis.
   During these facility visits and telephone calls, Diamond obtains
17  referrals and contact information from prospective and current
   customers. These are often provided in connection with a pitch
18  regarding Diamond's products, or a request for information about
   those products. Diamond also obtains the prospective and current
19  customers' express permission to send them marketing and
   informational materials via contact information provided in the
20  context of individualized overviews of Diamond's business, which
   can occur in person or on the phone.

21  Rice Decl. (dkt. 37-1) ¶ 6.  This wide variety of ways to obtain consent apparently yielded

22  different answers in different sales team visits.  For example, the record indicates that Diamond

23  often did not specifically ask if it could send a client marketing faxes.  See Dkt. 34-1, at 53 (Rice

24  Dep. at 203:17-19) ("I think we just asked if we could fax them, period.").  Yet in other sales

25  discussions, the record indicates that the customers provided prior express permission.  See

26  generally Declarations.  The factual variation in the ways Diamond communicated with its

27  prospective and current customers is not "hypothetical."

28  In so vaguely framing its proposed class, Katz implicitly acknowledges this.  It defines the

United States District Court
Northern District of California

class to include fax recipients where prior consent was (supposedly) obtained through Diamond's "general sales process."  But climbing up the ladder of abstraction does not solve the predominance problem.  Predominance—and, indeed, commonality itself—concerns whether a class-wide proceeding will "generate common answers apt to drive the resolution of the litigation."  See Dukes, 564 U.S. at 350 (quotation and citation omitted).[5]  Common answers are absent here.  Some of the recipients whose prior consent was "supposedly" obtained via the "general sales process" apparently consented; others apparently did not.  A class action would be manifestly unhelpful in sorting through this key factual question that determines liability.

Because consent can only be determined on an individualized basis, common issues do not predominate.  See True Health, 896 F.3d at 932; Fed. R. Civ. P. 23(b)(3).  And because meritorious individual claims might be resolved in small claims court, the class action is not "superior to other available methods for fairly and efficiently adjudicating the controversy."  Id.

### 2.    Virtual Fax

An independent ground that defeats predominance is the question of whether each fax recipient used a standalone fax machine or an online fax service.  Only those who receive faxes on standalone fax machine have a cognizable TCPA claim.  Another court in this district recently decertified a class because, after hearing from 100 major telephone companies on this issue, it concluded that it is impossible to determine on a class-wide basis whether recipients received the fax on a standalone fax machine.  True Health Chiropractic Inc. v. McKesson Corp., No. 13-cv-02219, 2021 WL 4818945, at *1-3 (N.D. Cal. Oct. 15, 2021).  So it is here.

As noted, the TCPA claim requires sending the fax "to a telephone facsimile machine."  47 U.S.C. § 227(b)(1)(c).  A "telephone facsimile machine" is "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper."  Id. § 227(a)(3).  On December 9, 2019, the Federal Communications Commission ("FCC") held in a declaratory ruling that an online fax service is not a "telephone facsimile machine" under the TCPA.  In the Matter of Amerifactors Fin. Grp., LLC, No. 05-338,

---

[5] Under the Supreme Court's decision in Dukes, the proposed class may not even satisfy the Rule 23(a)(2) requirement of commonality.  But the Court need not reach this question.

2019 WL 6712128, at *1 (OHMSV Dec. 9, 2019).

Under the Hobbs Act, challenges to the validity of final FCC orders must be filed in the circuit courts.  See 28 U.S.C. § 2342(1); 47 U.S.C. § 402.  A plaintiff may not file a complaint in the district court that "raise[s] the same issues and seek[s] the same relief in substance as the declaratory ruling."  Wilson v. A.H. Belo Corp., 87 F.3d 393, 399 (9th Cir. 1996).  A "final order" is one that is not "merely tentative or interlocutory" and is "one by which rights or obligations have been determined, or from which legal consequences will flow.  US W. Commc'ns, Inc. v. Hamilton, 224 F.3d 1049, 1054–55 (9th Cir. 2000), as amended on reh'g (Sept. 13, 2000) (citation and quotation omitted).  The complaint in this case seeks the remedy for a viable TCPA claim—precisely the relief foreclosed by Amerifactors.  And the Amerifactors decision is clearly final: it is not tentative and it determines rights and obligations under the TCPA.  See True Health Chiropractic, 2021 WL 4818945, at *1.

Judge Gilliam's analysis in True Health is instructive.  After Amerifactors, Judge Gilliam modified the class definition to include two subclasses: one for those who received the fax on a "stand-alone fax machine" and one for those who received the fax on an "online fax service."  True Health Chiropractic Inc. v. McKesson Corp., 2020 WL 7664484, at *7 (N.D. Cal. Dec. 24, 2020).  At the time, the court was "satisfied with Plaintiffs' proposed three-step subpoena process to distinguish members of these subclasses."  Id. at *8.  (In a later order, he granted summary judgment to the defendant as to the "online fax services" subclass, holding that Amerifactors foreclosed their cause of action.  See True Health Chiropractic, Inc. v. McKesson Corp., No. 13-cv-2219 [Dkt. 418] (N.D. Cal. Aug. 13, 2021)).

But Judge Gilliam later decertified all of the class.  He found that, in spite of nearly a year of work by plaintiffs to delineate the subclasses, this individualized factual issue still swamped all common issues.  True Health, 2021 WL 4818945.  Judge Gilliam explained:

> While Defendants sought decertification of the class after the Amerifactors ruling issued, see Dkt. No. 362, the Court gave Plaintiffs the opportunity to obtain class-wide proof sufficient to show how class members received the faxes at issue, see Dkt. No. 393.  Plaintiffs returned with over 100 telephone carrier declarations, which Defendants supplemented with two additional telephone carrier declarations.  See Dkt. Nos. 460, 465, 468, 469, 470, 471.  Telephone

<u>carriers who provided service to over 60% of the class members affirmatively say they have no way of knowing if the class member received faxes via a standalone fax machine or via an online fax service.</u> Defendants' Response at 4; <u>see</u> Dkt. Nos. 460, 465, 468, 469, 470, 471; <u>see, e.g.</u>, Dkt. No. 460, Exhibit A Part 5 at 63 ("Comcast has no mechanism to determine whether its subscribers received faxes on a standalone fax machine or via online fax service.").

<u>Id.</u> at *1 (emphasis added); <u>see also</u> <u>id.</u> at *1 n.1 (noting that plaintiffs still lacked any response whatsoever from telephone carriers servicing at least 17% of the class members). Judge Gilliam also explained that the plaintiffs' other ways of purportedly "proving" who in the class had a valid claim—including the use of experts opining on trends in online fax service usage and the likelihood of particular consumer choices—failed as a matter of law. <u>Id.</u> at *1.

Katz cannot evade this individualized factual issue that yields such dissimilar answers. It first argues that the Court should exclude users of online fax services from the class. <u>See</u> Rep. at 11. Yet that is exactly what Judge Gilliam did. He then waited a year and heard from Comcast and more than 100 other telephone carriers, and the common issues <u>still</u> did not predominate. Katz is correct that "there is no requirement to determine class membership at this stage." <u>Id.</u> But <u>True Health</u> teaches that any common answer to this question is indeterminate at <u>any</u> stage, even after a year of subpoenas, declarations, and expert testimony. Nor is this the sort of issue that can be determined easily at the claims phase.

Common issues do not predominate over the question of whether the fax was received on an online fax service, and the class action is not a "superior" vehicle for this dispute. <u>See</u> Fed. R. Civ. P. 23(b)(3).

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES class certification under both Rule 23(b)(2) and Rule 23(b)(3).

**IT IS SO ORDERED.**

Dated: December 9, 2021



CHARLES R. BREYER
United States District Judge